UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **HENRY W. SEGAR,** *et al.*, <br><br>        **Plaintiffs,** <br><br>        v. <br><br> **ERIC H. HOLDER,** *et al.*, <br><br>        **Defendants.** | Civil Action No. 77-81 (EGS/JMF) |

**MEMORANDUM OPINION**

**Table of Contents**

I. Introduction.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. The Discovery Requests . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    1.    Post October 12, 2005 documents pertaining to discussions of promotions at meetings of the Career Board.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
        (A) Plaintiffs' Demands.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
        (B) The DEA's Objections.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
        (C) The Deliberative Process Privilege . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
        (D) Individual Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
        (E) The Discovery as to Individual Promotion Decisions is
            Disproportionate to the Needs of this Case... . . . . . . . . . . . . . . . . . . . . . . . . 5
    2.    Post November 15, 2005, documents concerning communications conducted outside of DEA Career Board meetings about DEA promotions to GS-13 or above.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    3.    Post October 12, 2005, documents concerning the termination of the use of the SAC/Office head recommendations in the promotion process. . . . . . . . . . . . . . . 9
        (A) Plaintiffs' Demands.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        (B) The DEA's Objections.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        (C) Relevance.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
        (D) The Deliberative Process Privilege. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
        (E) Attorney-Client Privilege.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    4.    Documents concerning the Career Development Plan ("CDP"). . . . . . . . . . . . . 13
    5.    GS-13 documents.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
        (A) Plaintiffs' Demands.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
        (B) The DEA's Objections.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
        (C) Duplication . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
        (D) Validation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

III. Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

I. Introduction

Before me is now Plaintiffs' Motion to Compel Discovery Responses [#325].[1] To understand that motion, one has to begin with the motions before the Court that seek diametrically opposed relief. The presiding judge, Emmet G. Sullivan, has stayed the parties' two competing motions[2] until this discovery dispute is settled.

This most recent battle over discovery erupted when, in response to plaintiffs' motion to require the defendants[3] to comply with this Court's orders, DEA moved to end this case by having the Court vacate all of its earlier orders and conclude that the DEA has complied with all of them. See Memorandum of Points and Authorities in Support of Defendant[s'] Motion to Vacate [#316].

On September 20, 2010, plaintiffs asked for "discovery on the subjects covered in [DEA's] recent filings." Motion and Memorandum in Support for Discovery and to Stay Briefing Schedules Pending Completion of Discovery [#317] at 2. The plaintiffs pointed to the attachments to DEA's motion to vacate, i.e., (1) a portion of a deposition of plaintiffs' expert, Dr. Bernard Siskin; (2) a declaration of the Acting Administrator of the DEA, Michelle Leonhart, asserting that the promotion process for GS-14/15 agents is in compliance with this Court's orders; (3) an expert report by Dr. Kevin Murphy asserting that the promotion process for GS 14/15 agents did not have a disparate impact on plaintiff class members and (4) a declaration

---

[1] Hereafter all submissions by the parties will first be identified in full by their caption. Thereafter, they will be identified only by docket number, i.e. [#1].

[2] Plaintiffs' Motion for Compliance and to Show Cause Why Defendants Should Not be Held in Contempt [#303] and Defendant's Motion to Vacate [#316].

[3] Hereafter collectively referred to as "DEA."

1

from Donna Rodriguez, Chief of the DEA Research and Analysis Staff, Human Resources Division, stating that certain documents were on the DEA intranet site. Id.

Plaintiffs sought discovery to "respond to, and to test the veracity of, these allegations." [#317] at 2. They then stated:

> Among other topics, Plaintiffs require further information on the DEA's . . . proposed procedures and policies related to the GS-14/15 promotion process, and the methodology used by Defendants' new expert Dr. Kevin Murphy in his report on DEA's Special Agent Promotions to GS-14/15, which Defendants heavily rely on to demonstrate that the DEA is in compliance with Title VII.

Id. at 2.

They asked for six depositions including Dr. Murphy, DEA Administrator Leonhart, Donna Rodriguez, Oliver Allen, the EEO officer for the DEA, and members of the DEA Career Board. [#317] at 3. They asked for ten interrogatories and ten requests for production, and indicated that their request was "tailored" to their needs to oppose the DEA's motion to vacate and to file the DEA's reply to plaintiffs' motion for compliance. Id.

