**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**HENRY W. SEGAR *et al.*,**

**Plaintiffs.**

**v.** **Civil Action No. 77-81 (EGS/JMF)**

**ERIC HOLDER *et al.*,**

**Defendants.**

## REPORT AND RECOMMENDATION

This case was referred to me for a Report and Recommendation on all outstanding issues, as identified by the parties. See Joint Statement of Issues for Resolution [#368].

## BACKGROUND

The complaint in this case was filed on January 14, 1977. Complaint [Hardcopy #1].[1] The following brief recitation of facts focuses solely on those necessary for resolution of the outstanding issues, which are discussed below.

1. On September 9, 1977, the Court certified the Segar class to pursue declaratory and injunctive relief, under Title VII, for discrimination against African-American Drug Enforcement Administration ("DEA") agents. Order [Hardcopy #28].

2. On February 6, 1981, the Court concluded that the DEA discriminated against African-American agents in six areas: 1) salary; 2) grade at entry; 3) work assignments; 4) supervisory evaluations; 5) discipline; and 6) promotions. Segar v. Civiletti, 508 F. Supp. 690, 715 (D.D.C. 1981), aff'd in part and vacated in part, Segar v. Smith, 738 F. 2d. 1249 (D.C. Cir. 1984). The Court further enjoined the DEA from discriminating against

[1] "Hardcopy" documents are those that do not appear on the electronic docket but can be located in the original hardcopy file kept in the Clerk's Office.

African-American agents in its promotions and required the DEA to implement non-discriminatory promotion systems for Grades 12 and above. Id.

3. On July 31, 1981, the parties entered a joint stipulation agreeing to the creation of the Working Group, which was charged with developing and recommending promotion systems that would be in compliance with the Court's February 6, 1981 order. Joint Stipulation Regarding Procedures to be Followed in Implementing the Court's Order of February 6, 1981 [Hardcopy #188]. Specifically, the Working Group was to be comprised of "representatives of [the Office of Personnel Management ("OPM")] OPM , private contractors whom OPM may retain, and an expert selected by plaintiffs." Id. at 2.

4. On February 17, 1982, the Court held that the defendants must, "upon completion of the validity studies required by this Court's Order of February 6, 1981, proceed to develop and implement effective, nondiscriminatory . . . promotion systems" and "insure that said systems as operated have neither a disparate impact on Black agents nor effectuate disparate treatment of Black agents." Segar v. Smith, No. 77-CIV-81, 1982 WL 214, at *4 (D.D.C. Feb. 17, 1982) (subsequent history omitted). The Court also held that the plaintiffs were entitled to both frontpay and backpay. Id. at *4-5, *6-8. Significantly, the Court held that individual hearings were permissible for DEA agents claiming harm at the GS-7 and GS-9 levels, but that agents at Grades 11 or above would receive a class-wide award. Id. at *2, *5. Finally, the Court also ordered the creation of the Equal Employment Opportunity Monitoring Committee ("EEOMC"), a group to be comprised of eight class members who were responsible for monitoring the DEA's compliance with the terms of the Court's order. Id. at *8-9.

5. On June 26, 1984, the court of appeals reviewed the Court's February 17, 1982 decision and held that, although an award of backpay was appropriate, the methodology identified by the Court was improper. Segar v. Smith, 738 F. 2d. at 1291-93. The court of appeals also held that the Court's mandating promotion goals and timetables was not appropriate and that therefore, the frontpay calculations were impermissible because they were linked to those promotion goals and timetables. Id. at 1294. Finally the court of appeals held that prejudgment interest was not recoverable. Id. at 1295-96.

6. In 1992, the DEA implemented a new system for promotions to Grades 14 and 15. Opinion [Hardcopy #35] at 2. The new process was called the Special Agent Promotion Process ("SAPP"). Id. Under the SAPP, agents who scored high on the SAPP were placed on a Best Qualified List ("BQ List"). Id. The Special Agent in Charge ("SAC") of the division with the vacancy was permitted to submit a list of his recommendations but then the Career Board had the final say in selecting an agent for the vacant position. Id.

7. On September 27, 1999, the Court concluded that the SAC short list recommendations for promotions to Grades 14 and 15 violated the Court's remedial orders and Title VII, and enjoined their use by the DEA. [Hardcopy #35] at 22. The Court also held that the DEA was obligated to implement a career development program to reduce the acknowledged disparate impact of the SAPP. Id. at 22-23.

