## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

HENRY SEGAR, *et al.*,

      Plaintiffs,

    v.

WILLIAM P. BARR,
as U.S. Attorney General,

      Defendant.

Civ. Action No. 77-0081 (EGS)

## MEMORANDUM OPINION

Several decades ago this Court concluded that the Drug Enforcement Agency ("DEA") discriminated against African-American special agents in several areas of employment including, but not limited to, its promotion practices. The Court subsequently enjoined the DEA from discriminating against these agents, and, among other things, required the DEA to "insure that [its promotion practices] as operated have neither a disparate impact on Black agents nor effectuate disparate treatment of Black agents." *Segar v. Smith*, Civ. Action No. 77-civ-81, 1982 WL 214 at *1 (D.D.C. Feb. 17, 1982). Over the course of several years, the parties have negotiated a series of stipulations related to remedial measures in an attempt to comply with the Court's order.

Pending before the Court is plaintiffs' motion for compliance with this Court's order for the DEA to craft a

nondiscriminatory promotion practice. After the parties narrowed their disagreement to a few remaining issues, the motion was referred to Magistrate Judge John M. Facciola for a Report and Recommendation ("R&R"). The R&R recommends several remedial measures designed to ensure that the DEA is in compliance with the Court's Order to cease discrimination in its promotion practices. *See* R&R, ECF No. 395.

Defendant has objected to several of those remedial measures. Upon consideration of the R&R, defendant's objections, plaintiffs' response to those objections, and the relevant law, the Court adopts in part the R&R.

## I. Background

The Court will not restate the full factual background of this case, which is set forth in the R&R and in the Court's opinion in *Segar v. Civiletti*, 508 F. Supp. 690 (D.D.C. 1981). *See* R&R, ECF No. 395 at 1–5.[1] By way of general overview, this case concerns promotion policies by the DEA that were found to be discriminatory against African-American special agents. *See Civiletti*, 508 F. Supp. at 693–95. A class of these agents, alleging violations of Title VII, was certified by this Court. *Id.* After a two-week trial, the Court concluded that the DEA

---

[1] When citing electronic filings throughout this Opinion, the Court cites to the ECF header page number, not the page number of the filed document.

discriminated against the class across a range of employment practices. *Id.* at 712–15. Relevant to this case, the Court found that the DEA discriminated against African-American agents with respect to promotions. *Id.* at 714–15. The Court enjoined the DEA from engaging in any discriminatory practices in its promotions and required the DEA to implement nondiscriminatory promotion systems from promotion Grades 12 and above.[2] *Id.*

With the goal of complying with the Court's order, the parties agreed to create "the Working Group," a panel of professionals charged with developing and recommending promotion systems in line with that order. R&R, ECF No. 395 at 2. The Working Group was to be comprised of three members: (1) a representative from the Office of Personnel Management ("OPM"); (2) a private contractor retained by OPM; and (3) an expert selected by plaintiffs. *Id.* In addition to establishing the Working Group, the parties also submitted proposals for further relief. *Id.*

After considering the parties' proposals, the Court ruled that the DEA needed to develop and implement effective, nondiscriminatory promotion systems which "insure that the new systems neither have a disparate impact on black agents nor effectuate disparate treatment of black agents." *Segar v. Smith*,

---

[2] Promotions from GS-7 to GS-9 and from GS-9 to GS-11 were effectively automatic. *See Civiletti*, 508 F. Supp. at 701.

No. 77-civ-81, 1982 WL 214 at *4 (D.D.C. Feb. 17, 1982).
Accordingly, the Court ordered the creation of the Equal
Employment Opportunity Monitoring Committee (EEOMC), a group
tasked with monitoring the DEA's compliance with the Court's
Order. *Id.* at *8-9.

The Court also held that plaintiffs claiming harm for
discriminatory promotion practices at the GS 7-9 levels were
entitled to individual hearings to determine backpay. *Id.* at *9.
For agents at Grade 11 and above, however, the Court held that
class-wide relief was the appropriate award. *Id.* at *2-5. The
Court of Appeals for the District of Columbia ("D.C. Circuit")
affirmed the Court's liability determination and the award for
class-wide backpay, but vacated portions of the order that are
not relevant to this case. *Segar v. Smith*, 738 F.2d 1249 (D.C.
Cir. 1984).

