# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

HENRY W. SEGAR, et al.,

               Plaintiffs,

     vs.

WILLIAM P. BARR and
UTTAM DHILLON,

               Defendants.

Civil Action No. 77-0081 (EGS)

## PLAINTIFFS' MOTION FOR
## AWARD OF ATTORNEYS' FEES AND COSTS

Pursuant to 42 U.S.C. § 2000e-5(k), Federal Rule of Civil Procedure 54(d), and Local Civil Rule 54.2, plaintiffs move for an order awarding them attorneys' fees and costs reasonably incurred in connection with this litigation between June 1, 1996, and June 25, 2019 (inclusive). For this 23-year period, plaintiffs seek $11,913,741.67 in attorneys' fees and $770,851.37 in costs. The factual basis and legal grounds for this request are set out in the accompanying memorandum and attached exhibits.[1]

---

[1] This Court ordered plaintiffs to provide defendants with a detailed request for attorneys' fees from June 1996 to the present. Dkt. 424 at 10-11. Plaintiffs have done so, and their motion is similarly limited to that time period. But plaintiffs are entitled to fees and costs for the entire duration of the litigation, which is ongoing. Plaintiffs therefore reserve the right to update their request for fees and costs (or make a separate supplemental request) to account for attorneys' fees and costs reasonably incurred after June 25, 2019.

Respectfully submitted,

/s/ Brian C. Smith
Steven F. Cherry, D.C. Bar #431473
Daniel S. Volchok, D.C. Bar #497341
Brian C. Smith, D.C. Bar #502323
WILMER CUTLER PICKERING
    HALE & DORR LLP
1875 Pennsylvania Avenue N.W.
Washington, D.C.  20006
Tel.:  202.663.6000
Fax:  202.663.6363

Date: January 17, 2020

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

HENRY W. SEGAR, et al.,

                   Plaintiffs,

     vs.

WILLIAM P. BARR and
UTTAM DHILLON,

                  Defendants.

Civil Action No. 77-0081 (EGS)

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS**

Since the 1970s, the Drug Enforcement Administration (DEA) has engaged in race discrimination in its employment practices, in violation of Title VII of the Civil Rights Act of 1964. Plaintiffs, a class of African-American current and former DEA Special Agents, filed this case in 1977 to end those discriminatory practices. After a trial, this Court ruled in plaintiffs' favor, and the D.C. Circuit largely affirmed. *See Segar v. Civiletti*, 508 F. Supp. 690, 712-715 (D.D.C. 1981), *aff'd in relevant part sub nom. Segar v. Smith*, 738 F.2d 1249 (D.C. Cir. 1984). This Court accordingly ordered defendants to implement promotion procedures that "neither have a disparate impact on Black agents nor effectuate disparate treatment of Black agents." *Segar v. Smith*, 1982 WL 214, at *4 (D.D.C. Feb. 17, 1982). DEA's procedures, this Court ordered, also had to be validated by the Working Group, a group consisting of two representatives of the Office of Personnel Management and one expert selected by plaintiffs that was formed for the purpose of developing effective, non-discriminatory personnel practices. Further, this Court established the Equal Employment

- 1 -

Opportunity Monitoring Committee (EEOMC) to oversee defendants' ongoing compliance with this Court's orders.

Because defendants have not willingly complied with the Court's order to stop the DEA's unlawful discrimination, plaintiffs have had to spend the last several decades litigating to bring the DEA into compliance.

For example, by 1996 it became apparent that defendants were continuing to discriminate in promotion decisions with respect to Grades 14 and 15. In 1997, therefore, plaintiffs moved for a compliance order to remedy defendants' continuing discrimination. *See* Dkt. 1. After an evidentiary hearing, this Court issued an order agreeing with plaintiffs that defendants were continuing to discriminate in promotions. *See* Dkt. 35 at 22. The Court subsequently approved a joint stipulation regarding interim procedures to be used for the promotion of DEA agents to Grades 14 and 15, pending prompt development and implementation of validated, non-discriminatory promotion procedures. But DEA failed to follow through; it never implemented any such validated, non-discriminatory promotions procedures. *See* Dkt. 46.

