IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HENRY W. SEGAR, et al.,

           Plaintiffs,

vs.

WILLIAM P. BARR and
TIMOTHY J. SHEA,

           Defendants.

Civil Action No. 77-0081 (EGS)

**PLAINTIFFS' AMENDED MOTION FOR
AWARD OF ATTORNEYS' FEES AND COSTS**

Pursuant to 42 U.S.C. § 2000e-5(k), Federal Rule of Civil Procedure 54(d), and Local Civil Rule 54.2, plaintiffs move for an order awarding them attorneys' fees and costs reasonably incurred in connection with this litigation between June 1, 1996, and June 25, 2019 (inclusive). For this 23-year period, plaintiffs seek $14,234,016.55 in attorneys' fees and $770,750.91 in costs. The factual basis and legal grounds for this request are set out in the accompanying memorandum and attached exhibits.[1]

---

[1] On June 25, 2019, this Court ordered plaintiffs to provide defendants with a detailed request for attorneys' fees from June 1996 to the date of the Court's order. Dkt. 424 at 10-11. Plaintiffs have done so, and this motion is similarly limited to that period. But plaintiffs are entitled to fees and costs for the entire duration of the litigation, which is ongoing. Plaintiffs therefore reserve the right to update their request for fees and costs (or make a separate supplemental request) to account for attorneys' fees and costs reasonably incurred after June 25, 2019.

- 1 -

Respectfully submitted,

/s/ Brian C. Smith
Steven F. Cherry, D.C. Bar #431473
Daniel S. Volchok, D.C. Bar #497341
Brian C. Smith, D.C. Bar #502323
WILMER CUTLER PICKERING
    HALE & DORR LLP
1875 Pennsylvania Avenue N.W.
Washington, D.C.  20006
Tel.:  202.663.6000
Fax:  202.663.6363

Date: June 19, 2020

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HENRY W. SEGAR, et al.,

        Plaintiffs,

vs.

WILLIAM P. BARR and
UTTAM DHILLON,

        Defendants.

Civil Action No. 77-0081 (EGS)

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'**
**AMENDED MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS**

Since the 1970s, the Drug Enforcement Administration (DEA) has engaged in discriminatory employment practices against African-American Special Agents, in violation of Title VII of the Civil Rights Act of 1964. Plaintiffs, a class of African-American current and former DEA Special Agents, filed this case in 1977 to end those discriminatory practices. After a trial, this Court ruled in plaintiffs' favor, and the D.C. Circuit largely affirmed. *See Segar v. Civiletti*, 508 F. Supp. 690, 712-715 (D.D.C. 1981), *aff'd in relevant part sub nom. Segar v. Smith*, 738 F.2d 1249 (D.C. Cir. 1984). This Court accordingly ordered defendants—in *1982*—to implement promotion procedures that "neither have a disparate impact on Black agents nor effectuate disparate treatment of Black agents." *Segar v. Smith*, 1982 WL 214, at *4 (D.D.C. Feb. 17, 1982). DEA's procedures, this Court ordered, also had to be validated by the Working Group, a group consisting of two representatives of the Office of Personnel Management and one expert selected by plaintiffs that was formed for the purpose of developing effective, non-discriminatory personnel practices. *See* Joint Stipulation at 2-3, *Segar v. Smith*, No. 77-cv-0081 (D.D.C. Jul. 31, 1981). Further, this Court established the Equal Employment Opportunity Monitoring Committee

(EEOMC) to oversee defendants' ongoing compliance with this Court's orders. *Segar*, 1982 WL 214 at *8-9.

For 38 years now (and counting), defendants have refused to fully comply with this Court's orders.

As a result, plaintiffs have had to spend decades litigating to force DEA to stop discriminating against its African-Americans employees. For example, DEA continued to discriminate in promotion decisions with respect to Grades 14 and 15. In 1997, therefore, plaintiffs moved for an order directing defendants to cease their discrimination and continued violation of the Court's prior orders. *See* Dkt. 1. After an evidentiary hearing, this Court agreed with plaintiffs that defendants were continuing to discriminate in promotions. *See* Dkt. 35 at 22. The Court subsequently approved a joint stipulation regarding interim procedures to be used for the promotion of DEA agents to Grades 14 and 15, pending prompt development and implementation of validated, non-discriminatory promotion procedures. But DEA failed to follow through; to this day, it has never implemented any such procedures. *See* Dkt. 46.

