UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HENRY W. SEGAR, et al., | |
|       Plaintiffs, | |
|    v. | Civil Action No. 77-0081 (EGS) |
| MERRICK GARLAND,<br>Attorney General, | |
|       Defendant. | |

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' AMENDED MOTION FOR
<u>AWARD OF ATTORNEYS' FEES AND COSTS</u>**

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................ i

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 1

STANDARD OF REVIEW ................................................................................................. 2

ARGUMENT ....................................................................................................................... 3

    I.     The Court Should Apply the Rates Established in the Fitzpatrick Matrix, and
         Plaintiffs' Requested Rates Are Neither Reasonable Nor Supportable. ................. 3

         A.     Plaintiffs Fail to Meet Their Burden of Establishing the
                Reasonableness of the Rates They Demand. ............................................... 4

         B.     The Court Should Apply The Rates Established In The Fitzpatrick
                Matrix. .......................................................................................................... 9

    II.    This Court Should Reduce The Lodestar To Account For Vague Billing
         Entries, Redundant, Excessive, Or Unnecessary Time Expenditures, And
         Purely Clerical Work. ............................................................................................. 11

         A.     This Court Should Reduce The Lodestar By 10 Percent To Account
                For The Prevalence Of Impermissibly Vague Time Entries..................... 12

         B.     The Court Should Further Reduce The Lodestar By An Additional
                10 Percent To Account For Excessive, Redundant And Unnecessary
                Time. ........................................................................................................... 15

         C.     The Court Should Further Reduce The Lodestar By 10 Percent
                Because of WilmerHale's Excessive Block-Billing ................................. 18

         D.     The Court Should Further Reduce The Lodestar Because Plaintiffs
                Are Not Entitled To Compensation For Purely Clerical Work................. 21

          E.     The Court Can Calculate A Reasonable Attorney Fee By Applying
                The Fitzpatrick Matrix, And Discounting By Percentages As
               Appropriate. ............................................................................................... 24

    III.   Plaintiffs Fail To Demonstrate The Reasonableness Of Many Costs For
         Which They Seek Compensation. ........................................................................... 24

CONCLUSION ................................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**                                                       **Page(s)**

*A.C. ex rel. Clark v. District of Columbia*,
674 F. Supp. 2d 149 (D.D.C. 2009) ................................................................................14

*Am. Oversight v. Dep't of Justice*,
375 F. Supp. 3d 50 (D.D.C. 2019) .................................................................................16

*Am. Petrol. Inst. v. EPA*,
72 F.3d 907 (D.C. Cir. 1996) .........................................................................................12

*Am. Wrecking Corp. v. Sec'y of Lab.*,
364 F.3d 321 (D.C. Cir. 2004) .......................................................................................18

*Ashraf-Hassan v. Embassy of Fr. in the U.S.*,
189 F. Supp. 3d 48 (D.D.C. 2016) .................................................................................12

*Blum v. Stenson*,
465 U.S. 886 (1984) .........................................................................................................2

*Bridges Pub. Charter Sch. v. Barrie*,
796 F. Supp. 2d 39 (D.D.C. 2011) .................................................................................22

*Cobell v. Norton*,
407 F. Supp. 2d 140 (D.D.C. 2005) ...............................................................................14

*Copeland v. Marshall*,
641 F.2d 880 (D.C. Cir. 1980) .........................................................................................6

*Copeland v. District of Columbia*,
Civ. A. No. 13-0837 (CRC/DAR), 2016 WL 5342702 (D.D.C. Aug. 29, 2016),
*R&R adopted*, 208 F. Supp. 3d 255 (D.D.C. 2016) ................................................23-24

*Covington v. District of Columbia*,
57 F.3d 1101 (D.C. Cir. 1995) ......................................................................................2-3

*Craig v. District of Columbia*,
197 F. Supp. 3d 268 (D.D.C. 2016) .................................................................................3

*Craig v. Mnuchin*,
Civ. A. No. 14-1340 (RC), 2018 WL 6079512 (D.D.C. Nov. 21, 2018) ...............10-11

*Citizens for Resp. & Ethics in Wash. v. Dep't of Just.*,
80 F. Supp. 3d 1 (D.D.C. 2015) ....................................................................................4-6

*Dickens v. Friendship-Edison P.C.S.*,
724 F. Supp. 2d 113 (D.D.C. 2010) ..................................................................13

*DL v. District of Columbia*,
256 F.R.D. 239 (D.D.C. 2009) ........................................................................14

*DL v. District of Columbia*,
924 F.3d 585 (D.C. Cir. 2019) .........................................................................3

*Driscoll v. George Wash. Univ.*,
55 F. Supp. 3d 106 (D.D.C. 2014) ..................................................................22

*Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.*,
218 F. Supp. 3d 27 (D.D.C. 2016) ..................................................................15

*Eley v. District of Columbia*,
793 F.3d 97 (D.C. Cir. 2015) ...............................................................2-3, 6, 8-9

*Fabi Constr. Co. v. Sec'y of Lab.*,
541 F.3d 407 (D.C. Cir. 2008) ................................................................. 17-18

*Goos v. Nat'l Ass'n of Realtors*,
997 F.2d 1565 (D.C. Cir. 1993) .......................................................................18

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ...........................................................................................2

*In re Donovan*,
877 F.2d 982 (D.C. Cir. 1989) ................................................................ 12-13, 15

*In re Meese*,
907 F.2d 1192 (D.C. Cir. 1990) ......................................................................21

*In re Olson*,
884 F.2d 1415 (D.C. Cir. 1989) ......................................................................18

*Jackson v. District of Columbia*,
603 F. Supp. 2d 92 (D.D.C. 2009) ..................................................................22

*Johnson v. District of Columbia*,
850 F. Supp. 2d 74 (D.D.C. 2012) ..................................................................24

\*   *J.T. v. District of Columbia*,
Civ. A. No. 19-0989 (BAH), 2023 WL 355940 (D.D.C. Jan. 23, 2023) ...................4, 10

*Kelsey v. District of Columbia*,
219 F. Supp. 3d 197 (D.D.C. 2016) ................................................................11

*Kennecott Corp. v. EPA*,
804 F.2d 763 (D.C. Cir. 1986) ................................................................12

*King & Spalding, LLP v. Dep't of Health & Hum. Servs.*,
Civ. A. No. 16-1616 (APM), 2020 WL 1695081 (D.D.C. Apr. 7, 2020).......................5

*Laffey v. Northwest Airlines, Inc.*,
572 F. Supp. 354 (D.D.C. 1983), *aff'd in part, rev'd in part*, 746 F.2d 4 (D.C. Cir. 1984)...........9

*Lewis v. District of Columbia*,
Civ. A. No. 15-0521 (JEB), 2018 WL 6308722 (D.D.C. Dec. 3, 2018)................................. 10-11

*McClam v. District of Columbia*,
808 F. Supp. 2d 184 (D.D.C. 2011) .........................................................24

*Michigan v. EPA*,
254 F.3d 1087 (D.C. Cir. 2001) ........................................................12, 22

\*  *Miller v. Holzmann*,
575 F. Supp. 2d 2 (D.D.C. 2008) .......................................6-7, 13-15, 18, 21

*Nat'l Assoc. of Concerned Veterans v. Sec'y of Def.*,
675 F.2d 1319 (D.C. Cir. 1982) ...................................................... 5-6, 12, 17

*Pastre v. Weber*,
800 F. Supp. 1120 (S.D.N.Y. 1991) .........................................................9

\*  *Role Models Am., Inc. v. Brownlee*,
353 F.3d 962 (D.C. Cir. 2004) ......................................................11, 14, 18, 21