Over the DEA's opposition the court granted the application for discovery but the parties can't agree as to the legitimacy of the plaintiffs' demands for documents.

## II. The Discovery Requests

**1.    Post October 12, 2005 documents pertaining to discussions of promotions at meetings of the Career Board**

### (A) Plaintiffs' Demands

Plaintiffs first seek the following:

> All documents created on or after October 12, 2005, including, but not limited to, presentations and notes, concerning discussions of

>promotions at meetings of the Career Board of the United States Drug Enforcement Agency (the "DEA"), whether or not those discussions resulted in a promotion being made.

[#325], Appendix A at 2.

### (B) The DEA's Objections

The DEA resists production on the grounds that (1) the Career Board has been found to counteract any disparate impact claimed to be caused by recommendations of the Special Agent in Charge;[4] (2) this case is about disparate impact not disparate treatment; information about individual promotion decisions is irrelevant because the true question is "whether the evidence demonstrates that the Career Board's promotion decisions result in adverse impact" ([#329] at 5); (3) plaintiffs are "fishing" among the many documents that pertain to individual promotion decisions[5] that have nothing to do with the issues at this stage of this case; (4) the documents are shielded by the deliberate process privilege; (5) the Career Board has met 25 times since 2005 and has accumulated 200 hours of audio-taped deliberations that would have to be reviewed by counsel to check for privilege claims before the tapes (or any portion of them) could be produced.

### (C) The Deliberative Process Privilege

The deliberative process privilege is inapplicable in this Circuit whenever a lawsuit places in issue the intent with which government agents acted. In re Subpoena Duces Tecum Served on Office of Comptroller of Currency, 156 F.3d 1279, 1279 (D.C. Cir. 1998) ("We held

---

[4] Discovery pertaining to the abandonment of the recommendations by the Special Agent in Charge is discussed in Section 3 of this opinion.

[5] Biographical data sheets, vacancy lists, Best Qualified Lists, and SAC/Office Head recommendations, and audiotapes of every Career Board meeting since 2005.

[in the first decision] that the government's deliberative process privilege does not apply when a cause of action is directed at the government's intent."); accord, Convertino v. U.S. Dept. of Justice, 674 F. Supp. 2d 97, 102 (D.D.C. 2009); Tri-State Hosp. Supply Corp. v. United States, No. 00-CIV-1463 (HHK/JMF), 2005 WL 3447890, at *2 (D.D.C. Dec. 16, 2005). If, therefore, the intent with which the Career Board acted in making individual promotion decisions were at an issue, then the deliberative process privilege would not shield its discussions pertaining to those decisions. Nevertheless, these individual decisions are not at issue at this phase of the case.

### (D) Individual Claims

This case has always been about the institutional procedures that were going to be created to eliminate racial discrimination in the categories the late Judge Aubrey Robinson specified in his 1981 decision: "salary, grade at entry, work assignments, the supervisory evaluation process, discipline, and promotions." See Segar v. Smith, No. 77-CIV-0084, 1982 WL 214, at *1 (D.D.C. Feb. 17, 1982 . In its long history, the circumstances of the decisions made in individual cases have never been a subject of judicial scrutiny. I have been involved in several aspects of the case. I distinctly recall receiving letters from DEA agents who complained to me about, for example, a promotion they sought and did not receive. I would refer those letters to Jennie Flanagan, Esq., who was then representing plaintiffs and she would answer those letters. I can recall that she would tell them that their individual complaints were not cognizable in this lawsuit and that they should pursue them by exhausting their administrative remedies and bringing suit on their own, if they saw fit. My recollection is confirmed by the indication in plaintiffs' papers that individual agents, members of the plaintiffs' class, have brought Title VII actions in other judicial districts and prevailed despite the arguments of the DEA that those actions were barred

by this class action. See [#303] at 20. The history of this litigation therefore shows that the individual claims of specific agents have never been part of its history.