8. On January 4, 2000, the Court approved the parties' joint stipulation regarding interim procedures to be used for the promotion of DEA agents to Grades 14 and 15. Status Report and Joint Stipulation Permitting the Temporary Use of SAC and Office Head Recommendations in Promotions of DEA Special Agents to the GS-14 and GS-15 Grades [Hardcopy #45/46]. Specifically, the stipulation directed the DEA to "expeditiously

initiate the necessary efforts required to create and implement a permanent validated process for using SAC and Office Head input in promotion decisions." Id. at 2. The stipulation also stated: "In the interim, DEA is permitted to use SAC and Office Head recommendations temporarily in the Career Board's deliberative process when considering Special Agents for promotions to the grades of GS-14 and GS-15 managers." Id.

9. On March 12, 2002, the Court approved the parties' joint stipulation regarding Senior Executive Service ("SES") promotion procedures. Stipulation Implementing a Promotion Process for Selecting DEA Criminal Investigators for Positions in the Senior Executive Service [#104] at 1-2. Contained within the stipulation was a footnote which stated that "nothing in the procedures [were] meant to reduce the authority of the Administrator in selecting persons to fill DEA positions." Id. at 5 n.1.

10. Prior to 2004, the DEA had a policy in place for promotions to Grade 13 that the Working Group found could be validated. Declaration of Irwin L. Goldstein [#303-11] at 6-7. In 2004, the DEA changed that policy. Id. at 8. The Working Group was never informed of the DEA's decision and "the Working Group never approved the system as validated and non-discriminatory." Id.

11. On March 9, 2006, the Court denied the plaintiffs' motion for an injunction to prevent the DEA from promoting Special Agents to the SES unless it was done pursuant to the procedures agreed upon by the parties. Segar v. Ashcroft, 422 F. Supp. 2d 117, 157 (D.D.C. 2006). The Court's decision was based on its conclusion that there had been no meeting of the minds as to the above-referenced footnote and therefore no stipulation in

effect as to whether the DEA could promote a Special Agent who had not applied for a position with the SES. Id.

12. On November 23, 2007, the court of appeals reversed the Court's ruling as to the footnote and held that the stipulation clearly compelled the DEA to follow the agreed-upon procedures when making promotions. Segar v. Mukasey, 508 F.3d 16, 26 (D.C. Cir. 2007). The court of appeals also vacated the injunction imposed by the Court. Id. at 27.

**DISCUSSION**

I. The Issues Before the Court

There remain in this case five areas of dispute: 1) DEA promotions to Grade 13; 2) DEA promotions to Grades 14 and 15; 3) oversight and monitoring; 4) individual relief; and 5) attorney's fees. The parties positions as to each will be briefly summarized below, followed by this Court's recommendations.

A. DEA Promotions to Grade 13

The plaintiffs contend that the Agency's process for Special Agent promotions to Grade 13 violates the Court's orders and that defendants must adopt validated procedures for promotions to Grade 13 and a timeline for implementing such procedures. Plaintiffs' Memorandum Regarding Issues Currently Pending for Decision by the Court [#370] at 8-9. The plaintiffs argue that, although the Court previously ordered the DEA to implement a validated, non-discriminatory process for promotions to Grade 13 and, although such a process was in place prior to 2004, the DEA implemented a new process in 2004 that the Working Group found could not be validated. Id.

The DEA counters that, prior to 2009, promotions to Grade 13 were never the subject of dispute or negotiation between the parties. Defendant's [sic] Memorandum on on Why the

Remaining Isssue Should be Resolved in DEA's Favor [#371] at 4. The DEA argues further that the changes it made in 2004 were beneficial to the plaintiffs and that there is no evidence that the new process is discriminatory. Id. Finally, the DEA contends that if the plaintiffs believe that the new process is discriminatory, they should file a new law suit. Id.

B. DEA Promotions to Grades 14 and 15

The plaintiffs contend that the Agency's process for Special Agent promotions to Grades 14 and 15 violates the Court's orders and that defendants must adopt validated procedures for promotions to Grades 14 and 15 and a timeline for implementing such procedures. [#370] at 5-8.