Relevant to this motion, the DEA later implemented the
Special Agent Promotion Process ("SAPP"), which was a new system
for promotions for Grade 14 and 15 agents. Opinion dated Sep.
27, 1999 ("Sept. 27, 1999 Opinion"), ECF No. 35 at 2 (hard
copy). Under SAPP, the agents who score the highest on the SAPP
evaluation system were included on a best qualified list ("BQ
list"). *Id.* Agents on the BQ list were all considered equally as
qualified for advancement to the vacant position. *Id.* The
Special Agent in Charge ("SAC") for the division with the

vacancy would submit a short list of recommended employees. *Id.*
The Career Board, aided with these short lists, then made the
final determination about who was selected for a vacancy. *Id.*
There was a "very high correlation between SAC short list
recommendations and Career Board selections." *Id.* at 7.

Plaintiffs filed a motion for compliance with the Court's
Order arguing that use of the SAC short list was a violation of
Title VII because it had a disparate impact on African-American
special agents. *Id.* at 1-4. The Court agreed. The Court reasoned
that although the SAPP program as a whole did not produce a
significant disparity between promotions amongst African-
American agents and other agents, the evidence showed that the
SAC short list method had adversely affected promotion
opportunities for African-American agents. *Id.* at 6-22. Because
these agents were discriminated against because of their race,
there was a violation of the Title VII and the Court's Order,
regardless of whether the bottom-line number of employees
receiving promotions did not show the disparate impact. *Id.* at
6-7, 22.[3] Accordingly, the Court enjoined the DEA from use of the

---

[3] Although African-American agents were underrepresented on the
short lists, the disparate impact was not always visible in
promotion numbers because "the Career Board tend[ed] to
'overselect' African-American agents when they appear on SAC
short lists, and also when the Career Board bypasses the SAC
short list." Sept. 27, 1999 Opinion, ECF No. 35 at 5 (hard
copy).

SAC short list method. *Id.* at 22. The Court also directed the parties to brief the issue "of fashioning individual relief" for plaintiffs who were discriminated against by the use of the SAC short list. *Id.*

The parties filed a joint stipulation recommending an interim method of promotions for Grade 14 and 15 promotions which the Court approved. *See* R&R, ECF No. 395 at 3-4. With regard to the Grade 13 promotions, in 2004 the DEA changed the promotion policy from a pre-2004 policy, which the Working Group found could be validated, to a policy that the Working Group was not aware of. *Id.* at 4. Accordingly, the new Grade 13 promotion policy was not validated nor approved by the Working Group. *Id.*

Plaintiffs then filed the motion for compliance at issue in this case, alleging that several of the DEA's actions, including the DEA's changed policy for promotions to Grade 13, violated the Court's Orders. Pls.' Mot. for Compliance, ECF No. 303 at 7. Defendant filed a motion to vacate the motion for compliance, arguing that it had fully complied with the Court's orders. *See* Mot. to Vacate, ECF Nos. 315 and 316. The motion was referred to a magistrate judge for a R&R.

Magistrate Judge Facciola held a hearing in which the parties presented expert testimony and other evidence in support of their respective motions. Judge Facciola concluded that plaintiffs were entitled to relief and outlined several measures

that would bring defendant into compliance with the Court's order. The measures were as follows: (1) cease all promotions to Grades 13, 14, and 15; (2) reconstitute the Working Group; (3) appoint at third-party vendor capable of validating promotion procedures; (4) reinstate the pre-2004 policy for promotions to Grade 13; (5) implement a prior agreed upon procedure for promotions to Grades 14 and 15 which was approved by the Working Group; (6) continue oversight of DEA compliance with the Order; (7) award relief for claims of backpay for DEA agents discriminated against in promotions; and (8) award attorney's fees to plaintiffs. R&R, ECF No. 395 at 9–14.