In 2002, this Court approved another joint stipulation regarding promotion procedures, this time with respect to the Senior Executive Service ("SES"). Dkt. 104. But in 2003, DEA violated that joint stipulation. In 2004, plaintiffs thus moved for a temporary restraining order barring DEA from deviating from the stipulated procedures. Following proceedings in this Court, the D.C. Circuit held that defendants had violated the 2002 stipulation and order by failing to follow the agreed-upon procedures for SES promotions. *See Segar v. Mukasey*, 508 F.3d 16, 17-18 (D.C. Cir. 2007). Finally, over four years ago—after defendants fought for nearly five years against plaintiffs' latest motion for contempt and compliance—Magistrate

Judge Facciola endorsed plaintiffs' position and recommended that practically all of their requested relief be granted. *See* Dkt. 395. This Court has now adopted that report and recommendation in large part. *See* Dkt. 424.

These various victories—and other progress that has been made through this litigation toward ending defendants' discrimination—have been the result of many thousands of hours expended by plaintiffs' counsel. Title VII authorizes compensation for those hours (and associated costs). *See* 42 U.S.C. § 2000e-5(k). Recognizing that, this Court has previously awarded fees for counsel's work in this matter. *See, e.g.*, *Segar v. Smith*, 1982 WL 214, *10 ("Plaintiffs, as prevailing parties, are entitled to an award of costs, including reasonable attorneys' fees[.]"); Stipulation of Settlement and Payment of Attorneys' Fees and Costs at 3 (Oct. 19, 1987) (awarding attorneys' fees through May 31, 1987). But plaintiffs have not received any compensation for work since May 31, 1996—more than two decades—even though plaintiffs' work during that time was far from minimal. Indeed, that work included a bench trial, multiple evidentiary hearings, TRO/PI proceedings, an appeal to the D.C. Circuit, and at least five rounds of negotiations and mediations.

To finally provide compensation for this work, Magistrate Judge Facciola recommended that plaintiffs be awarded attorneys' fees once they provided a detailed fee request, and further recommended that defendants have the opportunity to review the request and "file any necessary opposition" if the parties cannot reach agreement on the amount of the fee awards. Dkt. 395 at 13. This Court adopted that recommendation. Dkt. 424 at 10-11. Plaintiffs therefore presented a detailed fee request to defendants, who refused to agree that the requested amount should be awarded. Plaintiffs are therefore submitting the issue to this Court for resolution. As explained below and in the attached documentation, for the 23-year

period from June 1, 1996, through June 25, 2019, plaintiffs should be awarded $12,684,593.04

in attorneys' fees and costs. In arriving at that figure, plaintiffs—to avoid protracted litigation

as to the reasonableness of their request—have made significant reductions, discussed below,

to both the hourly rates used and the number of hours worked.[1]

## DISCUSSION

### I.    PLAINTIFFS ARE PREVAILING PARTIES

Plaintiffs are considered prevailing parties, and thus entitled to attorneys' fees, "if they

succeed on any significant issue in litigation which achieves some of the benefit the parties sought

in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). That standard is met here.

During the time period covered by this fee request, plaintiffs have achieved a series of victories,

dating back to this Court's 1999 order. *See supra* pp.1-3; *infra* pp.7-9. This Court has now

repeatedly confirmed that DEA must comply with its prior orders by conferring with the Working

Group and EEOMC to implement validated, non-discriminatory promotion procedures at Grades

14 and 15 (and with respect to the SES), and it has ordered that DEA undergo continued

---

[1] In the parties' latest joint status report, defendants announced their intention to move to stay consideration of plaintiffs' fee request so that the parties can engage in settlement negotiations. Dkt. 430 at 3. There is no basis for such a stay. To begin with, defendants' profession of interest in settlement is difficult to reconcile with the fact that they never mentioned settlement during the entire time that their objections to the magistrate judge's report and recommendation were pending before this Court. It is also difficult to reconcile with the fact that, despite having plaintiffs' request for fees and costs for approximately 6 months, defendants have to this day not made a settlement offer. Ex. 1, Smith Decl. ¶ 12. In any event, settlement negotiations do not require a stay; any such negotiations could proceed in parallel with continued movement toward a judicial resolution. Finally, it bears reiterating that for nearly *forty years* now, defendants have doggedly refused to comply with this Court's orders to stop discriminating, and vigorously opposed plaintiffs' efforts to bring about such compliance—including with myriad delay tactics. Given all this, there is ample basis to conclude that a stay motion would simply be the most recent of a long string of attempts by defendants to avoid complying with this Court's orders, to continue discriminating against African-American Special Agents, and to put off a final resolution of this case. The Court should reject any such attempt.

monitoring by the EEOMC for compliance with this Court's orders.  Dkt. 423, at 1.  Plaintiffs are therefore prevailing parties.