In 2002, this Court approved another joint stipulation regarding promotion procedures, this time with respect to the Senior Executive Service ("SES"). Dkt. 104. But DEA promptly violated that stipulation as well. In 2004, plaintiffs thus moved for a temporary restraining order barring DEA from deviating from the stipulated procedures. On appeal after proceedings in this Court, the D.C. Circuit held that defendants had violated the 2002 stipulation that this Court approved, by failing to follow the agreed-upon procedures for SES promotions. *See Segar v. Mukasey*, 508 F.3d 16, 17-18 (D.C. Cir. 2007). Finally, over four years ago—after defendants fought for nearly five years against plaintiffs' 2010 motion for contempt and compliance— Magistrate Judge Facciola endorsed plaintiffs' position and recommended that practically all of

their requested relief be granted.  *See* Dkt. 395.  This Court has now adopted that report and recommendation in large part.  *See* Dkt. 424.  Yet DEA's race discrimination continues.

These various victories, and other progress that has been made through this litigation toward ending defendants' discrimination, have been the result of many thousands of hours expended by plaintiffs' counsel.  Title VII authorizes compensation for those hours (and associated costs).  *See* 42 U.S.C. § 2000e-5(k).  Recognizing that, this Court has previously awarded fees for counsel's work in this matter.  In 1982, for example, it stated that "Plaintiffs, as prevailing parties, are entitled to an award of costs, including reasonable attorneys' fees." *Segar*, 1982 WL 214, at *10; *see also* Stipulation of Settlement and Payment of Attorneys' Fees and Costs at 3 (Oct. 19, 1987) (awarding attorneys' fees through May 31, 1987).  But plaintiffs have received no compensation for work since May 31, 1996—one year short of a quarter-century—even though their work during that time was far from minimal.  Indeed, the work included a bench trial, multiple evidentiary hearings, TRO/PI proceedings, an appeal to the D.C. Circuit, and at least five rounds of settlement negotiations and mediations.

To finally provide compensation for all this work, Magistrate Judge Facciola recommended that plaintiffs be awarded attorneys' fees once they provided a detailed fee request, and further recommended that defendants have the opportunity to review the request and "file any necessary opposition" if the parties cannot reach agreement on the amount of the fee award.  Dkt. 395 at 13.  This Court adopted that recommendation.  Dkt. 424 at 10-11.  Plaintiffs therefore presented a detailed fee request to defendants, who refused to agree that the requested amount should be awarded.  Plaintiffs accordingly submit the issue to this Court for resolution.  As explained below and in the attached documentation, for the 23-year period from June 1, 1996, through June 25, 2019, plaintiffs should be awarded $15,004,767.46 in attorneys' fees and costs.

In arriving at that figure, plaintiffs—to avoid protracted litigation as to the reasonableness of their request—have made significant reductions, detailed below, to both the hourly rates requested and the number of hours worked.[1]

## DISCUSSION

### I. PLAINTIFFS ARE PREVAILING PARTIES

It is undisputed that plaintiffs are prevailing parties, and therefore entitled to recover their reasonable attorneys' fees and costs. Dkt. 439 at 1. Plaintiffs are prevailing parties entitled to attorneys' fees "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). That standard is easily met here. During the time period covered by this fee request, plaintiffs have achieved a series of victories, dating back to this Court's 1999 order. *See supra* pp.1-4; *infra* pp.9-11. In particular, the Court has confirmed that—as plaintiffs have consistently argued—defendants must comply with its prior orders by conferring with the Working Group and EEOMC to implement validated, non-discriminatory promotion procedures at Grades 14 and 15 (and with respect to the SES), and has ordered DEA to undergo continued monitoring by the EEOMC for compliance with this Court's orders. Dkt. 423 at 1. Plaintiffs are therefore prevailing parties.