*Salazar v. District of Columbia*,
991 F. Supp. 2d 39 (D.D.C. 2014) ...................................................... 16, 24-25

*Save Our Cumberland Mountains, Inc. v. Hodel*,
857 F.2d 1516 (D.C. Cir. 1988) ...........................................................2, 9

*Shaw v. District of Columbia*,
210 F. Supp. 3d 46 (D.D.C. 2016) .........................................................3

*United Slate Tile & Composition v. G & M Roofing*,
732 F.2d 495 (6th Cir. 1984) ............................................................12

*United States ex rel. Miller v. Bill Harbert Int'l Const. Inc.*,
601 F. Supp. 2d 45, 51–52 (D.D.C. 2009) .............................................14

*West v. Potter*,
717 F.3d 1030 (D.C. Cir. 2013) ..........................................................2, 9

*Young v. Sarles*,
197 F. Supp. 3d 38 (D.D.C. 2016) .................................................................................11


**Statues, Regulations, Rules, and Other Authorities**

42 U.S.C. § 2000e-5 ..........................................................................................................2

Defendant the Attorney General of the United States, in his official capacity, respectfully submits this opposition to Plaintiff's amended motion for an award of attorneys' fees and costs (ECF No. 443-1) ("Fee Motion").

## INTRODUCTION

During the 46 years in which this lawsuit has been pending, Plaintiffs, represented *pro bono* by Wilmer Cutler Pickering Hale and Dorr LLP ("WilmerHale"), Fee Mot. at 4 n.1, amassed significant attorneys' fees, which exceed potential damages to the class.  In their Fee Motion, Plaintiffs seek an interim award of $15,004,767.50, representing $14,234,016.55 in attorneys' fees and $770,750.91 in costs from June 1, 1996, to June 25, 2019.  *See* Fee Mot.  These fees are excessive, some topping out at nearly $1,000 per hour in what WilmerHale has noted is a *pro bono* case, and they are unsupported by the billing entries, which reflect non-substantive clerical work, duplicative billing, and overstaffing on routine projects.

The Drug Enforcement Administration ("DEA") understands that it has a responsibility to pay reasonable attorneys' fees in this case.  The Court should not, however, permit WilmerHale to receive a windfall funded by taxpayer dollars.  To arrive at a reasonable and supportable attorneys' fees and costs award, the Court should apply the Fitzpatrick Matrix to determine the appropriate billing rates and then should discount Plaintiffs' fees further to account for vague and excessive billing entries and work that was purely clerical.

## BACKGROUND

Plaintiffs filed this civil rights class action in 1977 against DEA alleging racially discriminatory practices against African American Special Agents.  The class included all current, former, and future African American DEA Special Agents.  At the time Plaintiffs filed their suit, DEA had been in existence as a federal agency for only four years.

In the 46 years since this suit was initially filed, DEA has changed significantly. As with many individuals and institutions, DEA has matured in the last five decades and has moved far beyond the conduct alleged in this case. Since 1977 when it was still in its infancy, DEA has substantially altered its employment philosophies and processes for promoting Special Agents, and is committed to diversity in the workplace. DEA is a different federal agency today than it was when this litigation arose. In the early 2000s, WilmerHale's role was largely limited to issuing voluminous discovery requests and filing various non-dispositive motions with the Court. And since 2014, the last time formal discovery occurred, the only "litigation" has consisted of settlement negotiations.

## STANDARD OF REVIEW

Where a party prevails in a Title VII lawsuit, the Court has discretion to award that party reasonable attorneys' fees and costs. *See* 42 U.S.C. § 2000e-5(k). Plaintiffs bear the burden of establishing entitlement to the award by documenting the appropriate hours billed and the reasonableness of the rates. *Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995) (citing *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)). A "reasonable fee is one that is adequate to attract competent counsel, but that does not produce a windfall to attorneys." *West v. Potter*, 717 F.3d 1030, 1033 (D.C. Cir. 2013).

In analyzing the reasonableness of the fee request, the Court typically begins by determining the lodestar amount—the number of hours reasonably expended multiplied by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Covington*, 57 F.3d at 1107 (quoting *Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516 (D.C. Cir. 1988)). "Whether an hourly rate is reasonable turns on three sub-elements: (1) 'the attorney's billing practices,' (2) 'the attorney's skill, experience, and reputation' and (3) 'the prevailing market rates in the relevant community.'" *Eley v. District of Columbia*, 793 F.3d 97, 100 (D.C.

Cir. 2015) (quoting *Covington*, 57 F.3d at 1107).  Moreover, Plaintiffs' burden is to demonstrate

that the "prevailing market rates in the relevant community" they proffer are "for similar services."

*Eley*, 793 F.3d at 105.

Typically, parties attempt to establish the reasonableness of attorney fee rates by using "a

matrix showing the average hourly price tag of comparable lawyers" as such a matrix "'provide[s]

a useful starting point' in calculating market rates."  *DL v. District of Columbia*, 924 F.3d 585, 589

(D.C. Cir. 2019) (quoting *Covington*, 57 F.3d at 1107).  This is because it is a plaintiff's burden to

establish that the requested rates are consistent with "the prevailing market rates in the relevant

community for attorneys of reasonably comparable skill, experience, and reputation."  *Covington*,

57 F.3d at 1108.  Indeed, to satisfy their burden "plaintiffs must produce data concerning [those]

prevailing market rates[.]"  *Id.*

Once a reasonable hourly rate is determined, the Court next considers whether the total

hours expended in litigation were reasonable.  Courts should exclude from fee calculations "hours

that were not 'reasonably expended,'" or are "excessive, redundant, or otherwise unnecessary."

*Hensley*, 461 U.S. at 434.  Courts may also reduce fee awards for vague or inadequately described

billing entries, hours billed for unrelated matters, for non-reimbursable time, or for double-billing.

*Shaw v. District of Columbia*, 210 F. Supp. 3d 46, 51 (D.D.C. 2016); *see also Craig v. District of*

*Columbia*, 197 F. Supp. 3d 268, 275 (D.D.C. 2016).

**ARGUMENT**

**I.    The Court Should Apply the Rates Established in the Fitzpatrick Matrix, and**
**Plaintiffs' Requested Rates Are Neither Reasonable Nor Supportable.**

In their Fee Motion, WilmerHale asks for attorneys' fees using their own published hourly

rates instead of a judicially recognized matrix of reasonable rates.  As demonstrated below, this

approach is improper and the Court should instead adopt the rates set forth in the Fitzpatrick

Matrix, a recently generated matrix of reasonable fee rates based on a survey of attorneys' fees for practitioners in this Court. *See J.T. v. District of Columbia*, Civ. A. No. 19-0989 (BAH), 2023 WL 355940, at *18 (D.D.C. Jan. 23, 2023) ("the fees set out in the Fitzpatrick Matrix offer the more appropriate measure of the prevailing market rates for complex federal litigation in the District of Columbia").

    **A.**    **Plaintiffs Fail to Meet Their Burden of Establishing the Reasonableness of the Rates They Demand.**

WilmerHale is a large, full-service international law firm based in Washington D.C. and Boston, with more than 1,000 lawyers located in 13 offices around the world. WilmerHale, https://www.wilmerhale.com/en/about (last visited May 26, 2023). It markets itself as one of the most preeminent law firms in the word—"providing quality, world-class legal and client services"—and touts its receipt of the American Lawyer's "Law Firm of the Year" award from 2020 prominently on its website. *See id.* On the American Lawyer's top 100 list of law firms by gross revenue, WilmerHale clocked in at number 36 in 2022, amassing a staggering $1.3 billion in revenue during 2021. 2002 AmLaw 100, The 2022 Am Law 100: Ranked by Gross Revenue, https://www.law.com/americanlawyer/2022/04/26/the-2022-am-law-100-ranked-by-gross-revenue/?tokenvalue=9F4B644F-5932-4983-AE1D-E564B48ABF1D (last visited May 26, 2023). Thus, by any measure, WilmerHale is not a typical law firm, charging mid-market rates for its services. It is one of the largest firms in world and can command sky-high rates for its services when it has clients that are willing to pay for them.