### (E) The Discovery as to Individual Promotion Decisions is Disproportionate to the Needs of this Case.

The court of appeals in its decision made clear that this matter should be heading to its conclusion. Segal v. Mukasey, 508 F.3d 16, 28 (D.C. Cir. 2007). If, despite its history, in which individual claims of specific agents have never been significant, this case is now to turn to discovery pertaining to every promotion decision made by the Career Board in the past six years, that is surely not the narrowly tailored discovery plaintiffs assured Judge Sullivan they were seeking when they urged him to grant their discovery motion.

Moreover, this Court, in order to enforce the requirement that the Federal Rules of Civil Procedure be "construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding" is obliged to interdict discovery, otherwise permissible when, speaking generally, its cost exceeds its benefit. Fed. R. Civ. P. 1. More specifically, discovery should be interdicted when "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii).

While eliminating racial discrimination in a law enforcement agency is (to put it mildly) important, the "importance of the discovery" in resolving the issues presented at this point in this case does not justify the discovery sought.[6]

---

[6] As to the factors specified in Rule 26(b)(2)(C)(iii), the United States has adequate resources to comply with even costly discovery but the amount in controversy is a function of whether the

5

First, the demand for documents "concerning discussions of promotions" encompasses promotions in which class members were not applicants. It is inconceivable that a promotion in which the applicants were, let us say, four white women, would have anything to do with this lawsuit.

Second, the circumstances of a promotion decision might be relevant to an issue presented in this case if there was evidence of racial discrimination against an African American agent. This reduces substantially the significance of any promotion in which (1) an African American agent and thereby a member of the plaintiff class got the job, or (2) no African American agent member of the plaintiff class applied for the job. Yet, plaintiffs demand information pertaining to such promotions.

Moreover, a promotion decision in which an African American agent applied but did not get the job is evidence of a discriminatory intent only if, in the absence of overtly discriminatory statements, the reasons for the selection of someone else can be found to be pretextual. Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1313 (D.C. Cir. 1998); see Colbert v. Tapella, No. 10-CIV-5047 __ F.3d __, 2011 WL 2417131, at *2 (D.C. Cir. June 17, 2011). If all one can say after examining the promotion decisions in situations where an African American agent was an applican is that reasonable people could differ as to whether the justification offered for the promotion is reasonable or a pretext, a great amount of time would have been spent finding information that is of little practical use.

Finally, if the DEA's witnesses testify that the procedures have now eliminated racial

---

class members will secure individual relief. At this point I cannot estimate whether they will recover, let alone how much. I have therefore concluded that the DEA's resources weigh in favor of the discovery sought but the amount in controversy factor is neutral.

discrimination and their expert supports their assertion by testifying that there is no statistical evidence supporting a claim of racial discrimination in promotion, instances of questionable promotions might be useful to impeach their opinions. But, once again, promotions for which African American members did not apply or for which no reasonable person could conclude that the reason for the selection was pretextual could not possibly be grounds for such impeachment. Yet, the DEA must search for information about *all* promotions, an expenditure of time and effort out of all proportion to the search demanded and the usefulness of the information sought.

I therefore conclude that the value of the discovery sought by this request is clearly outweighed by the cost in time and money that would have to be expended to do it and I will not permit it.

2.      **Post November 15, 2005, documents concerning communications conducted outside of DEA Career Board meetings about DEA promotions to GS-13 or above.**

Plaintiffs seek:

> All documents dated on or after November 15, 2005, concerning communications conducted outside of DEA Career Board meetings about one or more DEA promotions to GS-13 or above, whether or not a promotion was made, where such communications were conducted either (1) between or among members of the Career Board (with "members" defined for purposes of this request to include DEA Administrator Michele Leonhart) or (2) between (a) one or more such members of the Career Board and (b) a DEA Special Agent in Charge or Office Head.

[#325], Appendix A at 2.

The DEA indicates that it "sent out a request to all relevant employees and asked for any responsive documents [and] [w]hat defendant received, he produced." Defendant[s'] Response to Plaintiffs' Motion to Compel Discovery Responses [#329] at 8.