The DEA counters that it is in compliance with the Court's 1999 order because it ceased using SACs and because it now uses the SAPP in awarding promotions to Grades 14 and 15. [#371] at 3. The DEA also argues that because the plaintiffs approved the SAPP, a validated method, they cannot now argue that the DEA is in violation of the Court's orders. Id. Finally, the DEA contends that the Career Board has never been found to have discriminated, nor have its selections been found to have an adverse impact on plaintiffs. Id.

C. Oversight and Monitoring

The plaintiffs contend that defendants must implement an oversight-and-monitoring program (with the participation of the EEOMC) to ensure the implementation of validated procedures that are free from any discriminatory impact. [#370] at 9.

The DEA argues that it is capable of monitoring its own compliance with the Court's orders and that there is no need to implement a separate oversight and monitoring program. [#371] at 6. The DEA further argues that the EEOMC, like the Working Group, should cease to exist once the DEA is found to be in compliance with all Court orders. Id.

D. Individual Relief

The plaintiffs contend that, pursuant to the Court's 1999 Order, class members are entitled to individual relief from defendants. [#370] at 9-10. The DEA argues that no individual relief is warranted because 1) in 1999, the Court "found no disparate impact in the actual selection of Special Agents to Grades 14 and 15, but only in the use of SAC recommendations, as they existed at the time"; and 2) although the Court's "1999 Order raised the issue of whether individual relief was warranted, it did not direct that Defendant pay individual relief, let alone specify any particular amount." [#371] at 7.

E. Attorney's Fees

The plaintiffs claim that they are owed reimbursement for attorney's fees and costs incurred after May of 1996. [#370] at 11. The DEA argues that if plaintiffs are deemed to be prevailing parties under Title VII, it will have to hire an expert to analyze the plaintiffs' fee request before agreeing to any such payment. [#371] at 7-8.

II. The Court's Recommendations

Resolution of the pending issues is actually quite simple[2] and can be accomplished in the following six steps, provided that tight, inexorable deadlines are set for the completion of each step, with a failure deemed a contempt punishable by a daily fine of no less than $10,000: 1) cease all promotions to Grades 13, 14, and 15 immediately; 2) reconstitute the Working Group within two weeks of this order; 3) appoint a third-party vendor capable of validating promotion procedures within one month of this order; 4) reinstate the pre-2004 policy for promotions to Grade 13 immediately; 5) instate the December 9, 2008 agreement on promotions to Grades 14

[2] At the hearing, I expressed my intention to hold another status hearing but I have decided to dispense with doing so in light of the urgency of getting this case resolved.

and 15 immediately; and 6) continue oversight of DEA compliance into either the indefinite future or until the Court concludes that it is no longer needed.

In addition, the Court must award individual relief for certain class members and attorney's fees. Although these calculations will take time, I am reluctant to slow down the process of completing steps 1 to 6 above to await that award. If my recommendations are accepted, the Court must still award damages and fees. Thus, any appeal of the Court's determination may have to await the resolution of the damages and fees award lest it be deemed interlocutory. I therefore believe that it would be most prudent to sever the award of individual relief and attorney's fees, which will take time to calculate, from the implementation of affirmative relief, lest the long-delayed affirmative relief be held hostage to what could be a protracted process.

Before briefly discussing each step, I note that, in the hearing before me, there was a difficult and irreconcilable conflict between the two statistical experts over whether the hiring data from the last decade permits the conclusion that the promotion policies of the DEA had a discriminatory impact.[3] Examination of this evidence and resolution of that conflict is unnecessary for determination of the issues before me. In my view, the DEA cannot argue that unless plaintiffs show both that the DEA's hiring policies resulted in discriminatory impact and that the DEA failed to validate the systems they have created, it should be permitted to continue implementing its current policies and this case be dismissed. Like it or not, the DEA has agreed to adopt hiring practices that are non-discriminatory and validated. Trying to disconnect one from the other ignores that a promotion system can only be non-discriminatory if, for example, it relies on entirely objective criteria and the persons implementing the system have been trained in

[3] Such a phenomenon has occurred before in this case. See Segar v. Smith, 738 F.2d at 1261-64 (recounting disagreement by statistical experts in the liability phase).