Defendant has objected to several of those remedial measures. Def.'s Obj., ECF No. 399. The objections are ripe for review.

## II. Standard of Review

Pursuant to Federal Rule of Civil Procedure 72(b), once a magistrate judge has entered a recommended disposition, a party may file specific written objections. The district court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to," and "may accept, reject, or modify the recommended disposition." Fed. R. Civ. P. 72(b)(3). Proper objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for objection." Local Civ. R. 72.3(b). "As

numerous courts have held, objections which merely rehash an argument presented and considered by the magistrate judge are not 'properly objected to' and are therefore not entitled to de novo review." *Shurtleff v. U.S. Envtl. Prot. Agency*, 991 F. Supp. 2d 1, 8 (D.D.C. 2013)(quoting *Morgan v. Astrue*, Case No. 08–2133, 2009 WL 3541001, at *3 (E.D. Pa. Oct. 30, 2009) (collecting cases)). Likewise, a court need not consider cursory objections made only in a footnote. *Hutchins v. District of Columbia*, 188 F.3d 531, 539 n.3 (D.C. Cir. 1999).

## III. Analysis

As stated above, the R&R provides several recommendations as to what actions are necessary to bring the DEA into compliance with the Court's order to end discrimination in its promotion practices. The recommendations are as follows: (1) cease all promotions to Grades 13, 14, and 15; (2) reconstitute the Working Group; (3) appoint a third-party vendor capable of validating promotion procedures; (4) reinstate the pre-2004 policy for promotions to Grade 13; (5) implement a prior agreed upon procedure for promotions to Grades 14 and 15 which was approved by the Working Group; (6) continue oversight of DEA compliance with the Order; (7) award relief for claims of backpay for DEA agents discriminated against in promotions; and (8) award attorney's fees to plaintiffs. R&R, ECF No. 395 at 9–14.

Plaintiffs agree with all the recommendations of the Magistrate Judge. The defendant initially objected to the majority of the recommendations, but has since agreed to comply with several of them. *See generally* Joint Status Report ("JSR"), ECF No. 416. The Court will first briefly discuss the recommendations to which the parties agree; and then turn to the contested issues in this case.

## A. Resolved Objections

The parties agree that the objections to the R&R's recommendation to reconstitute the Working Group and for continued oversight of DEA compliance have been resolved. The Court additionally finds that the parties do not have a genuine dispute about the process for awarding attorney's fees in this case. The Court will briefly explain the recommendations for these resolved objections.

### 1. Reconstitute the Working Group

The R&R found that the Working Group was integral to the "final resolution of the issues that separate the parties," and that it was no longer functioning. R&R, ECF No. 395 at 9–10. The parties agree with the recommendation that the Working Group should continue to function in its intended role. To that end, this Court granted plaintiffs' motion for Dr. Suzanne Tsacoumis to serve as their representative on the Working Group. *See* Minute Order of October 28, 2016 (granting motion to appoint Dr.

Tsacoumis to the Working Group). Furthermore, in August of 2017, the parties moved to appoint Dr. Margaret Barton to the Working Group. *See* ECF No. 418. In that motion, the parties explained that with the addition of Dr. Barton, the Working Group would be comprised of the required three members and would then be fully operational. *Id.* at 2. The Court granted the motion and at this time, to the Court's knowledge, the Working Group is fully functioning. In light of these developments the Court adopts the R&R's recommendation to reconstitute the Working Group.

### 2. Continued Oversight of DEA Compliance

The R&R recommends continued oversight and monitoring of the DEA to ensure that it complies with the Court's Order. R&R, ECF No. 395 at 11. To that end, the R&R recommends annual reports from the EEOC and continued monitoring of compliance with the Court's Order to cease discrimination. *Id.* Defendant does not object to this recommendation and states that it has continued to produce annual reports through the DEA's EEO Office and the EEOMC has monitored DEA's compliance. *See* JSR, ECF No. 416 at 6. The Court will adopt this recommendation and order oversight of the DEA's compliance with the 1982 Order until a further order of the Court.