## II.     THE REQUESTED FEES ARE REASONABLE

Title VII allows this Court to award "reasonable" attorneys' fees.  42 U.S.C. § 2000e-5(k).  A reasonable fee is determined by calculating the lodestar—the number of hours reasonably expended multiplied by a reasonable hourly rate.  *See, e.g.*, *Hensley*, 461 U.S. at 433; *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980) (en banc).  The fees requested here satisfy the two relevant parts of the D.C. Circuit's three-part reasonableness analysis for fee requests:  (1) determining the reasonable hourly rate and (2) determining the number of hours reasonably expended.  *See Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995).[2]

### A.     Counsel's Hourly Rates Are Reasonable And Are Recoverable At The Current Hourly Rate

#### 1.     Counsel's hourly rates are reasonable

A reasonable hourly rate for calculating attorneys' fees is one that is appropriate given the attorneys' billing practices, their skills and experience, and the prevailing market rate in the relevant community.  *See Blum v. Stevenson*, 465 U.S. 886, 895 n.11 (1984) (fee applicants must "produce satisfactory evidence" that "the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation"); *accord Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4, 32 (D.C. Cir. 1984), *overruled on other grounds by Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516 (D.C. Cir. 1988) (en banc).  Here, the hourly rates that plaintiffs used to calculate the loadstar are the standard billing rates that WilmerHale charges to clients, which are highly probative evidence of the

---

[2] The third factor, whether the use of enhancement or multipliers is merited, is not relevant here because plaintiffs are not seeking an enhancement or multiplier.

prevailing market rate.  *See National Ass'n of Concerned Veterans v. Secretary of Defense*, 675

F.2d 1319, 1326 (D.C. Cir. 1982) (per curiam).  In fact, the presumption in this circuit is that the

prevailing market rate (and a reasonable rate) for a firm's services is the firm's customary billing

rates:

> [W]hen fixed market rates already exist, there is no good reason to
> tolerate the substantial costs of turning every attorneys fee case into
> a major ratemaking proceeding.  *In almost every case, the firms'
> established billing rates will provide fair compensation.*  The
> established rates represent the opportunity cost of what the firm
> turned away in order to take the litigation; they represent the
> lawyers' own assessment of the value of their time.

*Laffey*, 746 F.2d at 31.  Courts apply this presumption because "the most fundamental economic

analysis indicates that … the rate that [a firm] charges its clients is the market rate."  *Adolph

Coors Co. v. Truck Insurance Exchange*, 383 F. Supp. 2d 93, 98 (D.D.C. 2005).  Consistent with

this case law, this Court has previously deemed WilmerHale's standard billing rates for both

lawyers and paralegals to be reasonable for purposes of a fee award.  *See Miller v. Holzmann*,

575 F. Supp. 2d 2, 12-16 (D.D.C. 2008).[3]

> 2.   *Plaintiffs are entitled to recover fees for the entire relevant period at their
>      counsel's current billing rates*

Given the length of time since attorneys' fees were last paid in this litigation, plaintiffs

are entitled to recover all fees at WilmerHale's current billing rates, rather than at the rates in

place when the work was performed.  The Supreme Court has held that using current market

rates is an acceptable way to compensate prevailing parties when there is a delay in payment,

*Missouri v. Jenkins*, 491 U.S. 274, 284 (1989), and the D.C. Circuit has "frequently employed

---

[3] Counsel may seek fees at prevailing market rates despite having represented plaintiffs on a pro
bono basis throughout the nearly forty years this litigation has persisted.  *See Save Our
Cumberland Mountains*, 857 F.2d at 1524; *Copeland*, 641 F.2d at 900.

the Supreme Court's suggested method," *Miller*, 575 F. Supp. 2d at 19; *see also Murray v. Weinberger*, 741 F.2d 1423, 1433 (D.C. Cir. 1984).

Plaintiffs' counsel have, however, deeply discounted their requested hourly rates in two ways.  First, plaintiffs discounted all partner and counsel time to an $800 flat billing rate for the entire relevant period.  This is a significant discount, because WilmerHale's median rates are approximately $1,340 for partners and $945 for counsel.  Second, plaintiffs have used the lowest billing rate for each category of non-partner and non-counsel.  For example, rather than distinguish between first-, second-, and third-year associates (as the firm does with paying clients), plaintiffs simply applied the current billing rate for first-year associates to *every* associate-hour billed, and did the same for all other levels of seniority—both attorneys and support staff.  This can be a variation of hundreds of dollars per hour, so overall it represents a significant discount to the amount that could be sought, more than enough to preempt any disputes about the overall amount of the fee request.