### II. THE REQUESTED FEES ARE REASONABLE

Title VII allows this Court to award "reasonable" attorneys' fees. 42 U.S.C. § 2000e-5(k). Courts determine a reasonable fee by calculating the "lodestar," which is the number of hours reasonably expended multiplied by a reasonable hourly rate. *See, e.g.*, *Hensley*, 461 U.S. at 433; *Copeland*, 641 F.2d at 891. Here, the fees requested are clearly based on both reasonable hourly

---

[1] Counsel may seek fees despite having represented plaintiffs on a pro bono basis throughout the nearly forty years this litigation has persisted. *See Copeland v. Marshall*, 641 F.2d 880, 900 (D.C. Cir. 1980) (en banc).

rates and hours reasonably expended in connection with this litigation. *See Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995).[2]

## A. Counsel's Hourly Rates Are Reasonable

1. Plaintiffs seek reimbursement at WilmerHale's standard 2019 hourly rates—but with substantial discounts. Indeed, plaintiffs seek reimbursement for all partner and counsel work at the lowest hourly rate charged by WilmerHale for its counsel (which is of course lower than the lowest hourly rate charged for work by its partners). Ex. 1, Declaration of Brian C. Smith ("Smith Decl.") ¶¶ 19-20. The $940 hourly rate that plaintiffs seek for partner time constitutes a 30% discount from WilmerHale's current median partner rates. *See id.* ¶ 19. The reductions to the requested associate and senior-associate rates are also quite substantial, again utilizing the lowest rate for each level of attorney. Rather than distinguishing between first-, second-, and third-year associates (as WilmerHale does with paying clients), plaintiffs used the rate for first-year associates with *all* associate time billed. *Id.* ¶ 21; Ex. 5. Plaintiffs did the same with senior associates (i.e., fourth-year and above associates), using the fourth-year rate with all senior-associate time. Smith Decl. ¶ 21. For many attorneys, this discount reduced the requested rates by over $100 per hour. Ex. 5. Plaintiffs used the same approach with respect to counsel rates. Smith Decl. ¶ 20.

These substantial reductions, which were made to avoid protracted litigation, were not required. Rather, plaintiffs were entitled to seek reimbursement at WilmerHale's undiscounted standard rates, because "an attorney's usual billing rate is presumptively the reasonable rate." *Kattan by Thomas v. District of Columbia*, 995 F.2d 274, 278 (D.C. Cir. 1993). That, in turn, is

---

[2] Courts may also consider whether the use of enhancement or multipliers is merited. *Id.* But that is not relevant here because plaintiffs are not seeking an enhancement or multiplier.

because "the most fundamental economic analysis indicates that … the rate that [a firm] charges its clients is the market rate." *Adolph Coors Co. v. Trunk Insurance Exchange*, 383 F. Supp. 2d 93, 98 (D.D.C. 2005). As a result, the D.C. Circuit has explained that "when fixed market rates exist, there is no good reason to tolerate the substantial costs of turning every attorneys fee case into a major ratemaking proceeding. In almost every case, the firms' established billing rates will provide fair compensation." *Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4, 32 (D.C. Cir. 1984), *overruled on other grounds by Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516 (D.C. Cir. 1988) (en banc); *see also Sierra Club v. EPA*, 769 F.2d 796, 808 (D.C. Cir. 1985); *Wilcox v. Sisson*, 2006 WL 1443981, at *2-*5 (D.D.C. May 25, 2006) (noting presumption and holding that a law firm's charged rates were reasonable). This presumption allows courts to avoid both the essentially impossible task of selecting one rate over another from a wide range of "market rates" and a "second major litigation" over fees. *Laffey*, 746 F.2d at 18.

2. Application of the "three sub-elements" identified by the D.C. Circuit in *Eley v. District of Columbia*, 793 F.3d 97 (D.C. Cir. 2018), leaves no doubt that the heavily discounted rates requested here are reasonable. "Whether an hourly rate is reasonable," the court has held, "turns on … (1) 'the attorney['s] billing practices,' (2) 'the attorney['s] skill, experience, and reputation' and (3) 'the prevailing market rates in the relevant community." *Id.* at 100 (quoting *Covington*, 57 F.3d at 1107).

a. WilmerHale's general practice is to charge clients on a monthly basis at its standard hourly rates in effect at the time for the work performed in the preceding month. Smith Decl. ¶ 13. Here, plaintiffs are requesting reimbursement for the entire time period based on WilmerHale's 2019 rates, with discounts as described above. As the Supreme Court has held, using current market rates rather than historical rates properly compensates prevailing parties

when there is a delay in payment, as there most definitely has been in this case. *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989). And as another judge in this district has noted, the D.C. Circuit has "frequently employed the Supreme Court's suggested method." *Miller v. Holzmann*, 575 F. Supp. 2d 2, 19 (D.D.C. 2008); *see also Murray v. Weinberger*, 741 F.2d 1423, 1433 (D.C. Cir. 1984); *Laffey*, 746 F.2d at 20 n.104.