Plaintiffs' Motion reflects this as it seeks attorneys' fees not based on reasonable rates in the marketplace, or even the rates that WilmerHale's clients actually pay for its services after negotiating discounts or in light of less than complete realization, *see Citizens for Resp. & Ethics in Wash. ("CREW") v. Dep't of Just.*, 80 F. Supp. 3d 1, 5 (D.D.C. 2015) (recognizing "the

differences between reported rates and actual law firm billing realization"), but instead on the astronomical rates that WilmerHale advertises for its services.  Specifically, Plaintiffs' Fee Motion applies a single rate for all partners and counsel ($940 per hour), senior associates ($815 per hour), associates ($550 per hour), and staff ($235 per hour).  *See* Fee Mot. at 5 (partner and counsel rates); Rate Sched., ECF No. 443-6 (associate rates); Time Rep. at 4-5, ECF No. 443-9 (reflecting paralegal rates).  It derives these rates by applying arbitrary discounts to its advertised billing rates without citing any information or data on how often it realizes its advertised rates or what discounts it frequently provides clients on those high-dollar rates.  *See* Fee Mot. at 7 ("Plaintiffs seek reimbursement at WilmerHale's standard 2019 hourly rates . . . The $940 hourly rate that plaintiffs seek for partner time constitutes a 30% discount from WilmerHale's current median partner rates.").  The absence of evidence to support this arbitrary percentage is telling, and in like circumstances, similar math has been rejected by this Court.  *See King & Spalding, LLP v. Dep't of Health & Hum. Servs.*, Civ. A. No. 16-1616 (APM), 2020 WL 1695081, at *2 (D.D.C. Apr. 7, 2020) ("the public interest in disclosure is arguably at its zenith when the fee demand is made against the public fisc. . . .  there is something untoward about Plaintiff asking to conceal their hourly rates and the work done from public view, while demanding hundreds of thousands of dollars from the public treasury as compensation").

Plaintiffs' support for this approach is scant.  Plaintiffs note that WilmerHale "charge[s] an hourly basis for work performed by firm attorneys and staff, and [] bill[s] the client for that amount."  Smith Decl. ¶ 13, ECF No. 443-2.  But it is insufficient to merely state what counsel bills to its corporate clients.  Rather, counsel must also demonstrate what rates are actually paid by clients or realized by the firm.  *See Nat'l Assoc. of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1326 (D.C. Cir. 1982) (a billing rate "is not what [the attorney] would have liked to receive,

or what the client paid in a single fortunate case, but what on average counsel has in fact received"). Indeed, "[f]irms frequently discount their standard rates and, even after discounting, lower the effective rate further by writing off a portion of their billed hours to reflect attorney inefficiency and other considerations." *CREW*, 80 F. Supp. 3d at 5 (noting discounts, fee caps, and write-offs of first-year associate work). Even then, "firms do not always collect 100 percent of the fees they ultimately bill" and thus, for all of these reasons, "reported rates surely overstate the actual fees that law firms are paid—and expect to be paid—for their services." *Id.*; *see also Concerned Veterans*, 675 F.2d at 1326 ("It is obvious that where counsel customarily exercises billing judgment by not billing at the market rate or for the full amount of time expended this fact must be considered in calculating counsel's true billing rate."). Thus, the mere assertion that counsel bill their time at set hourly rates does not satisfy Plaintiffs' burden of establishing their billing practices or a reasonable hourly rate.

Moreover, Plaintiffs' reliance on *Miller v. Holzmann*, 575 F. Supp. 2d 2 (D.D.C. 2008), a *qui tam* action brought under the False Claims Act, is misplaced. While the Court found in *Miller* that WilmerHale's rates at that time aligned with the established rates for that type of work in the D.C. legal community, those rates were consistent with the rates in the then-existing *Laffey* matrix. *Id.* at 13-14 ("Wilmer Hale's rates also align with those delineated in the *Laffey* matrix"). But now, WilmerHale's rates far surpass those set forth in market-based fee matrices, and this is not a False Claims Act *qui tam* suit. As such, Plaintiffs' reliance on *Miller* is misplaced.

Also, here WilmerHale has provided its services on a *pro bono* basis setting it apart from *Miller*. Indeed, a principal reason the Court blessed WilmerHale's fees in that False Claims Act suit was the commercial nature of its relationship with its client, which is completely lacking here. *See id.* at 16-17 (noting that paying clients will often pay more for legal services at larger firms

than at small firms).  When a paying client is assessing what type of attorney to hire—a big-firm WilmerHale attorney charging top dollar rates, or perhaps counsel at a specialized employment discrimination firm charging more modest sums—that paying client is making an economic choice of which representation to seek—i.e., do I pay more for a firm with more resources or do I pay somewhat less for a firm with specialized expertise but with fewer resources.  By contrast, when an attorney represents a *pro bono* client, the same cannot be said.  There is no cost-benefit analysis being undertaken because there is no cost to the client for the representation.  That is, while the *pro bono* nature of WilmerHale's representation does not disqualify it from recovering reasonable fees, *Copeland v. Marshall*, 641 F.2d 880, 900 (D.C. Cir. 1980), WilmerHale cannot resort to the economic theory that its high rates are market-based because they are what it charges when no such economic analysis, theoretical or not, could have been conducted by WilmerHale's clients in here.  *See* Fee Mot. at 5-6 (suggesting economic theory is applicable).

Most striking is Plaintiffs' failure to provide any evidence of the prevailing market rates for "similar services"—i.e., average rates for multi-plaintiff employment discrimination suits or even generic complex litigation—in the Washington D.C. market.  *See Eley*, 793 F.3d at 105. Plaintiffs offer a then-WilmerHale counsel's own declaration expressing his belief that his firm's rates are reasonable, and the declarations of two counterparts at large international firms: John A. Freedman, a partner at Arnold and Porter, and Jeffrey T. Green, a partner at Sidley Austin. Freedman Decl., ECF No. 443-3; Green Decl., ECF No. 443-4.  While both Freedman and Green join in the opinion that WilmerHale's fees are "well below the prevailing market rates" for a civil rights case of *Segar*'s caliber, neither attorney supports this position with comparable examples, or any example at all of fees earned in similar litigation.  Indeed, neither Freedman nor Green undertook any survey of prevailing rates for employment discrimination work, or even complex

civil litigation work, in the D.C. metropolitan area. Instead, they make clear that their only identified points of reference are the astronomical advertised fee rates employed by their own AmLaw 100 firms.  Freedman Decl. ¶ 14, ECF No. 443-3 ("I am familiar with the rates Arnold & Porter charges for partners, counsel, senior associates, associates, and staff, and have used that information as the basis for rendering my opinion here."); Green Decl. ¶ 12, ECF No. 443-4 ("I have compared my knowledge and experience regarding rates (including, but not limited to, Sidley Austin's) for attorneys of comparable skill and experience to the rates WilmerHale is requesting here."); 2022 AmLaw 100, *supra* (Sidley ranking No. 7 with revenue of $2.8 billion; Arnold & Porter ranking No. 46 with revenue of $1 billion).