7

Plaintiffs protest that a responding party must conduct a reasonable search and that DEA's "flippant" response leaves unanswered many questions. Plaintiffs' Reply in Support of Motion to Compel [#330] at 8.

First, I do not find the DEA's response flippant but entirely proper. It must be recalled that, as a matter of law, such response is made by the DEA's counsel pursuant to Federal Rule of Civil Procedure 26(g), by which counsel certifies "with respect to a disclosure, it is complete and correct as of the time it is made."[7] In this context, I read that requirement to mean that the DEA's counsel is representing to the court as its officer that she made a reasonable and responsible request that was designed to elicit documents that were responsive to this demand and that she provided plaintiffs' counsel with what she received. Plaintiffs give me no reason to doubt the truthfulness of that implicit certification. Quoting the truism that a search must be reasonable and pointing to cases where courts found they were not does nothing to establish any insufficiency in what DEA's counsel has done.

More specifically, plaintiffs do not point to anything in the documents they have received or in any other information in their possession that would create any reason to believe that there are additional documents. I have pointed out on another occasion that vague speculation that there must be more than the producing party produced cannot compel the conclusion that the search done was inadequate. Peskoff v. Faber, 233 F.R.D. 25, 28 (D.D.C. 2005). Similarly here, vague and unsupported speculation about the inadequacy of the response does not justify any further judicial action.

---

[7] See Mancia v. Mayflower Textile Servs. Co., No. CCB-08-273, 2009 WL 2252151, at *2 (D. Md. July 28, 2009).

3.  **Post October 12, 2005, documents concerning the termination of the use of the SAC/Office head recommendations in the promotion process**.

### (A) Plaintiffs' Demands

The history of the case will apparently reflect that at one point the DEA decided to abandon its use of recommendations made by the Special Agent in Charge in the process of selecting DEA agents for promotions to GS-14 and GS-15. See [#316] at 8-10. Plaintiffs wish to explore the process by which that decision was made. They therefore request the following:

> All documents created on or after October 12, 2005, concerning the termination of the use of Special Agent in Charge ("SAC")/Office Head recommendations in the process of selecting DEA agents for promotion to GS-14 and GS-15, as outlined in defendants' motion to vacate (e.g., at pp.8-10). This request includes but is not limited to documents concerning the possibility of terminating the use of SAC/Office Head recommendations in the GS-14/15 process, the benefits or disadvantages of doing so, the manner in which to implement the termination of the use of SAC/Office Head recommendations, the method by which to ensure SAC/Office Head recommendations would not be informally made, and communications to the SACs/Office Heads about such a change in policy.

[#325], Appendix A at 2.

### (B) The DEA's Objections

Plaintiffs protest that the DEA has claimed that its elimination of the SAC recommendations established its compliance with the court's order and plaintiffs therefore have the right to probe why the decision was made. [#330] at 2.

The DEA counters that documents detailing the process by which the decision to eliminate the SAC recommendations are shielded by the deliberative process privilege, and those that are not are shielded by the attorney-client privilege. In any event, the DEA claims that the

9

discovery of how the decision was made "is irrelevant to the issue of whether or not the defendant is in compliance with this Court's orders regarding non-discrimination in promotions for GS-14 and GS-15 agents." [#329] at 9.

### (C) Relevance

The heart of the present controversy is simply stated: has the DEA complied with the court's order by doing what is necessary to eliminate racial discrimination in promotions, assignments, and discipline? In its initial order, the court ordered the DEA to "immediately commence validity studies in order to implement effective, non-discriminatory supervisory evaluation, discipline, and promotion systems [and further ordered], that Defendants shall insure that said systems as operated have neither a disparate impact on Black agents nor effectuate disparate treatment of Black agents." Segar v. Civiletti, 508 F. Supp. 690, 715 (D.D.C. 1981), aff'd in relevant part sub nom. Segar v. Smith, 738 F.2d 1249 (D.C. Cir. 1984). In the years following the court's decision, the parties entered into a number of joint stipulations pursuant to the court's instructions.[8] Whether the DEA has, or has not, the reasoning behind the decision to eliminate SAC recommendations is irrelevant to the pragmatic question presented of whether what it did worked.