its use. No process is acceptable if it has not first been validated by objective criteria that are in fact universally applied. Dr. Tressie Wright Muldrow, a former member of the Working Group, described a validated promotion process as follows:

> In order for the process to be valid, you have to first come—you have to show[ ] a link between what is the content of the procedure and what it is that you expect in that position. You want to be sure that there is transparency in what it is that you're assessing. You want to ensure that there is training for those who ought to be doing the assessing.
>
> You want to be sure that every person who applies is going to be offered the same information. In other words, the methodology has to be the same for all. So the content of what you're doing has to measure what it is actually needed in that and you're able to show that relationship, and it has to be a strong link . . . Between the content and what it is that is being assessed; the local characteristics, the requirements, all of that has to be strong.

October 27, 2014 Transcript, Testimony of Dr. Muldrow [#394] at 75.

A. <u>Cease All Promotions to Grades 13, 14, and 15</u>

The Court does not believe that the DEA should be permitted, even as a temporary measure, to continue to use promotion processes that are discriminatory. Therefore, to create a powerful incentive for the DEA to accomplish the necessary changes as soon as practicable, the Court recommends that all promotions to Grades 13, 14, and 15 cease immediately until such time as validated procedures have been put into place.

B. <u>Reconstitute the Working Group</u>

In 1981, the Court found that the DEA was discriminating against its African-American agents in six specific areas. The Court then enjoined any further discrimination and directed the DEA, working with the plaintiffs, to develop new non-discriminatory policies. To that end, the parties jointly agreed to the creation of a Working Group which would be tasked with developing and assessing the validity of these new policies. That Working Group is the key to the final

resolution of the issues that separate the parties but, thanks to the passage of time, it no longer functions. One member is dead and the other two are now retired. Therefore, I recommend that the Working Group be reconstituted within the next two weeks, to include the same representatives as first contemplated. In other words, the new Working Group should have 1) representatives from OPM, 2) representatives from a private contractor retained by OPM, and 3) an expert representing the plaintiffs. Once the parties have designated their respective representatives, they shall jointly submit the names to the Court for final approval and formal reinstatement.

C. Appoint a Third-Party Vendor Capable of Validating Promotion Procedures

The Working Group serves only in an advisory capacity and is not tasked with validating promotion procedures. See [#394] at 102. A third-party vendor is needed to perform the required validation. Therefore, this Court recommends that the parties meet and confer and submit to the Court, within the next two weeks, a list of no less than three jointly-recommended vendors, from which the Court may choose an appropriate vendor. This Court further recommends that the costs incurred by the appointment of such vendor be borne by the DEA.

D. Reinstate the Pre-2004 Policy for Promotions to Grade 13

As noted above, the Working Group determined that the policy that was in place prior to 2004, for promotions to Grade 13, could be validated and did not violate the Court's 1981 order. The Court therefore recommends that the 2004 process be re-implemented forthwith.

E. Instate the December 9, 2008 Agreement on Promotions to Grades 14 and 15

As noted above, in 2008, the parties agreed on validated, non-discriminatory procedures for promotions to Grades 14 and 15, which were approved by the Working Group. As with the

promotion process for Grade 13, this Court again recommends the promotion process approved by the Working Group be implemented forthwith.

F. Continue Oversight of DEA Compliance

The Court agrees with the plaintiffs that there needs to be a continuation of the monitoring of the DEA's compliance with the Court's orders but recommends simply that the oversight contemplated by the Court in its February 17, 1982 order be extended. In other words, this Court recommends: 1) that the DEA, though its Equal Employment Opportunity Office ("EEOC"), continue to produce annual reports as described in the 1982 order, to include the data sought in the plaintiffs' August 5, 2014 discovery request;[4] and 2) that the EEOMC[5] continue to monitor the DEA's compliance with the Court's 1982 order.

G. Calculate and Award Individual Relief

As noted above, in 1982, the Court concluded that individual relief hearings were permissible for DEA agents who claimed that they were discriminated against at the GS-7 and GS-9 levels. In 1984, the court of appeals refined the lower court's analysis by 1) affirming that all claims of backpay for discrimination at levels below GS-11 will be resolved in individualized hearings and 2) affirming the lower court's conclusion to award "class wide relief only for discrimination above GS-11." Segar v. Smith, 738 F.2d at 1290. The court of appeals, however, rejected the lower court's methodology and remanded the case with specific instructions. Id. at 1293.