### 3. Attorney's Fees

The R&R recommends that the Court order plaintiffs to provide a detailed request for attorney's fees and costs

incurred from June 1996 to present. R&R, ECF No. 395 at 13. Defendant then will have the opportunity to either object to the amount requested if the parties cannot reach an agreement on the fee award. *Id.*

Plaintiffs believe that this recommendation remains contested, however the parties appear to be in a heated agreement over this issue. Defendant has not argued that fees are impermissible in this case; rather defendant has stated that it does not object to an award of fees if plaintiffs are viewed as prevailing parties. JSR, ECF No. 416 at 4. Defendant's only limitation is that "any such fee request would need to be evaluated for reasonableness, proportionality and for other . . . legal and equitable considerations." *Id.* Accordingly, defendant agrees with the recommendation that plaintiffs submit a detailed fee request. *Id.* Therefore the Court adopts the recommendation and orders plaintiffs to provide to defendant a detailed request for attorney's fees from the period of June 1996 to present. Defendant shall thereafter file an appropriate response.

**B. Contested Objections**

The remaining issues in this case are the R&R's recommendations to (1) implement a prior agreed upon procedure for promotions to Grades 14 and 15 which was approved by the Working Group; (2) appoint a third-party vendor to validate any

11

proposed promotion practices; (3) determine the appropriate method and award for backpay; and (4) to implement appropriate enforcement mechanisms (i.e., freezing all promotions until compliance and imposing a $10,000 per day fine). The Court addresses the contested issues in this case in turn.

### 1. The Proper Policy for Promotions to Grades 14 and 15

The R&R recommends that the parties implement the agreed upon promotion practices approved by the Working Group in 2008 ("2008 Plan") that were found to be validated and non-discriminatory. R&R, ECF No. 395 at 10–11. Defendant argues that this recommendation is erroneous for two principal reasons. The first reason is that the R&R is mistaken because the 2008 Plan was not a plan to which the parties agreed, but rather a counter-proposal by plaintiffs that the DEA did not accept. Def.'s Obj., ECF No. 399 at 13–14. Defendant argues that the appropriate promotion policy, the one that they did agree to, is the October 2003 plan that was developed and validated by Elaine Pulakos ("Pulakos Plan") a third-party vendor. *Id.* at 14–15.

Defendant's second argument is that the 2008 Plan cannot be reliably shown to be the plan that the Working Group approved. *Id.* at 19–20. Because the 2008 plan was never validated or approved by the Working Group, the defendant argues, using that plan would be a violation of the R&R's own recommendation for a promotion process approved by the Working Group. *See* R&R, ECF

No. 395 at 10-11. Accordingly, defendant argues it would be reversible error to adopt a recommendation based on a clearly erroneous assessment of the evidence. Def.'s Obj., ECF No. 399 at 16.

Plaintiffs counter that an agreement on the plan is not a requirement of the Court's Order for defendant to adopt hiring plans that are non-discriminatory and validated. Pls.' Resp., ECF 401 at 5. Plaintiffs further note that although the Pulakos and 2008 plans are "substantially the same with respect to the essential elements of the promotion process," the Pulakos Plan fails to outline the criteria used to rate candidates for promotions, and does not include specific time-frames or deadlines for the different steps in the promotion process. *Id.* at 6.

The Court declines to adopt the R&R's recommendation of implementing the 2008 Plan. The R&R refers to the 2008 Plan as one that was agreed upon by the parties and the Working Group, and validated, presumably by a third party, but the Court can discern no evidence in the record that the parties came to an agreement on the plan or that it was ever validated. Although an agreement on the particulars of a plan is not a requirement of the Court's Order, the R&R's recommendation that the defendant implement a validated plan that the parties agreed to is a sound one. More important to the Court's decision is that the Court

does not see any evidence that the 2008 plan was validated. This Court has previously ordered that defendant instill a non-discriminatory process that is *validated*, and to the extent the parties agree on a plan that meets that requirement, the Court is inclined to allow the implementation of that plan.