### B.    The Hours Expended By Counsel Are Reasonable

The second element in determining reasonableness of a fee request is evaluating the number of hours claimed by counsel.  Here, the hours claimed are reasonable.

#### *1.    The case has a lengthy history*

For the 23-year period in question, plaintiffs seek reimbursement for 19,479.64 hours of attorney time and 4,966.86 hours of support-staff time, as detailed in the contemporaneous time records accompanying this fee request (Exhibit 4).  *See National Ass'n of Concerned Veterans*, 675 F.2d at 1327 (approving this approach).  That hours request is eminently reasonable considering that it covers well over two decades worth of work—years in which plaintiffs' counsel both actively litigated this case (in both this Court and the D.C. Circuit) and successfully

negotiated resolution of aspects of the case beneficial to plaintiffs.  More specifically, the major

categories of work covered by the requested hours includes the following:

- Repeated—and largely successful—motions practice;

- Completing extensive discovery, including reviewing documents, taking and defending fact and expert depositions, retaining and working with expert witnesses;

- Preparing for and conducting a successful evidentiary hearing on September 18, 1997, in connection with plaintiffs' 1997 motion for compliance;

- Preparing for and litigating a bench trial, in 2004, to enforce this Court's prior orders;

- Conducting a successful appeal to the D.C. Circuit in 2007 regarding SES promotions;

- Preparing for and conducting a successful evidentiary hearing on October 27, 2014, in connection with plaintiffs' 2010 motion for contempt and compliance;

- Coordinating and communicating with plaintiff class representatives throughout the period;

- Coordinating with the *Segar* Working Group and other experts in developing non-discriminatory promotions procedures as required by this Court's orders.

The reasonableness of the hours requested for all this work (and more) is underscored by

the important relief that counsel secured for plaintiffs, including this Court's 1999 order

obligating DEA to implement a valid process for GS-14 and GS-15 promotions, and the D.C.

Circuit's ruling regarding SES promotions.  Moreover, the requested hours do not include any

time that plaintiffs' counsel would not have billed to paying clients, *see Copeland*, 641 F.2d at

891.  Indeed, plaintiffs have deducted large amounts of time that *are* routinely billed to paying

clients.  Finally, plaintiffs note that much of the requested time was necessitated by defendants'

refusal to comply with this Court's orders.  That is relevant because as both the Supreme Court

and the en banc D.C. Circuit have explained, defendants "'cannot litigate tenaciously and then …

complain about the time necessarily spent by [plaintiffs] in response.'"  *City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986) (quoting Copeland, 641 F.2d at 904).

2.     *Plaintiffs' counsel have substantially reduced their fee request*

In seeking fees, a plaintiff "should make a good faith effort to exclude … hours that are excessive, redundant, or otherwise unnecessary[.]"  *Hensley*, 461 U.S. at 434.  Consistent with this admonition, plaintiffs' counsel (in addition to reducing their hourly rates, as noted above) have excluded hundreds of hours of recorded time in an effort to provide this Court with an even conservative request that will avoid unnecessary, protracted litigation over the request's reasonableness.  In total, WilmerHale has excluded over 5,650 hours of work, accounting for a reduction in fees of more than $1.9 million before applying the current billing rate to time worked. *See* Smith Decl. ¶¶ 18-21.

*First*, counsel excluded all time—totaling about 580 hours—for all attorneys and staff members who worked fewer than 15 hours on the matter during the relevant period, as well as all time—totaling 330 hours—for all summer associates who worked on this matter during that period.  Counsel excluded these hours despite the fact that these individuals made, in counsel's judgment, valuable contributions to the case.  *See* Smith Decl. ¶¶ 19-20.