This Court has previously taken a defendant's evidence of client discounts and law firm realization rates into account when determining a reasonable rate. *See Citizens for Responsibility & Ethics in Washington v. U.S. DOJ*, 80 F. Supp. 3d 1, 4-5 (D.D.C. 2015). But such evidence should not be considered here even if defendants come forward with it. As explained, plaintiffs have already significantly discounted their hourly rates. And as discussed in the next subsection, they have additionally exercised billing judgment to exclude over 5,650 hours of time from the present request—a reduction of over 20%. Smith Decl. ¶ 22; *see infra* pp.11-12. These voluntary exclusions and reductions more than adequately capture any difference between what WilmerHale typically bills clients and what it "in fact receive[s]." *National Association of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1326 (D.C. Cir. 1982); *see also* Ex. 2, Declaration of John A. Freedman ("Freedman Decl.") ¶¶ 23-25.

b.    The requested rates here are reasonable given the "skill, experience, and reputation" of the attorneys who contributed to plaintiffs' myriad successes in this case over the past two decades. *Eley*, 793 F.3d at 100. Plaintiffs are submitting information on the qualifications of those attorneys, *see* Smith Decl. ¶¶ 3-5, 26-27; Ex. 4—attorneys "who … are, almost uniformly, graduates of prestigious law schools and/or former judicial clerks," *Miller*, 575 F. Supp. 2d at 13 n.22.

c. The requested rates are consistent with "the prevailing market rates in the relevant community." *Eley*, 793 F.3d at 100 (quoting *Covington*, 57 F.3d at 1107).

As an initial matter, another judge in this district has explained that the "prevailing rate" is not simply an average of all law-firm rates in a locality, but rather a rate in the "same marketplace." *Wilcox v. Sisson*, 2006 WL 1443981, at *4. And the marketplace of law firms with over 100 lawyers—which easily includes WilmerHale, a firm with roughly 1,000 attorneys— "pays higher hourly rates to lawyers—partners and associates." *Id.* The reason this market accepts relatively high hourly rates is because of the high quality of legal services provided by its highly qualified attorneys. *See id.* at *2 n.6; *accord Miller*, 575 F. Supp. 2d at 16 ("Defendants balk at the 'mega-law firm rates' relator seeks. But these rates reflect counsel's 'mega-law firm'-quality representation." (citation omitted)). As explained, WilmerHale's attorneys are highly qualified, and the numerous successes it has achieved over the years in this case—a case that matches the complexity of the most challenging civil cases litigated by WilmerHale and its peer firms, Freedman Decl. ¶ 9—illustrates the high-quality services the firm has provided to plaintiffs. Similar high-quality services led another judge in this district to award WilmerHale fees at its standard hourly rates, after noting that WilmerHale attorneys' "zealous, polished, and astute advocacy justifies, and is reflected in, their established billing rates." *Miller*, 575 F. Supp. 2d at 16. The same is true here.

Plaintiffs are submitting three declarations attesting to the fact that the rates requested here are consistent with (and in fact below) prevailing market rates in the relevant community. Two of these declarations are from outside experts who together have been practicing law in Washington for over 50 years. *See* Freedman Decl. ¶ 3; Ex. 3, Declaration of Jeffrey T. Green ("Green Decl.") ¶ 3. During that time, the declarants have not only litigated multiple complex

civil cases but also gained great familiarity with the billing practices of large law firms in this market.  Freedman Decl. ¶¶ 3-4, 7; Green Decl. ¶¶ 3-5, 7-8.  These declarants have studied the history of this case, including through review of key filings and orders from this Court, and through discussions with the WilmerHale attorneys involved.  Freedman Decl. ¶¶ 10-11; Green Decl. ¶¶ 9-10.  They have compared the hourly rates requested here to those of their own firms and in the Washington market for complex civil litigation more generally.  Freedman Decl. ¶¶ 15-16; Green Decl. ¶ 12.  Both conclude that the requested rates are at, and in many instances below, prevailing market rates.  Freedman Decl. ¶¶ 21-22; Green Decl. ¶¶ 13-17.  Another judge in this district has relied on similar evidence in deeming WilmerHale's requested rates reasonable.  *Miller*, 575 F. Supp. 2d at 12-13.  The same approach is warranted here.