The absence is striking particularly since both declarants recite impressive lineups of complex civil rights litigation with which they have themselves been involved.  Indeed, Freedman declares that throughout his almost 30-year legal career, he has "dedicated a significant portion of [his] practice to pro bono civil rights litigation, including in the area [sic] employment discrimination."  Freedman Decl. ¶ 4, ECF No. 443-3.  Yet neither declaration provides any discussion of even a single "pro bono" employment discrimination case or the rates actually recovered from a civil rights client or approved by a court in any case.

Moreover, no mention is made of what Freedman or Green has actually recovered from fee-paying clients in civil rights cases.  At a minimum, the declarants should indicate the precise fees that they "have received from fee-paying clients in comparable cases; and evidence of recent fees awarded by the courts or through settlement . . . [while] handling similar cases."  *Eley*, 793 F.3d at 101 (internal quotations omitted) (fee applicants should supplement vague and outdated matrices with evidence of fees actually paid); *see also Eley*, 793 F.3d at 97, n.5 ("A statistically reliable, well-documented, and extensive survey of the rates clients pay for a certain

sub-market of legal services would be powerfully persuasive.") (citation omitted).  Counsel fails

to demonstrate that "the prevailing market rates in the relevant community" happen to be the same

rates WilmerHale bills its multinational corporate clients.  *See, e.g., Pastre v. Weber*, 800 F. Supp.

1120, 1125 (S.D.N.Y. 1991) (defendant in civil rights case "should not be required to pay for legal

services at the rate Hughes Hubbard would charge to, say, General Motors or IBM").

   **B.     The Court Should Apply the Rates Established In the Fitzpatrick Matrix.**

   Because Plaintiffs fail to justify the rates that they seek to apply in this case, this Court

should instead apply the rates established by the Fitzpatrick Matrix.  As noted above, a "reasonable

fee is one that is adequate to attract competent counsel, but that does not produce a windfall to

attorneys." *West,* 717 F.3d at 1033.  For years the D.C. Circuit and other courts in this jurisdiction

routinely used the rates set forth in fee matrices based on the rates approved in *Laffey v. Northwest*

*Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), *aff'd in part, rev'd in part*, 746 F.2d 4 (D.C. Cir.

1984), *overruled in part*, *Cumberland Mountains*, 857 F.2d at 1516.

   In November 2021, the U.S. Attorney's Office for the District of Columbia published a fee

matrix tailored to complex federal litigation in the D.C. community.  Developed by Vanderbilt

University law professor Brian Fitzpatrick, the new matrix provides a "systematic analysis of

reliable contemporary data" to be used "in cases in which a federal fee-shifting statute permits the

prevailing party to recover "reasonable" attorney's fees," including Title VII.  Fitzpatrick Decl.

¶ 3.  Fitzpatrick developed the Matrix using rates that lawyers charged clients for litigating

complex cases in this District Court as determined from publicly filed fee petitions and resulting

court orders.  *Id*. ¶ 5.  His analysis yielded data from 419 unique lawyers in 84 unique cases and spanned the years 2013 to 2020.[1]  *Id.* ¶ 11.

Judge Howell recently recognized that the Fitzpatrick Matrix remedies the shortcomings of other *Laffey*-based matrices, including outdated source material and "offers a superior measure of the prevailing market rate for complex federal litigation."  *J.T.*, 2023 WL 355940, at *18.  The Court noted approvingly that because the Fitzpatrick Matrix "bas[es] its calculated rates on hundreds of data points, all of which are fully disclosed and cover many levels of experience and areas of complex federal litigation actually pending before this Court [it] promises a more reliable estimation of the going market rates for complex litigation in the District."  *Id.* at *16.  Although the Court observed that the "novelty of Fitzpatrick Matrix place[d] defendant at somewhat of a disadvantage" in that he could not "yet point to cases in which courts have opted to award fees at the Fitzpatrick Matrix rates where the applicable matrix was contested," the methodology underlying the matrix, including more recent raw data and a statistically significant sampling of the relevant legal community, rendered it superior to other available matrices.  *Id.* at *14-15.

Accordingly, because Plaintiffs failed to adequately justify the rates that they seek in their fee petition, this Court should instead apply the Fitzpatrick Matrix rates.  Applying these rates would ensure that Plaintiffs' counsel are adequately compensated without providing a windfall where WilmerHale itself has publicly acknowledged in its fee filings that they are representing their clients on a *pro bono* basis.  *See* ECF No. 432 at n.3; Fee Mot. at n.3;[2]  *see Craig v. Mnuchin*,

---

[1]    The data is publicly available on the D.C. US Attorney's Office at https://www. justice.gov/usao-dc/civil-division.

[2]    Defendant does not dispute that the application of current Fitzpatrick rates, rather than historical rates, is appropriate under the circumstances of this case.  The rationale for applying current rates "does not, however, justify awarding rates based on the level of experience the attorneys have now, as opposed to their experience at the time."  *Lewis v. District of Columbia*,

Civ. A. No. 14-1340 (RC), 2018 WL 6079512, at *17 (D.D.C. Nov. 21, 2018) ("While this Court does not believe that public interest attorneys should be penalized for their lack of a profit motive, it also does not believe that they should receive the windfall of the rates charged only by the nation's largest, full-service commercial law firms, rather than rates more in line with those typically charged by both large and small private, for-profit firms for complex federal litigation in this market."). The Court should rule that the Fitzpatrick Matrix rates are to be used here and direct Plaintiffs to submit revised calculations of their fee demand using them.

## II.     This Court Should Reduce The Lodestar to Account For Vague Billing Entries, Redundant, Excessive, Or Unnecessary Time Expenditures, And Purely Clerical Work.

In the D.C. Circuit, a court may reduce fees "by a reasonable amount without providing an item-by-item accounting," and in this case such reductions are appropriate. *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 973 (D.C. Cir. 2004) ("In view of all this—inadequate documentation, failure to justify the number of hours sought, inconsistencies, and improper billing entries—we will allow reimbursement for only fifty percent of the attorney hours that [plaintiff] requests."). While in support of their motion for attorneys' fees, Plaintiffs have appended more than 500 pages of time records, a review of counsels' billing records demonstrates that reductions to the lodestar are warranted to account for use of impermissibly vague time entries, redundant, excessive, or unnecessary time expenditures, and entries seeking compensation for purely clerical work.

---

Civ. A. No. 15-0521 (JEB), 2018 WL 6308722, at *11 (D.D.C. Dec. 3, 2018). Thus, in calculating appropriate attorneys' fees, the current Fitzpatrick rates should be applied based on the level of experience that Plaintiffs' attorneys had at the time that they performed work on this matter. *See id.* (that court would "use the current [matrix] but [] apply the experience level at the time of billing"); *Young v. Sarles*, 197 F. Supp. 3d 38, 51-52 (D.D.C. 2016) (providing for reimbursement rates based on experience at time of billing); *Kelsey v. District of Columbia*, 219 F. Supp. 3d 197, 204 (D.D.C. 2016) ("This Court has found appropriate the application to pending requests for attorney's fees of the current *Laffey* Matrix rates for the level of an attorney's experience at the time of billing.").