---

[8] See, e.g., Segar v. Thornburgh, Joint Stipulation Regarding Procedures to be Followed in Implementing the Court's Relief Orders, No. 77-0081 (D.D.C. Jan. 29, 1990); Segar v. Meese, Stipulation Regarding Implementation of Relief Orders with Respect to Discipline, No. 77-0081 (Sept. 22, 1988); Segar v. Meese, Stipulation of Settlement of Payment of Attorneys' Fees and Costs, No. 77-0081 (D.D.C. Oct. 19, 1987); Segar v. Meese, Stipulation Regarding Implementation of Relief Order with Respect to Supervisory Evaluation, No. 77-0081 (D.D.C. Mar. 2, 1987); Segar v. Meese, Stipulation and Order with Respect to Outstanding Claims Regarding Relief, No. 77-0081 (D.D.C. Feb. 17, 1987); Segar v. Meese, Stipulation and Order with Respect to Payment of Attorney's Fees and Costs, No. 77-0081 (D.D.C. Aug. 2, 1985); Segar v. Smith, Joint Stipulation Regarding Procedures to be Followed in Implementing the Court's Order of February 6, 1981, No. 77-0081. (D.D.C. July 31, 1981).

On the other hand, the documents might be probative insofar as statements found in them are inconsistent with the DEA's assertion that the SAC recommendation process was rejected because it was clumsy and unwieldy. Such evidence that the reason given for the rejection of the SAC recommendation process was pretextual is unquestionably discoverable because it may permit an inference that the action seeking to be justified was discriminatory. Aka, 156 F.3d at 1289. Thus, the DEA's irrelevancy argument fails.

### (D) The Deliberative Process Privilege

As to the deliberative process objection, I have already explained why it is the law of this Circuit that it yields when the government's potentially discriminatory intent is at issue. Hence, the privilege yields again because of the claim that in abolishing the SAC recommendation process the DEA acted with a discriminatory intent.

### (E) Attorney-Client Privilege

The DEA's claim of attorney-client privilege consists only of the statement that "there are no responsive documents that are not protected by attorney-client privilege." [#329] at 9. There are two significant procedural defaults in the DEA's approach.

First, the party to whom a request for production is made must respond in writing within thirty days specifying either that the inspection and copying will be permitted as requested or "stat[ing] an objection to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(A) and (B). DEA never did so. Indeed, it did not even do so in its initial opposition to discovery that led to the motion to compel. See Defendant's Opposition to Plaintiff's Motion for Discovery and to Stay [#318]. Instead, it first asserted this privilege in Defendant[s'] Response to Plaintiffs' Motion to Compel Discovery Responses [#329].

Thus, the DEA did not comply with the initial requirement under Rule 34 of the Federal Rules of Civil Procedure to state an objection to the request on the grounds that it sought privileged information within 30 days of receiving it.  It is the law of this Circuit that when the time within which a party must perform an act has expired, the party must file a motion pursuant to Rule 6(b) of the Federal Rules of Civil Procedure seeking leave to now perform that act and establishing excusable neglect for its failure to meet the deadline. <u>Smith v. District of Columbia</u>, 430 F.3d 450 (D.C. Cir. 2005).  Since the DEA has never filed such a motion, this Court cannot now entertain its belated privilege claim.

Second, when a party withholds information "otherwise discoverable by claiming that the information is privileged" the party must "(i) expressly make the claim; (ii) describe the nature of the documents, communications or tangible things not produced or disclosed– and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5).

The responding party may comply with all of these obligations at once, by objecting to a request on the grounds that it calls for information protected, for example, by the attorney client privilege and producing a second document that complies with Rule 26(b)(5), the so called "privilege log."  The courts differ as to whether such a simultaneous submission is necessary with some holding that it is and others indicating that a party may file the detailed information or "privilege log" within a reasonable time of the initial discovery response under Rule 34. 1 Steven S. Gensler, <u>Federal Rules of Civil Procedure, Rules and Commentary</u> 496 (2010).

Be that as it may, the DEA never complied with these requirements at all and forfeited any privilege claim it asserts now.