While I hope I am wrong and that the parties will correct me, I cannot find that anything has been done to award backpay in the intervening thirty years. That will now end.

[4] See [#370] at 11.
[5] If not currently constituted, the Court recommends that the EEOMC be reconstituted within two weeeks.

First, I recommend that within the next 60 days, plaintiffs file a list, in spreadsheet format, of all claimants who are asserting a claim for backpay for discrimination at levels below GS-11. For each claimant, plaintiffs will provide 1) the claimant's name, 2) present address; 3) email address; 4) the exact nature of the discrimination claimed (promotion, discipline, etc.); 5) the date (approximate if necessary) of the discriminatory act(s); 6) the damages claimed; and 7) the method used to calculate the damages. Any claim not asserted on that document will be deemed abandoned. Upon receipt of that document, the government shall file its version of that list, noting, as to each claimant and claim, whether it concedes the claim in whole or in part, and if not, what defense it will assert as to that claim. Once the two lists are submitted, the Court should convene a hearing to set deadlines for any discovery to be done as to each claim and a date for each hearing. If there are more than 20 claimants, I urge the Court to appoint a special master, at the expense of the DEA, to render a decision as to each claim.

As to the backpay award for discrimination above GS-11, I appreciate that plaintiffs' expert proffered a statistical analysis that, at one point, had been tendered to the DEA during settlement discussions. October 27, 2014 Transcript [#394] at 39 (analysis marked as confidential, for settlement purposes only). Nevertheless, plaintiffs' expert, Dr. Siskin, indicated that, while he did not completely agree with it, he found it to be a "fairly solid, defined model." Id. at 42. The government protested that it had very little time to prepare to meet the testimony and I decided to take it conditionally, subject to permitting the DEA "an opportunity to prepare a little more of the cross-examination at a later date." Id. at 40-41.

I am reluctant to close this record on the crucial question of damages for I am not certain that plaintiffs are unequivocally offering the analysis as their damage calculation. I therefore recommend that, within thirty days, plaintiffs state with certainty what damage model they are

proposing. That statement must be in writing and be accompanied by an expert report that supports it and an identification of all other evidence that supports it. Upon receipt of those documents, the DEA will have 60 days within which to either concede the validity of plaintiffs' analysis or to submit a countering report by its expert and a statement of all other evidence that supports its position. That submission will begin a thirty day period of discovery during which the parties may engage in discovery, including the taking of the depositions of each other's experts. At that point, if there is no agreement, the damages issue should proceed to a hearing.

H. Award Attorney's Fees

In 1982, the Court held that, as a prevailing party under Title VII, plaintiffs are entitled to reasonable attorney's fees and costs. Segar v. Smith, 1982 WL 214, at *3. The Court declined to make such an award, however, because no specific request had yet been made. Id. According to the plaintiffs, the DEA has already reimbursed them for fees and costs incurred through May of 1996. This Court therefore recommends that the plaintiffs provide the DEA, within 60 days, with a detailed request for attorney's fees and costs incurred from June 1996 until the end of October 2014. Sixty days thereafter, the government shall either concede plaintiffs' entitlement to fees or file any necessary opposition. The data produced by plaintiffs and any data produced by the DEA shall be in spreadsheet format, which permits the data to be manipulated. This Court further recommends that the DEA then pay plaintiffs any fees and costs it deems are due for the period from June 1996 to October 2014. Any final petition for fees and costs can be submitted and adjudicated at the conclusion of the case after a judgment for backpay has been entered.

**Failure to file timely objections to the findings and recommendations set forth in this report may waive your right of appeal from an order of the District Court adopting such findings and recommendations. See Thomas v. Arn, 474 U.S. 140 (1985).**

U.S. DISTRICT & BANKRUPTCY COURTS
DISTRICT OF COLUMBIA

Digitally signed by John M. Facciola
DN: c=US, st=DC, l=Washington, email=John_M._Facciola@dcd.uscourts.gov, o=United States District Court, cn=John M. Facciola
Date: 2014.12.08 11:56:44 -05'00'

**JOHN M. FACCIOLA**
**UNITED STATES MAGISTRATE JUDGE**