The question remains as to the appropriate plan for promotions to Grades 14 and 15. Several factors militate towards using the Pulakos Plan. First, the Pulakos Plan has gone through the validation process whereas there is no evidence that the 2008 Plan has been validated. Second, the Pulakos Plan was created with the input of plaintiffs, the Working Group, and DEA management. Def.'s Obj., ECF No. 399 at 6. Plaintiffs concede that the Pulakos Plan is a "significant improvement over the status quo" and that the Pulakos Plan and 2008 Plan "are substantially the same with respect to the essential elements of the promotion process." Pls.' Resp., ECF 401 at 4, 6.

Because the Pulakos Plan is the only plan that meets the requirements of a validated non-discriminatory plan, the Court is inclined to order the use of that Plan with a few modifications. There are several deficiencies in the plan such as its lack of specific time frames and deadlines. Accordingly, the Court orders that defendant submit a modified plan to plaintiffs and the Working Group which includes specific time frames and deadlines for the various steps in the promotion

process, and rating criteria to evaluate promotion candidates' accomplishments.[4] If plaintiffs and the Working Group concur with the modified plan, the parties shall request implementation of the plan for future promotion practices, subject to a decision by the parties as to whether the plan requires further validation.

### 2. Appointing a Third-Party Vendor for Validation

Defendant agrees that if changes are made to the Pulakos Plan that would require separate validation, defendant is agreeable to working with plaintiffs "to identify a mutually acceptable third-party vendor to validate the plan." JSR, ECF No. 416 at 6. Therefore, after the modifications to the Pulakos Plan are completed, the parties and the Working Group are directed to meet and confer to determine if the modified plan should be re-validated. The Court notes that the fact that the Pulakos Plan was validated at its development does not end the issue. As plaintiffs point out, a plan that was validated at one point needs to be periodically reviewed to determine whether it continues to be valid, as is customary with other validated plans. Pls.' Resp., ECF No. 401 at 16.

---

[4] Defendant has already made undefined changes to the Pulakos Plan in order to "(1) bring the plan more in line with technological advances . . . and (2) enhance the fairness of process through added transparency and objectivity." JSR, ECF No. 416 at 5. This Memorandum Opinion and accompanying Order is not intended to supplant those modifications.

### 3. Individual Relief

The R&R recommends individual relief for plaintiffs Grades 11 and below, and class-wide relief for Grades 14 and 15 for backpay owed due to discrimination. The parties agree that any individuals who claimed discrimination at Grades 11 and below have already stipulated to procedures for their compensation. Pls.' Resp., ECF No. 401 at 7 n.6. Therefore, this Court will not adopt the R&R's recommendation to provide a hearing on the issue of individual relief for such plaintiffs.

The parties disagree about the scope of relief, if any, for employees claiming discrimination in promotions to Grades 14 and 15. The R&R recommends that plaintiffs submit a proposed damages model and calculation for these plaintiffs, that defendant respond to that model, and a discovery period be held for 30 days. R&R, ECF No. 395 at 12–13. If the parties cannot reach an agreement on the damages model, the R&R recommends the Court hold a hearing on the issue. *Id.*

Defendant argues that the issue of damages for employees claiming violations at the GS-14 and GS-15 levels is premature because, according to defendant, there has been no finding of liability on that issue. Def.'s Obj., ECF No. 399 at 21–22. Specifically, defendant argues that because the Court only found a disparate impact in the use of SAC short list recommendations

to select employees, but not in the actual selection of employees as a group, therefore there is no real violation of Title VII or need for individual relief. *Id.* Absent such a finding of discrimination, defendant argues, the Court should not allow discovery or calculation of damages. *Id.*

Defendant's arguments are identical to the arguments rejected by this Court in its September 27, 1999 Opinion. *See* Sept. 21, 1999 Opinion, ECF No. 35 (hard copy). As the Court stated nearly 20 years ago, "[t]he fact that there may be no ultimate disparate impact on the *group* of African-American agents eligible for promotion is irrelevant if Plaintiffs can show that *individual* African-American agents have been denied promotion opportunities by an unlawful selection device, *i.e.* reliance on SAC short lists." *Id.* at 6 (emphasis added)(citing *Connecticut v. Teal*, 457 U.S. 440, 451 (1982)). In other words, once plaintiffs have shown that defendant has engaged in an unlawful selection device, it is no defense that defendant, through some counteracting measure, has compensated for this illegal method by "hiring or promoting a sufficient number of black employees to reach a nondiscriminatory 'bottom line.'" *Teal*, 457 U.S. at 453.