*Second*, counsel excluded or discounted substantially all time entries falling into certain categories.  *See* Smith Decl. ¶ 21.  In particular:

- Counsel excluded time spent transitioning lawyers on and off the matter;

- Counsel excluded time spent on administrative matters, such as coordinating calls and meetings;

- Counsel excluded time spent by project assistants on purely clerical matters that did not require knowledge of the facts or law of the case;

- 9 -

- Counsel only included time for two lawyers' attendance at any meeting, deposition, or hearing that more than two lawyers attended, even though the additional lawyers' attendance was, in counsel's view, often if not always necessary and reasonable;

- Counsel reduced by ten percent "block billed" time entries, *see In re Olson*, 884 F.2d 1415, 1428-1429 (D.C. Cir. 1989) (imposing the same reduction);

- Counsel discounted by five percent time billed by partners that could be characterized as supervising junior attorneys;

- Counsel discounted by fifty percent time billed for work related to a discovery dispute that resulted in some of the requested relief being denied but other aspects granted, *see* Dkt. 335; Minute Order (July 11, 2012).

*See* Smith Decl. ¶¶ 18-21.  The fees that remain after these exclusions are well below what plaintiffs reasonably could have requested.  No further reductions, therefore, should be made.

In particular, plaintiffs note that when they submitted their fee request to defendants, defendants responded in part by complaining about various supposed problems with plaintiffs' time entries.  Smith Decl. ¶ 12.  To whatever extent such problems allegedly remain, they are precisely the reason why plaintiffs already reduced their request well below the amount for which they could have sought payment, both through reductions to their hourly rates and through reductions to the number of hours sought.  This Court should not countenance further quibbling by defendants; doing so would only discourage future litigants from making their own reductions (as plaintiffs did here) in an effort to avoid burdening the courts with having to wade through morasses of billing records to resolve disputes about reasonableness.  Plaintiffs have made ample self-reductions here.  Again, no further reductions are warranted.

## III.    The Requested Costs Are Reasonable

An award of fees may encompass costs routinely charged to clients, provided that the costs are reasonably incurred and reasonable in amount.   *Laffey*, 746 F.2d at 30; *Holbrook v. District of Columbia*, 305 F. Supp. 2d 41, 46 (D.D.C. 2004) (citing cases).  Such costs may include those

listed in 28 U.S.C. § 1920, such as filing, transcript, and witness fees; photocopies; postage; courier services; expert fees; and computerized research.  *See Holbrook*, 305 F. Supp. 2d at 46 (noting that copying and postage are "traditionally considered part of a reasonable attorney's fee" and citing cases); *Castle v. Bentsen*, 872 F. Supp. 1062, 1068 (D.D.C. 1995) (costs defined under§ 1920 and any other "reasonable" costs are recoverable under Title VII); 42 U.S.C. § 2000e-5(k) ("a reasonable attorney's fee" under Title VII can include expert fees); *Harvey v. Mohammed*, 951 F. Supp. 2d 47, 70-72 (D.D.C. 2013) (allowing reimbursement for courier and delivery service, express mail, postage, transcripts, photocopying, filing and transcript fees, and "computer-assisted research fees"); *Salazar v. District of Columbia*, 991 F. Supp. 2d 39, 61 (D.D.C. 2014) (awarding reimbursement for postage, messenger services, and other costs); *Smith v. District of Columbia*, 466 F. Supp. 2d 151, 161 (D.D.C. 2006) (allowing reimbursement for computer-assisted research and postage).

Plaintiffs here seek $770,851.37 in costs for the 23-year period since fees and costs were last awarded.  These costs are in the general categories of expert fees, transcript fees, witness fees, postage and courier expenses, research, court services, filing fees, off-site storage, and photocopying and printing expenses.  These costs are detailed and broken down by category in Exhibits 5 and 6.  *See also* Smith Decl. ¶¶ 25-26.

The costs that plaintiffs seek are reasonable.  The categories of costs claimed are typical of those that firms incur in this type of complex and protracted litigation.  Moreover, these are not costs that WilmerHale and other law firms include in their overhead, but rather ones that are typically and reasonably charged to clients.

## CONCLUSION

Plaintiffs' motion for the requested fees and costs should be granted.

- 11 -

Respectfully submitted,

/s/ Brian C. Smith_____
Steven F. Cherry, D.C. Bar #431473
Daniel S. Volchok, D.C. Bar #//497341
Brian C. Smith, D.C. Bar #502323
WILMER CUTLER PICKERING
    HALE & DORR LLP
1875 Pennsylvania Avenue N.W.
Washington, D.C.  20006
Tel.:  202.663.6000
Fax:  202.663.6363

Date: January 17, 2020

**CERTIFICATE OF SERVICE**

On this 17th day of January 2020, a copy of the foregoing was filed electronically with the Court.  The electronic filing prompted automatic service of the filing to all counsel of record in this case.

/s/ Brian C. Smith_____
Brian C. Smith