> B.     **The Hours For Which Plaintiffs Seek Reimbursement Are Reasonable**

The second element in determining reasonableness of a fee request is evaluating the number of hours claimed by counsel.  Here, the hours claimed are reasonable.

> 1.     *The case has a lengthy history*

For the 23-year period in question, plaintiffs seek reimbursement for just over 19,479 hours of attorney time and 4,966 hours of support-staff time, as detailed in the contemporaneous time records accompanying this fee request (Exhibit 8).  *See National Ass'n of Concerned Veterans*, 675 F.2d at 1327 (approving this approach).  That hours request is eminently reasonable considering that it covers well over two decades worth of work, years in which plaintiffs' counsel both actively litigated this case (in this Court and the D.C. Circuit) and successfully negotiated the resolution of several aspects of the case, in ways highly beneficial to plaintiffs.  *See Miller*, 575 F. Supp. at 44 (finding that WilmerHale reasonably spent more hours—23,283—over a shorter time period—twelve years).

More specifically, the major categories of work covered by the requested hours includes the following:

- Preparing for and conducting a successful evidentiary hearing on September 18, 1997, in connection with plaintiffs' 1997 motion for compliance;

- Preparing for and litigating a bench trial, in 2004, to enforce this Court's prior orders;

- Conducting a successful appeal to the D.C. Circuit in 2007 regarding SES promotions;

- Preparing for and conducting a successful evidentiary hearing on October 27, 2014, in connection with plaintiffs' 2010 motion for contempt and compliance;

- Completing extensive discovery, including reviewing documents, taking and defending fact and expert depositions, and retaining and working with experts;

- Coordinating and communicating with plaintiff class representatives throughout the period; and

- Coordinating with the *Segar* Working Group and other experts in developing non-discriminatory promotions procedures as required by this Court's orders.

Smith Decl. ¶ 9. The reasonableness of the hours requested for all this work (and more) is underscored by the important relief that counsel secured for plaintiffs, including this Court's 1999 order obligating DEA to implement a valid process for GS-14 and GS-15 promotions, the D.C. Circuit's ruling regarding SES promotions, and this Court's adoption in large part of Magistrate Judge Facciola's recommendation embracing plaintiffs' position on their 2010 motion for compliance.

Importantly, the requested hours do not include any time that plaintiffs' counsel would not have billed to paying clients. *See Copeland*, 641 F.2d at 891. Indeed, as detailed below, plaintiffs have deducted large amounts of time that *are* routinely billed to paying clients. Much of the requested time, moreover, was necessitated by defendants' refusal to comply with this Court's orders. That is relevant because as both the Supreme Court and the en banc D.C. Circuit have

explained, defendants "'cannot litigate tenaciously and then … complain about the time necessarily spent by [plaintiffs] in response.'" *City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986) (quoting *Copeland*, 641 F.2d at 904).

### 2. *Plaintiffs' counsel have substantially reduced their fee request*

In seeking fees, a plaintiff "should make a good faith effort to exclude … hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. Consistent with this admonition, plaintiffs' counsel (in addition to substantially reducing their hourly rates, as discussed above) have excluded hundreds of hours of recorded time in an effort to provide this Court with an exceptionally conservative request that should avoid unnecessary, protracted litigation over the request's reasonableness. In total, WilmerHale has excluded over 5,650 hours of work. *See* Smith Decl. ¶¶ 22-25.

*First*, counsel excluded all time—totaling about 580 hours—for any attorney or staff member who worked fewer than 15 hours on the matter during the relevant period, as well as all time—totaling 330 hours—for any summer associate who worked on this matter during that period. *See* Smith Decl. ¶¶ 23-24. Counsel excluded these hours despite the fact that many of these individuals made, in counsel's judgment, valuable contributions to the case. *See id.* ¶ 22.

*Second*, counsel excluded or discounted substantially all time entries falling into certain categories. *See* Smith Decl. ¶ 25. In particular:

- Counsel excluded time spent transitioning lawyers on and off the matter;

- Counsel excluded time spent on administrative matters, such as coordinating calls and meetings;

- Counsel excluded time spent by project assistants on purely clerical matters that did not require knowledge of the facts or law of the case;

- Counsel only included time for two lawyers' attendance at any meeting, deposition, or hearing that more than two lawyers attended, even though the additional lawyers' attendance was, in counsel's view, often if not always necessary and reasonable;

- Counsel reduced by ten percent "block billed" time entries, *see In re Olson*, 884 F.2d 1415, 1428-1429 (D.C. Cir. 1989) (imposing the same reduction);

- Counsel discounted by five percent time billed by partners that could be characterized as supervising junior attorneys;

- Counsel discounted by fifty percent time billed for work related to a discovery dispute that resulted in some of the requested relief being denied but other aspects granted, *see* Dkt. 335; Minute Order (July 11, 2012).