A.   **This Court Should Reduce the Lodestar By 10 Percent To Account For the Prevalence Of Impermissibly Vague Time Entries.**

"Fee applicants bear the 'heavy obligation to present well-documented claims.'" *Kennecott Corp. v. EPA*, 804 F.2d 763, 767 (D.C. Cir. 1986) (reducing award to fee applicant by 15% for poor documentation).   "Supporting documentation 'must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended.'"   *In re Donovan*, 877 F.2d 982, 994 (D.C. Cir. 1989) (quoting *United Slate Tile & Composition v. G & M Roofing,* 732 F.2d 495, 502 n.2 (6th Cir. 1984)); *see also Am. Petrol. Inst. v. EPA*, 72 F.3d 907, 915 (D.C. Cir. 1996) (a fee petitioner "must submit 'sufficiently detailed information about the hours logged and the work done.'") (quoting *Concerned Veterans*, 675 F.2d at 1327).   "Satisfactory documentation in this Circuit consists of 'contemporaneous time records of hours worked . . . plus a detailed description of the subject matter of the work with supporting documents, if any.'"   *Ashraf-Hassan v. Embassy of Fr. in the U.S.*, 189 F. Supp. 3d 48, 58 (D.D.C. 2016) (quoting *Donovan*, 877 F.2d at 994) (alteration in original).   Where the "documentation of hours is inadequate, the . . . court may reduce the award accordingly."   *Hensley*, 461 U.S. at 433.

As such, courts frequently reduce fee awards when the billing descriptions supplied by counsel are overly vague.   For example, in *Michigan v. EPA*, 254 F.3d 1087, 1093–94 (D.C. Cir. 2001), the D.C. Circuit held that entries with nothing more listed than "Conferences calls," "Telephone conferences," or "write emails," were "wholly deficient" and must be eliminated entirely.   It also held that entries listing an action and a person, but otherwise "devoid of any descriptive rationale for their occurrence"—for example, "Telephone conference with client; conference with J. Knight"— were "inadequately detailed" and warranted an overall reduction of the total fee request by 10 percent.   *Id.* at 1095.

In this case, there are numerous examples of inadequately detailed billing entries.  Enclosed herewith (Opp'n Ex. 1) is a non-exhaustive selection of representative examples pulled from Plaintiffs' billing records.  As this selection demonstrates, there are many entries akin to those at issue in *Michigan*, where counsel only vaguely describe meetings, conferences, and other communications, but provide no explanation whatsoever for their occurrence.  Examples include: "Thompson Telecon," "Adams Meeting," "meet with Ms. Gelfond," "O'Flanagan email," "email to Lake re litigation," "Tcon W/ Beaver; Fax To Same; Email To Segar Team," and "communicate with various team members re case status."  Such vague statements are insufficient to satisfy Plaintiffs' burden of proving the reasonableness of their billing and thus courts routinely discount such entries.[3]  *See Dickens v. Friendship-Edison P.C.S.*, 724 F. Supp. 2d 113, 124–25 (D.D.C. 2010) ("[T]there are a number of entries inadequately detailed, with descriptions such as: 'Conference with parent;' 'Discussion with child's attorney;' 'Telephone call to DCPS staff;' and 'Prepared documents for child's advocate,'" which "make reasonable a reduction of 10% from the overall award"); *see also Miller,* 575 F. Supp. 2d at 35-36 (collecting cases).

Plaintiffs' counsel also include many time-entries that only vaguely describe substantive work, including without limitation "Research," "Title VII Research," "read cases," "Research procedural issues," "Research reply brief," "Research/draft portion of reply brief," "draft reply brief," "trial prep," and "prepare for trial."  *See* Opp'n Ex. 2 (examples of inadequately detailed time-entries involving substantive work).  Such vague entries do not enable the court to determine

---

[3]     Many of Plaintiffs' communication-related entries are also objectionable because they refer to meetings or communications with various named individuals, but Plaintiffs do not describe who those people are or what their relationship to this matter has been.  Without this information, it is impossible to evaluate the reasonableness of those charges.  *Donovan*, 877 F.2d at 995 (deducting charges incurred when attorneys held conferences and teleconferences with two individuals when "[t]he application fail[ed] to document who these individuals are or the nature of their relationship to the investigation").

with requisite certainty that the time spent was reasonably expended. *See, e.g., Role Models*, 353 F.3d at 973 ("generic entries" such as "[r]esearch and writing for appellate brief" are "inadequate to meet a fee applicant's 'heavy obligation to present well-documented claims'"); *DL v. District of Columbia,* 256 F.R.D. 239, 246 (D.D.C. 2009) (reducing lodestar by 10% for vague time entries, like "draft reply brief"); *Miller*, 575 F. Supp. 2d at 36 (reducing WilmerHale's lodestar for vague entries, such as "reviewing and revising memorandum to file; research on bid-rigging cases"; the Court's "review of the entire fee application confirms that counsel's time records are simply rife with ambiguous and nugatory entries"); *Cobell v. Norton*, 407 F. Supp. 2d 140, 158 (D.D.C. 2005) ("Entries such as: 'research read cases; searched Westlaw;' 'meet with attys;' 'prepare for trial;' 'further trial preparation and document review;' 'trial preparation;' and 'preparation for trial,' are so vaguely generic that the Court cannot determine with certainty whether the activities they purport to describe were necessary and reasonable"); *United States ex rel. Miller v. Bill Harbert Int'l Const. Inc.*, 601 F. Supp. 2d 45, 51–52 (D.D.C. 2009), *amended in part, vacated in part*, 786 F. Supp. 2d 110 (D.D.C. 2011) (reducing lodestar by 10% due to vague entries such as "Research re: posttrial issues," "Review posttrial motion research memos;" "Work on responses to post-trial motions" and "Edit sections of post-trial motion"); *Craig v. District of Columbia*, 197 F. Supp. 3d 268, 280 (D.D.C. 2016) ("[Plaintiff's] billing entries only vaguely describe 'preparing for trial,' and provide no detail or specificity from which the Court could ascertain whether the preparations were reasonably expended or, instead, were unnecessarily duplicative."); *A.C. ex rel. Clark v. District of Columbia*, 674 F. Supp. 2d 149, 158–59 (D.D.C. 2009) (concluding that entries such as "preparation for hearing" and "preparation for telephone conference" lack sufficient detail).

In short, based on the prevalence of vague, inadequately detailed time entries in counsels' billing records, and consistent with the approach taken by other courts in this Circuit, this Court

should reduce the Plaintiffs' lodestar by 10 percent. *See Miller*, 575 F. Supp. 2d at 36 (applying same reduction to WilmerHale time entries in that suit for the same reasons). Therefore, the Court should reduce the lodestar by 10% to account for the vague entries.

### B.    The Court Should Further Reduce the Lodestar By an Additional 10 Percent to Account For Excessive, Redundant and Unnecessary Time.

Although Plaintiffs state that they exercised billing judgment in crafting their fee request, they persist in seeking compensation for work that is excessive, redundant, or otherwise unnecessary. Part of the problem can be traced to overstaffing, the natural consequence of which is the unreasonable expenditure of time. *Donovan*, 877 F.2d at 995 (recognizing that courts should guard against overstaffing by scrutinizing entries for excessive, redundant, or otherwise unnecessary work). Because "[t]he amount of time actually expended is not the same as the amount of time reasonably expended, [] the Court may reduce an award for overstaffing." *Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.*, 218 F. Supp. 3d 27, 52 (D.D.C. 2016).

Plaintiffs' counsel staffed the case inefficiently—a costly error for which Defendant should not be charged. Plaintiffs seek compensation for time billed by 36 different attorneys, many of whom had only limited roles. Steve Charnovitz billed $22,335.50 worth of time in one month in 2002, and nearly all his billings describe only "review[ing] files," "writ[ing] up summaries" and then reading and responding to internal emails. Likewise, Charles Beene worked on this case for approximately one month in August 2010, but billed $26,407.63 worth of time, much of it "reviewing various case background materials." This is over $50,000 of taxpayer dollars for one month's worth of vague and unnecessary work. These are but two examples. Thus, the inclusion of attorneys who had only limited roles in this matter worked to increase fees unnecessarily.