12

**4.      Documents concerning the Career Development Plan ("CDP")**

Plaintiffs seek: "All documents concerning the conception, creation, or implementation of any CDP implemented on or after September 27, 1999." [#325], Appendix A at 3.

The DEA responds that the CDP was developed in consultation with plaintiffs' counsel and representatives of plaintiff in 2002.  When the DEA filed a motion asking Judge Sullivan to implement the CDP, the court denied the motion as moot because the parties had advised him at the August 8, 2003, status conference that an agreement regarding the career development process had been reached "and that a written submission documenting the agreement is forthcoming." Order [#125].

The DEA protests that the CDP has been implemented since 2003 and that plaintiffs ask "defendants to give them information that is already in their possession" and, in any event, the information sought "will not resolve the issue of whether or not defendant is in compliance with the requirement that DEA have a career development plan." [#329] at 9.

Plaintiffs counter that the DEA's objection that plaintiffs have the information was not made previously and hence is waived. [#330] at 10.

Plaintiffs do not give me any reason to doubt the DEA's representation.  Apparently, plaintiffs believe that discovery includes the right to demand that the DEA produce what plaintiffs already have.  It would be hard to understand the legitimacy of that argument in any case, let alone one now in its fourth decade.  It is startling that the parties never sat down and reviewed what they had as to this topic leading plaintiffs to shape a narrow demand for what they did not have but needed.  Requiring the DEA to instead produce all documents for a twelve-year period even though plaintiffs have some of them cannot possibly flow from DEA's supposed

"waiver."

Moreover, I have an obligation to construe the Federal Rules of Civil Procedure "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. As I explained above, I do that by insuring that discovery is proportionate, considering, *inter alia*, whether the discovery sought is "unreasonably cumulative or duplicative" and whether the party seeking discovery "has had ample opportunity to obtain the information by the discovery in the action." Fed. R. Civ. P. 26(C)(I) and (ii). It is antithetical to those obligations to require one party to produce what the other party already has and to relieve that party demanding such action from first specifying what it does have and why it needs the rest. Until a party does that, I will not demand the opposing party to do any more and will deny plaintiffs' demand.

**5.      GS-13 documents**

In support of its motion to hold the DEA in contempt, plaintiffs contend that the Working Group[9] reviewed the DEA's promotions procedures at all levels. [#303] at 15. According to plaintiff, at the time of the review, promotions to Grade 13 were automatic for Special Agents who had spent three years at Grade 12 and whose evaluations indicated that they performed work at or above grade level. Id. The Working Group determined "that the procedures for promotions to Grade 13 could be validated, and a subsequent analysis of data summarizing promotions under these procedures found no adverse impact on the class." Id.

---

[9] As part of the joint stipulations the court approved to implement the 1981 Opinion, the court approved the creation of the Working Group, a panel of experts on employment systems and practices charged with developing and recommending promotions systems consistent with that Opinion. Segar v. Smith, Joint Stipulation Regarding Procedures to be Followed in Implementing the Court's Order of February 6, 1981, No. 77-0081 (D.D.C. July 31, 1981).

Plaintiffs complain, however, that on June 15, 2004, the DEA Deputy Administrator, Michele M. Leonhart, created new "policy changes and revisions" to the process used to promote Grade 12 agents to Grade 13. Id., Exhibit 12. Plaintiffs complain that the 2004 procedures were never submitted to the Working Group prior to their implementation and the Working Group "determined that it [the 2004 Leonhart GS-13 procedures] did not describe a validated system, and noted that it possessed a number of significant shortcomings." Id. at 16.

Plaintiffs also represent that a survey was conducted "around 2006," that they have a copy but the DEA will not produce the results. [#303] at 16. Plaintiffs, by a letter dated June 12, 2009, demanded that the DEA advise them "of DEA's current procedures for promotions to Grade 13" and provide them with "written guidelines or procedures governing such promotions, and furnish Plaintiffs with any studies that address possible discriminatory effects of these procedures and any reports summarizing the results of such studies, including the SAC survey that was conducted and the study by the Office of Inspection." Id. Plaintiffs also asked the DEA to inform them whether these promotion procedures had been validated and to provide them with any relevant, validation studies. Id. at 16-17. According to plaintiffs, the DEA never responded. [#325] at 2, n.2.