*Connecticut v. Teal* is the seminal case on this issue. *Id.* *Teal* concerned a selection process for supervisory positions which required a written examination that was not shown to be

related to job performance. 457 U.S. at 443. Although the written examination caused a disparate impact on African-American candidates the defendant applied an "affirmative action" program before final decisions were made which compensated for that disparate impact and was implemented "in order to ensure a significant number of minority supervisors" were selected. *Id.* at 444. Defendant argued that, despite the alleged discriminatory practice--requiring a test that has not been shown to be job-related--the general promotion process did not have an adverse impact on African-American candidates as a group, and therefore there could not be a violation of Title VII because their "bottom-line" promotion numbers were not discriminatory. *Id.*

The Court rejected this "bottom-line result" theory. After holding that the practice at issue, an exam that bars a disparate number of black employees from consideration for promotion that has not been shown to be job related, presents a claim for a violation of Title VII, the Court explained that any "bottom-line" defense was unworkable because the Supreme Court had never read Title VII "as requiring the focus to be placed . . . on the overall number of minority or female applicants actually hired or promoted." *Id.* at 450. Rather, the focus of the Act is on "employment and promotion requirements that create a discriminatory bar to *opportunities*." *Id.* In other words,

because the "principal focus of the statute is the protection of the *individual employee*, rather than the protection of the minority group as a whole," an employer is still liable for a Title VII violation if it uses an unlawful selection device which affects individual employees, notwithstanding the fact that there may be some counteracting process on the back end that protects the group as a whole. *See id.*

In this case, the Court has already found that the use of the SAC short list had a disparate impact on African-American agents and thereby violated Title VII and the Court's remedial order. Sept. 27, 1999 Opinion, ECF No. 35 at 22 (hard copy). Relying on *Teal*, the Court held that plaintiffs had shown that the use of the SAC short list had a disparate impact on African-American agents, and therefore there was a violation of Title VII notwithstanding the fact that the Career Board that ultimately made the decisions tried to counteract the discrimination by favoring the few African-American employees who actually made it on the list. *See Id.* Thus the Court found a violation of Title VII and its remedial order and directed the parties to brief the issue of individual relief. *Id.* The defendant's claim that there has been no liability finding in the Court's September 1999 Opinion, is either a fundamental misunderstanding of the Court's Memorandum Opinion, the law supporting the Opinion, or both.

Accordingly, Court will adopt the R&R's recommendation on this issue and will order plaintiffs to state with certainty the damage model they propose, and allow defendant to either concede the validity of the model or file an opposition. If defendant does file an opposition, the Court will order a discovery period including depositions of experts. If there is no agreement after the discovery period, the damages issue shall be resolved by the Court.

### 4. Appropriate Enforcement Mechanisms

The R&R recommends several measures as appropriate to ensure enforcement with the procedures outlined above. The measures are to freeze promotions to Grades 13, 14, and 15, immediately until the validated procedures have been put in place; and a civil penalty of $10,000 per day if defendant fails to comply with the Court's Order. R&R, ECF No. 395 at 7.

In light of the fact that defendant has reinstated the pre-2004 promotion system for promotions to Grade 13, and has taken steps to implement the validated Pulakos Plan as to Grades 14 and 15, no civil monetary penalty or an order freezing promotions is warranted at this time. Indeed, plaintiffs agree that such sanctions would be unnecessary if defendant implemented those measures. Pls.' Resp., ECF No. 401 at 12.

### IV. Conclusion

For the foregoing reasons the court adopts in part the R&R.

An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:**      **Emmet G. Sullivan**
             **United States District Judge**
             **June 25, 2019**