*See* Smith Decl. ¶ 25. The fees that remain after these exclusions are well below what plaintiffs reasonably could have requested. *See* Freedman Decl. ¶ 25 (noting that exclusion of 20% of total hours renders a fee request conservative). Hence, no further reductions should be made.

In particular, plaintiffs note that when they submitted their fee request to defendants, defendants responded in part by complaining about various supposed problems with plaintiffs' time entries. Smith Decl. ¶ 12. To whatever extent such problems allegedly remain, they are precisely the reason why plaintiffs already reduced their request *well* below the amount for which they could have sought payment, both through reductions to their hourly rates and through reductions to the number of hours sought. "[T]rial courts need not, and indeed should not, become green-eyeshade accountants" in evaluating fee petitions, because the goal is "not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). This Court should not countenance further quibbling by defendants; doing so would only discourage future litigants from making their own reductions (as plaintiffs did here) in an effort to avoid burdening the courts with having to wade through morasses of billing records to resolve disputes about reasonableness. Plaintiffs have made ample self-reductions here. Again, no further reductions are warranted.

### III. THE REQUESTED COSTS ARE REASONABLE

An award of fees may encompass costs routinely charged to clients, provided that the costs are reasonably incurred and reasonable in amount. *Laffey*, 746 F.2d at 30; *Holbrook v. District of Columbia*, 305 F. Supp. 2d 41, 46 (D.D.C. 2004) (citing cases). Such costs may include those listed in 28 U.S.C. § 1920, such as filing, transcript, and witness fees; photocopies; postage; courier services; expert fees; and computerized research. *See Holbrook*, 305 F. Supp. 2d at 46 (noting that copying and postage are "traditionally considered part of a reasonable attorney's fee" and citing cases); *Castle v. Bentsen*, 872 F. Supp. 1062, 1068 (D.D.C. 1995) (costs defined under § 1920 and any other "reasonable" costs are recoverable under Title VII); 42 U.S.C. § 2000e-5(k) ("a reasonable attorney's fee" under Title VII can include expert fees); *Harvey v. Mohammed*, 951 F. Supp. 2d 47, 70-72 (D.D.C. 2013) (allowing reimbursement for courier and delivery service, express mail, postage, transcripts, photocopying, filing and transcript fees, and "computer-assisted research fees"); *Salazar v. District of Columbia*, 991 F. Supp. 2d 39, 61 (D.D.C. 2014) (awarding reimbursement for postage, messenger services, and other costs); *Smith v. District of Columbia*, 466 F. Supp. 2d 151, 161 (D.D.C. 2006) (allowing reimbursement for computer-assisted research and postage).

Plaintiffs here seek $770,750.91 in costs for the 23-year period at issue. These costs are in the general categories of expert fees, transcript fees, witness fees, postage and courier expenses, research, court services, filing fees, off-site storage, and photocopying and printing expenses. The costs are detailed and broken down by category in Exhibits 9 and 10, and expert invoices are provided in Exhibit 11. *See also* Smith Decl. ¶¶ 29-30.

The costs that plaintiffs seek are reasonable. The categories of costs claimed are typical of those that firms incur in this type of complex and protracted litigation. Moreover, these are not

costs that WilmerHale and other law firms include in their overhead, but rather ones that are typically and reasonably charged to clients.

## CONCLUSION

Plaintiffs' motion for the requested fees and costs should be granted.

Respectfully submitted,

/s/ Brian C. Smith\_\_\_
Steven F. Cherry, D.C. Bar #431473
Daniel S. Volchok, D.C. Bar #//497341
Brian C. Smith, D.C. Bar #502323
WILMER CUTLER PICKERING
  HALE & DORR LLP
1875 Pennsylvania Avenue N.W.
Washington, D.C.  20006
Tel.:  202.663.6000
Fax:  202.663.6363

Date: June 19, 2020