Much of the billing is also excessive. In May 2017, the Court entered a short minute order requesting that the parties submit a joint status report. *See* Min. Order of May 25, 2017. Although

the Minute Order was only two sentences long, Andrew Mendrala, a senior associate, billed nearly half an hour to reviewing it—at a rate of $815 per hour.  *See* Ex. 3 (time entries involving work on June 2017 Joint Status Report).  Then, on May 30, 2017, Plaintiffs' counsel met to discuss the report.  *Id.*  Six attorneys participated at that meeting—two counsel, two senior associates, and two associates—none of whom billed the same amount of time for it.  *See id.*  Billing entries varied, indicating somewhere between 0.7 hours and 1.3 hours.  *See id.*  Thereafter, counsel spent many more hours drafting, revising, reviewing, commenting on, and communicating about the report. *See id.*  This simple, seven page joint status report consumed almost 32 hours of time from eight WilmerHale attorneys at a cost of $25,140.  While "[e]xtensive preparation is, of course, a good thing, . . . Defendants should not be required to foot the bill for preparation above and beyond what was reasonably necessary."  *Am. Oversight v. Dep't of Just.*, 375 F. Supp. 3d 50, 71 (D.D.C. 2019); *see also Salazar v. District of Columbia*, 991 F. Supp. 2d 39, 53–54 (D.D.C. 2014) (reducing billing entries for inter-office conferences "in which 3, 4, or 5 lawyers attended, and presumably participated" because "this is unnecessary").

Nor should Plaintiffs recover fees for nonproductive work.  Between 1996 and 2019, Plaintiffs did not file any petitions for attorneys' fees and costs.  They do however seek compensation for significant time spent researching and drafting motions for attorneys' fees.  For example, between April and June 2005, Steven Cherry, David Cohen, Eacata Gregory, and others billed considerable time[4] to researching, drafting, and revising a fee petition and supporting materials, which was "finalize[d]" on June 1, 2005, but ultimately never filed.  *See* Opp'n Ex. 4 (selection of time entries involving work on fee petitions).  In the years that followed, additional

---

[4]    Because many of the entries describing these activities are block-billed with other tasks and do not delineate the amount of time spent on each activity, it is impossible to know exactly how much time was devoted to this work.  *See infra.*

work on the topic of attorneys' fees was carried out, including research and drafting.  *See, e.g.,* Pls.' Ex. 8 (ECF No. 443-9) at 313-14 (entries for Christina Zaroulis Milnor seeking $4,809 for work on Feb. 3-4, 2010).

In early 2015, a new, sustained fee petition effort began in earnest, but was again never filed.  *See* Opp'n Ex. 4.  This effort involved a largely new cast of attorneys and support staff and entailed a significant devotion of time and effort to more research and more drafting, revising, and internal communications about a fee petition.  This endeavor lasted nearly two years—through November 2016.  *See id*.  But again, this work produced no fee petition that was submitted to the Court.  Indeed, between late 2014 and 2016 alone, Plaintiffs billed at least 414 hours to researching and preparing a fee petition at a cost of nearly a quarter million dollars.  *See* Opp'n Ex. 4.  As nothing ever came of either of these two earlier petitions, it is unreasonable to charge the Government for this work.  *See Concerned Veterans*, 675 F.2d at 1327-28 ("Fees are not recoverable for nonproductive time."); *Copeland v. Marshall*, 641 F.2d 880, 902-03 (D.C. Cir. 1980) (en banc) ("not allowable are hours that simply should not have been spent at all, such as where attorneys' efforts are unorganized or duplicative").

Even assuming that the aforementioned work from 1996 to 2019 contributed to the petition Plaintiffs ultimately filed in January 2020, the billing is simply unreasonable.  The 2020 Motion and Memorandum in support (without exhibits) is less than 13 pages.  *See* Init. Mot. for Att'y Fees (ECF No. 432) at 1-13.  Such an expenditure of time for a motion less than 13 pages long is plainly unreasonable and simply unacceptable.  *See, e.g., Baylor v. Mitchell Rubenstein & Assocs., P.C.,* 857 F.3d 939, 959 (D.C. Cir. 2017) (Henderson, J., concurring) (courts should guard against fee requests becoming "the tail . . . wagging the dog"); *Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 857 F.3d 939, 959 (D.C. Cir. 2017) (Henderson, J., concurring) (internal quotation marks and

citation omitted); *Fabi Constr. Co. v. Sec'y of Lab.*, 541 F.3d 407, 413 (D.C. Cir. 2008) (holding that 236.8 hours of attorney time to prepare the fee application was per se unreasonable and reducing award by 50%); *Am. Wrecking Corp. v. Sec'y of Lab.*, 364 F.3d 321, 331 (D.C. Cir. 2004) (finding that 118 hours of attorney time billed to prepare the fee petition was unreasonable and reducing award 50%); *Goos v. Nat'l Ass'n of Realtors*, 997 F.2d 1565, 1572–73 (D.C. Cir. 1993) (affirming reduction of 50% for fees incurred while preparing the fee petition because the hours were "grossly excessive"); *Envt'l Def. Fund, Inc. v. Reilly*, 1 F.3d 1254, 1258 (D.C. Cir. 1993) ("outrageous[]" fee requests may be entirely denied, and, in "a case of less egregious overbilling, we may impose a lesser sanction, such as awarding a fee below what a 'reasonable' fee would have been in order to discourage fee petitioners from submitting an excessive request."). Therefore, a 10% reduction for excessive, redundant, and unnecessary time is warranted.

### C.   The Court Should Further Reduce the Lodestar By 10 Percent Because of WilmerHale's Excessive Block-Billing

"As [the D.C. Circuit] has observed, block billing makes it impossible for the court to determine, with any degree of exactitude, the amount of time billed for a discrete activity, leaving the court to estimate the reduction to be made because of such insufficient documentation." *Miller*, 575 F. Supp. 2d at 36–38 (cleaned up; quoting *In re Olson*, 884 F.2d 1415, 1428 (D.C. Cir. 1989)). When "counsel's time records 'lump together multiple tasks, making it impossible to evaluate their reasonableness,' . . . a wholesale reduction in the lodestar is appropriate." *Miller*, 575 F. Supp. 2d at 38 (quoting *Role Models*, 353 F.3d at 971).

Here, Plaintiffs' attorneys engaged in systemic block-billing.  For example, on December 16, 1996, Michael Fisher billed 3.30 hours with the following blocked-billed description:

EMAIL TO LAKE AND HERDE RE DRAFT MOTION; CALCULATIONS RE
DISPARATE IMPACT; CONF W/ RUBIN RE PROMOTION DATA; CONF W/

> GROTE RE DEA BILL; CONF W/ GERMAN RE SAME; CONF W/ LA RE
> FILING MOTION; EXAMINE DEA BILLS FROM 92-DATE; EMAIL W/
> HERDE RE MOTION; CONF W/ LAKE RE BILL

Pls.' Ex. 8 at 4 of 481 (using bottom page numbering).  The same associate one year later on

February 13, 1997, block-billed an entire day of 7.38 hours with:

> CONF W/ GROTE RE P. JONES; EDIT MEMO RE SAME; EMAIL W/ LAKE
> RE SAME; RESEARCH REPLY BRIEF; MULTIPLE CONFS W/ SEGAR
> COMMITTEE; CONF W/ LAKE RE SAME; OUTLINE ARGUMENT; BEGIN
> DRAFTING SAME

*Id.* at 6.

On October 25, 2000, Associate Jennie O'Flanagan block-billed 10.80 hours on a single

day with the description:

> TELECONS WITH C. ALLEN RE INDIVIDUAL CLAIM; LETTERS TO
> COMMITTEE  RE HRM RRO STUDY; CONFER WITH L. CUPINGOOD AND
> J. KADANE AND  REVIEW REPORTS AND COMMENTS OF SAME; DRAFT
> AND RESEARCH  MOTION FOR RECONSIDERATION

*Id.* at 30.   Not to be outdone, the next day the same associated block-billed a remarkable

11.97 hours with the following description:

> CONFER WITH C. ALLEN RE INDIVIDUAL CLAIM; DRAFT, CONFER
> WITH B. LAKE AND S. LUDWIG RE MOTION FOR EXTENSION OF TIME;
> FAX AND  CONFER WITH L. CUPINGOOD, J. KADANE, B. LAKE RE
> STATISTICAL REPORTS; DRAFT AND SEND RETAINER LETTER TO J.
> KADANE; RESEARCH 60(6) STANDARDS AND RELATED ISSUES

*Id.* at 31.

The block-billing continued throughout the period covered by the fee motion with

Associate Rebecca Gelfond on August 2, 2006, block-billing 5.13 hours with the description:

> EMAIL GREGORY RE WALKER'S POTENTIAL CLAIM AND MEDIATION
> SCHEDULING; PREPARE LIST OF BACKGROUND MATERIALS FOR
> MEDIATOR;  CONFER WITH GREGORY RE LIST OF BACKGROUND
> MATERIALS FOR  MEDIATION; EMAIL COHEN AND CHERRY RE 1987
> ORDER AND PROPOSED   LIST OF BACKGROUND DOCUMENTS;
> TELECON WITH WALKER RE DRAFT   LETTER TO DEA RE HIS
> POTENTIAL RETALIATION CLAIMS AND EMAIL  SUMMARY OF CALL

> TO TEAM; EDIT DRAFT EMAIL TO BUCKLEY RE  MEDIATION
> INTRODUCTORY SESSION[,]

*id.* at 243.  Senior Associate March E. Johnson block-billing 3.15 hours (at a $815/hour rate) on

June 11, 2009, with the following:

> TELECONFERENCE WITH MR. CHERRY, CONFER WITH MS. O'CONNOR,
> MS. GELFOND, AND MR. PELLEGRINO RE: NEGOTIATION STRATEGY IN
> LIGHT OF OPPOSING COUNSEL'S SETTLEMENT PROPOSAL;
> CORRESPOND WITH EXPERTS RE: SETTLEMENT PROPOSAL; DRAFT
> CORRESPONDENCE WITH OPPOSING COUNSEL RE: PROMOTIONS
> PROCESSES; CORRESPOND WITH CLIENT RE: ACTIVITY IN PARALLEL
> AND RELATED CASES[,]

*id.* at 305.  Similarly, Senior Associate Andrew Mendrala block-billing 7.29 hours (at a $815/hour

rate) on February 9, 2015, with the following note:

> Draft stipulation appointing Dr. Outtz to Working Group; draft email to EEOMC
> regarding differences between 2003 and 2008 Pulakos plans; finalize first draft of
> response to government's objections to magistrate's report and recommendation;
> participate in call with EEOMC regarding upcoming career board meeting

*Id.* at 441.

WilmerHale's block-billing issues were not limited to associates.  For example, on

April 20, 2006, Counsel Sarah Gill block-billed 3.24 hours at $940/hour, noting the following:

> SUMMARIZE NOTES FROM SETTLEMENT CONFERENCE; DELEGATE
> UPDATING AND ORGANIZING OF CASE WEBSITE TO MS. BRICE;
> TELECON WITH MS. GELFOND RE RECOMMENDATIONS FOR COURT

*Id.* at 234.  The Court is left guessing what fraction of time was spent delegating tasks,

summarizing notes, or having a phone call.  Similarly puzzling is Counsel Rebecca Gelfond's

block-billing on June 11, 2009, of 2.70 hours at $940/hour:

> TELECONFERENCE WITH MR. JOHNSON AND MR. CHERRY RE
> RESPONSE TO DEA'S 14/15 PROPOSAL; CONFER WITH MS. O'CONNOR,
> MR. PELLEGRINO, AND MR. JOHNSON RE RESPONSE TO DEA'S 14/15
> PROPOSAL; REVIEW AND EDIT E-MAILS TO WORKING GROUP AND
> EXPERTS RE DEA'S 14/15 PROPOSAL AND TELECONFERENCES WITH
> MR. JOHNSON RE THE SAME

*Id.* at 305.  Partners at times also utilized a block-billing practice, too—e.g., on May 11, 2004, Partner David S. Cohen block-billed 4.68 hours at $940/hour with the following note:

> TELECON WITH CHERRY RE RC GAMBLE TESTIMONY; TELECON WITH
> WEINSTEIN AND CHERRY RE VARIOUS SCHEDULING MATTERS;
> LETTER TO WEINSTEIN RE TANDY DEPOSITION; REVIEW ITEMS FOR
> PRIVILEGE LOG; PREPARE FOR HUTCHINSON DEPOSITION; PREPARE
> TO MEET WITH FENNER TO PREPARE FOR DEPOSITION.

*Id.* at 111.

Attorneys were not alone in block-billing—WilmerHale's staff employed the opaque practice as well.  For example, Paralegal Catherine Alton on February 13, 2015, block-billed 2.34 hours to the following:

> Correspond with Ms. Griffith re upcoming court filing; compile and organize
> materials cited in draft brief for potential exhibits and in preparation for the brief
> cite check per the request of Ms. Griffith; cite check draft motion per the request of
> Ms. Griffith; organize and file case materials.

*Id.* at 442.

The above are just a handful of examples.  The Court can turn to virtually any page in the 481 pages of Plaintiffs' Exhibit 8 where WilmerHale's individual billings are presented to observe that the firm's use of block-billing was rampant.  Accordingly, as Judge Lamberth did in *Miller* with WilmerHale's bills, the Court should reduce the lodestar by 10 percent because of its block billing.  *Miller*, 575 F. Supp. 2d at 38.

### D.  The Court Should Further Reduce the Lodestar Because Plaintiffs Are Not Entitled To Compensation For Purely Clerical Work.

Further reductions of Plaintiffs' lodestar are warranted to reflect the fact that both attorneys and staff members have billed time performing work that is purely clerical in nature.  It is well-settled that a prevailing party may not recoup attorneys' fees for time spent performing purely clerical tasks.  *See Role Models*, 353 F.3d at 973 ("[P]urely clerical or secretarial tasks should not be billed at a paralegal rate regardless of who performs them."); *In re Meese,* 907 F.2d 1192, 1203

(D.C. Cir. 1990) ("The court . . . deducts those charges by both paralegals and law clerks for such tasks as 'delivering' or 'picking up' various documents as well as photocopying" because "such tasks are 'purely clerical or secretarial' and thus cannot be billed at paralegal or law clerk rates."). Instead, clerical work "ought to be considered part of normal administrative overhead." *Michigan,* 254 F.3d at 1095–96.

Purely clerical tasks include, for example, time spent making copies, faxing documents, making and updating case files, setting up meetings, organizing documents, filing motions, and preparing shipping labels. *See id.* (excluding charges described as "[f]ile documents at U.S. Court of Appeals for J. Knight," "[r]eproduce and fed ex documents to EPA personnel for J. Knight," "[o]btain documents from the EPA," and "obtain a Federal Register notice" (internal quotation marks omitted)); *Driscoll v. George Wash. Univ.*, 55 F. Supp. 3d 106, 117 (D.D.C. 2014) ("[F]iling motions on the electronic case management system and preparing shipping labels, while necessary, are not compensable under fee-shifting statutes."); *Bridges Pub. Charter Sch. v. Barrie*, 796 F. Supp. 2d 39, 50–51 (D.D.C. 2011) (excluding "any clerical work, such as entries saying 'update case file' and 'organize case documents,' [that] was billed by [a] paralegal or administrative assistant"); *Jackson v. District of Columbia*, 603 F. Supp. 2d 92, 98 (D.D.C. 2009) (denying reimbursement for charge described as "create file; made copies; faxed document").

Although counsel claim that they have excluded all time spent on "administrative matters, such as coordinating calls and meetings" and "time spent by project assistants on purely clerical matters," Fee Mot. at 11, the billing records still include numerous instances of both attorneys and staff billing time for non-compensable clerical tasks. Enclosed herewith is a non-exhaustive selection of representative examples of these entries. Opp'n Ex. 5. Some of these examples include attorneys billing time for: "attend[ing] to various administrative tasks related to Segar case

issue," "fill[ing] out paperwork to get access to ECF," "fil[ing] motion for discovery and to stay and proposed order," "organiz[ing] files," "re-organiz[ing] electronic binder of documents to be taken to mediation," "fax[ing] to Beaver," "finaliz[ing] mailing,"  and "revis[ing] plaintiff class mailing labels."  *See* Opp'n Ex. 5 (examples of time entries reflecting purely clerical work).  Tasks such as these are not properly billed at any rate, let alone attorney rates.

Clerical tasks appear to be even more prevalent in the professional staff billing entries.  Indeed, while counsel claim that such entries have already been excluded, the vast majority of time billed by project assistants appears to be purely clerical in nature.  This includes tasks, such as: "copy and review docs per Currie," "organize and review docs," "data entry per Currie," "organize docs per Lindsay," "copy, copy check and organize docs," "PDF defendants' production letters and distribute to team," "prepare and label folders for depositions transcripts," "update pleadings and correspondence indices," "create box inventory index for retrieval of case files," "update master discovery and filings binders," and "file maintenance."  Opp'n Ex. 5.  Paralegals likewise billed for things like: "organize and copy documents for production and attorney review," "save, print, and collate pleadings pertaining to the motion to terminate for attorney team review," "revise index to timeline binders," "review boxes left by departing attorney and arrange for return of nonessential files to legal key," "file electronic case materials," "copy and assemble deposition binders per S. Gill," "copy organize and prepare pleadings and case files for messenger deliver to Walker re E. Gregory."  *See* Opp'n Ex. 5.

Because these kinds of purely clerical tasks are not compensable on a motion for attorneys' fees, this Court should reduce the lodestar appropriately.  *See Copeland v. District of Columbia*, Civ. A. No. 13-0837 (CRC/DAR), 2016 WL 5342702, at *5–6 (D.D.C. Aug. 29, 2016), *R&R adopted*, 208 F. Supp. 3d 255 (D.D.C. 2016) (reducing lodestar by five percent to account for

billing of "certain 'clerical tasks' such as scheduling conferences/meetings and placing meeting dates on the calendar; requesting records; scanning documents; forwarding correspondence; numbering, copying, and assembling documents; downloading files; and obtaining contact information."). Based on the prevalence of time entries devoted to purely clerical work, this Court should further reduce the lodestar of project assistants and paralegals by 50% and reduce the lodestar for attorneys by 5%.

> ### E.   The Court Can Calculate A Reasonable Attorney Fee By Applying The Fitzpatrick Matrix, And Discounting By Percentages As Appropriate.

Plaintiffs' requested fee is unreasonable. A more appropriate fee can be determined by applying the Fitzpatrick Matrix to determine a reasonable hourly rate. Once the Fitzpatrick Matrix rates for the 36 attorneys who billed to *Segar* are multiplied with the hours expended to arrive at a fee, that fee should be reduced by (A) 10% to adjust for vague billing entries, (B) 10% to account for overbilling, (C) 10% to adjust for block-billing, and (D) another 5% from the attorney fees and 50% from the fee demanded for paralegals to account for purely clerical work.

## III.   Plaintiffs Fail to Demonstrate The Reasonableness Of Many Costs For Which They Seek Compensation.

In addition to their request for attorneys' fees, Plaintiffs also seek $770,750.91 in costs. A large portion of the costs for which Plaintiffs seek compensation relates to charges for printing and photocopying. For many years, counsel billed at rates in excess of the customary rates charged in this District for such matters. Thus, those charges should be reduced.

Plaintiffs seek more than $200,000 for photocopying and printing expenses. *See* Pls.' Ex. 5. Review of Plaintiffs' supporting charges, however, reveals that the rates Plaintiffs charged for many of these billings were excessive. In this District, the customary charge for copying and printing is $0.15 per page and $0.25 per page for color copying and printing. *See Salazar*, 991 F. Supp. 2d at 63; *Johnson v. District of Columbia*, 850 F. Supp. 2d 74, 82 (D.D.C. 2012); *McClam*

*v. District of Columbia*, 808 F. Supp. 2d 184, 191 (D.D.C. 2011); *Copeland*, 2016 WL 5342702, at *6.

The rates charged by Plaintiffs, however, exceed these traditional printing and copying rates for many years.  For printing, it appears that counsel charged $1.10 per page between June 1996 and January 2003[5] and then $0.20 per page between January 2003 and November 2004. Similarly, counsel's charges for "duplicating" reveal that counsel charged $0.20 per page between June 1996 and October 2004.  It was not until the end of 2004 that Plaintiffs began charging $0.15 per page for both copying and printing.  For "printing color," "color duplicating," and "photocopy color," it appears that counsel has always charged $1.00 per page.  These rates are excessive, and Plaintiffs have made no attempt to justify them.  Thus, this Court should reduce the rates for copying and printing to $0.15 per page and lower the rates for color printing to $0.25 per page. *See, e.g., Salazar*, 991 F. Supp. 2d at 63 (reducing plaintiff's rates for copying, printing, and scanning from $0.20 per page to $0.15 per page and lowering rate of color copying from $1.00 per page to $0.25 per page).

## CONCLUSION

Plaintiffs fail to show that the $15,004,767.50 in fees and costs they seek are reasonable. Contrary to Plaintiffs' assertion, the length and duration of the case in and of itself does not support WilmerHale's astronomical fee request.  In fact, the record belies this position and makes clear that very minimal time was spent litigating contested issues from 1996 to 2019, the period at issue in the fee petition.  Furthermore, Plaintiffs' counsels' rate—topping out at almost $1,000 an hour—

---

[5]     In the documentation provided by Plaintiffs, there are no charges specifically identified as "printing" between 1996 and 2005.  Instead, there are charges for "Network Services / Word Processing."  These charges persist until approximately May 2005, when it was apparently replaced with a charge called "document printing."  Adding these two categories together appears to yield the approximately $57,000 that Plaintiffs claim for "printing" expenses.

is inconsistent with the prevailing market rates in the District of Columbia for similar services. Plaintiffs' bills are replete with entries showing that the case was overstaffed and overbilled.

Accordingly, Defendant respectfully requests that this Court apply the Fitzpatrick Matrix to determine a reasonable hourly rate and reduce the fees to account for excessive and unnecessary time expenditures.

Dated: May 30, 2023

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By:       /s/ Derek S. Hammond
DEREK S. HAMMOND, D.C. Bar #1017784
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-2511

*Attorneys for the United States of America*