### (A) Plaintiffs' Demands

Plaintiffs have now demanded instead the following:

> All documents created on or after October 12, 2005, concerning the implementation of the current policy for promotions to GS-13, including without limitation communications between DEA Administrator Michele Leonhart and former or current employees of the Human Resources Division of the DEA.

[#325] Appendix A at 3.

15

### (B) The DEA's Objections

The DEA protests that: (1) the issue pertaining to the GS-13 promotion policy is before a court in another action, threatening duplication of effort; (2) it has already produced: (a) Agent Position Review Criteria used for GS-13 promotions; (b) excerpts from the DEA Personnel Manual concerning the promotion path to GS-13; (c) a June 2004 memorandum from the DEA Deputy Administrator outlining policy changes and revisions for the promotion policy; and (d) a declaration detailing the promotion policy and the procedures for promotion to GS-13.  The DEA also insists that since the Working Group determined that the prior GS-13 policy could be validated and had no adverse impact on the class, plaintiff must make some showing of an adverse impact from the current system before they "are allowed to probe how the current system was implemented." [#329] at 10.

### (C) Duplication

First, as plaintiffs correctly point out, the fact that the issue of the legitimacy of the GS-13 promotion policy is before another forum does not render information pertaining to it immune from discovery in a lawsuit in this forum.  Any concern about duplication of effort or inconsistent decisions are at this point hypothetical and do not negate the DEA's responsibility to provide information that is relevant to a claim or defense or likely to lead to relevant evidence. Fed. R. Civ.P. 26(b)(1).

### (D) Validation

Second, as the DEA concedes, the GS-13 policy that was validated was replaced by a new policy.  While the DEA does not speak to it, plaintiffs' representative on the Working Group, Dr. Irwin L. Goldstein, has stated under oath that (1) the new 2004 procedures lack benchmarks for

evaluating candidates and (2) the 2004 memorandum does not explain whether the raters will be trained in making consistent judgments, without benchmarks as to the value of candidates' experience and (3) the procedures, now in place for several years, should be studied to ascertain whether they have had an adverse impact on African-American agents. [#303], Exhibit 11.  Dr Goldstein then states:

> Under the new procedures, individual SACs and Office Heads have substantial discretion regarding promotion decisions, and all such decisions are made within local offices (although there are provisions for possible review in the Office of Inspections). Moreover, the Working Group understands, based on documents provided to us by Plaintiffs, that under this system, criteria and procedures for such promotions may vary across the DEA's division (i.e., a Detroit-based applicant for promotion to Grade 13 may be required to satisfy different criteria and undergo different procedures than a New York-based applicant for promotion to Grade 13).  The Working Group unanimously agrees that if this is the case, it would, by definition, mean that the DEA's current procedures for promotion to Grade 13 are not–and cannot be– validated.

Id.

While Dr. Goldstein's statements may not meet the DEA's demand that the plaintiffs show some adverse impact from the 2004 procedures, his point is that studies should be conducted addressed to that very point–the impact of the new procedures on Africa American agents.  Given the Working Group's concerns that the new procedures cannot be validated, it is unfair of the DEA to demand that plaintiffs perform those studies as a condition of getting more information that would bear on validation.  Validation is a different issue from impact and information about the former cannot be a logical pre-condition to getting information about the latter.

I therefore conclude that the motion to compel should be granted as to this request.

III. Conclusion

Plaintiffs' demands for (1) the post October 12, 2005 documents, pertaining to the discussions of promotions at meetings of the Career Board; (2) the post-November 15, 2005 documents concerning communications conducted outside of DEA Career Board meetings about DEA promotions to GS-13 or above; and (3) the documents concerning the conception, creation or implementation of any Career Development Plan are denied. Their demands for (1) post-October 12, 2005 documents concerning the termination of the use of the Special Agent in Charge recommendations in the promotion process and (2) documents concerning the implementation of the current policy for promotions to GS-13 are granted. Thus, Plaintiffs' Motion to Compel Discovery Responses [#325] will be GRANTED IN PART and DENIED IN PART.

An Order accompanies this Memorandum Opinion.

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE