**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| HENRY W. SEGAR, *et al.*,<br><br>            Plaintiffs,<br><br>      v.<br><br><br>PAMELA J. BONDI,<br>U.S. Attorney General, *et al.*,<br><br>            Defendants.[1] |

Civ. Action No. 77-0081 (EGS)

**MEMORANDUM OPINION**

"Title VII of the Civil Rights Act of 1964 proclaims one of this nation's most fundamental, if yet unrealized, principles: a person shall not be denied full equality of employment opportunity on account of [their] race . . . ." *Segar v. Smith*, 738 F.2d 1249, 1258 (D.C. Cir. 1984). For nearly fifty years, African American Special Agents ("Plaintiffs") at the Drug Enforcement Agency ("DEA" or "Agency"), have fought for their employer, their country, to live up to this obligation.

---

[1] According to Plaintiffs' Motion for Preliminary Approval, "[w]hile the United States does not waive this argument [that the DEA Administrator is not a proper defendant], it agrees for purposes of filings concerning this settlement to use of the plural form "defendants" for ease of reading." Mot. for Prelim. Approval, ECF No. 502 at 2. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the current Attorney General and DEA Administrator are substituted for the prior Attorney General and DEA Administrator. *See* Fed. R. Civ. P. 25(d).

Among these Plaintiffs are a group of African American Special Agents ("Damages Class") who were denied promotions to GS-14 or GS-15 positions between 1993 and 2022, despite making the Best Qualified List ("BQ List"), under promotion procedures that were found to violate the law and this Court's orders. The Court agrees that "[d]amages cannot entirely remedy that harm, as money cannot give Black Special Agents the opportunities to lead and otherwise serve their country at the highest levels— opportunities that those agents earned through years of hard work and putting their lives on the line." Pls.' Mot. for Individual Relief, ECF No. 486 at 1. But the Proposed Partial Settlement Agreement ("Proposed Settlement") now before the Court will finally provide some amount of compensation to these public servants whose lives and careers were mired in decades of injustice. On March 24, 2025, this Court held a Fairness Hearing ("Fairness Hearing") during which it issued a bench ruling approving the Proposed Settlement. *See* Mot. for Final Approval, ECF No. 512.[2] This Memorandum Opinion memorializes that ruling.

---

[2] When citing electronic filings throughout this Opinion, the Court cites to the ECF header page number, not the page number of the filed document.

I.   **Background**

   A. **Underlying Litigation**

   The DEA was established as part of the Justice Department

in 1973 to "enforce[] this nation's federal criminal laws

concerning the illegal sale, distribution, and use of drugs."

*See Segar*, 738 F.2d at 1258. The "bulk of the DEA's criminal

investigative work" is done by "Special Agents." *Id.* At the time

this case commenced, the DEA "employ[ed] about 2,000" Special

Agents, "and as of 1978, [only] seven percent were [B]lack." *Id.*

   In 1977, Plaintiffs filed a Title VII action alleging that

the DEA discriminated against them in its employment practices.

*Id.* at 1258-60 (Plaintiffs "alleged discrimination in

recruitment, hiring, initial grade assignments, salary, work

assignments, evaluations, discipline, and promotions"). The

Court certified a class of all African Americans "who had then

served or . . . had been discharged as [S]pecial [A]gents at

DEA, and who had applied for positions or would in the future

apply." *Id.* at 1260-61. After a two-week trial in 1979, the

Court agreed that the DEA had discriminated against Plaintiffs

with respect to their salary, grade at entry, work assignments,

supervisory evaluations, discipline, and promotions. *See Segar*

*v. Civiletti*, 508 F. Supp. 690, 712-15 (D.D.C. 1981), *aff'd in*

*part, rev'd in part*, *Segar v. Smith*, 738 F.2d at 1296

("affirm[ing] the District Court's liability determination in
its entirety"). The United States Court of Appeals for the
District of Columbia Circuit ("D.C. Circuit") affirmed the
Court's liability determination in full, but vacated some of the
Court's remedial measures and remanded the case for further
proceedings. *See Segar*, 738 F.2d at 1296.

After the 1981 trial, the Court "directed the parties to
submit proposals for further relief." *Segar v. Smith*, Civ. No.
77-81, 1982 WL 214, at *1 (D.D.C. Feb. 17, 1982). It adopted
Plaintiffs' proposal and ordered, *inter alia*, that the DEA
"shall not discriminate against any [B]lack agent because of his
race, color or national origin, with respect to . . .
promotions" and that it shall "develop and implement new,
nondiscriminatory employment systems with respect to . . .
promotions." *Id.*, at *4. Since then, the parties have engaged in
litigation to effectuate the Court's order enjoining the DEA
from engaging in discriminatory practices. *See Segar v. Barr*,
No. 77-cv-81, 2019 WL 2605591, at *1 (D.D.C. June 25, 2019).

A comprehensive history of this litigation exists in the
record and in the Court's prior opinions; this Memorandum
Opinion focuses on the events that led to the Proposed
Settlement. Fulsome review of the record makes clear, however,
that an extraordinary amount of effort, time, and resources went

into ensuring that the DEA complies with its obligations. As the
Court noted at the Fairness Hearing, all the Damages Class
members, especially members of the EEOMC, Class Counsel, Working
Group, and Defendants deserve recognition for negotiating a
settlement to account for decades of wrongdoing. This case has
spanned multiple judges, including Judge Aubrey E. Robinson, who
presided over this case from 1977 until he passed away on
February 27, 2000, shortly before the case was reassigned to
this Court on March 29, 2000; Magistrate Judge John M. Facciola,
who presided over numerous disputes and settlement negotiations
throughout the decades; and Magistrate Judge Zia M. Faruqui, who
assisted in settlement negotiations shortly before the parties
reached their Proposed Settlement here. These judges, similarly
to the parties and all those affected by the DEA's actions,
deserve recognition for their roles in facilitating the pursuit
of justice and accountability.

### B. Discriminatory Promotion Procedures

In response to the Court's 1982 order for the DEA to
implement nondiscriminatory procedures, including for
promotions, the DEA implemented two sets of procedures that
ended up themselves being discriminatory. First, the DEA
implemented the Special Agent Promotion Process ("SAPP") in
1992. *See* Op., ECF No. 35. Under the SAPP, agents who scored

high were placed on the BQ List for a position. *Id.* at 2. Agents on the BQ List were considered "equally qualified for promotion to the vacant position." *Id.* Simultaneously, the Special Agent in Charge ("SAC") for the division with the vacancy could "submit a list of his recommendations in order of preference." *Id.* The DEA's Career Board would then select an agent for the promotion. *Id.*

In 1997, Plaintiffs filed a motion for compliance order in which they argued that the SAPP continued to discriminate against them in violation of law and court order. *Id.* In 1999, the Court granted Plaintiff's motion in part and held that "the use of SAC short list recommendations for promotions to Grades 14 and 15 violate[d] this Court's remedial orders and Title VII of the Civil Rights Act of 1964." *Id.* at 22–23; *see also* Order, ECF No. 36. The Court "enjoin[ed] the use of SAC recommendations until such time as their use can be validated as consistent with the agency's obligations under law." Op., ECF No. 35 at 22. It also "ask[ed] the parties to brief the question of fashioning individual relief." *Id.*

Second, and in response to the Court's 1999 order, the parties negotiated "Interim Procedures" for GS-14 and GS-15 promotions, which the Court approved. *See* Mot. for Prelim. Approval, ECF No. 502 at 3. The parties could not negotiate a

"permanent, validated process," however, and these Interim
Procedures were in place for more than twenty years. *Id.* During
that time, Plaintiffs, especially the EEOMC, "determined that
the Interim Procedures themselves had a discriminatory effect on
Black agents." *Id.*

In 2010, Plaintiffs filed a motion for compliance and to
show cause why the DEA should not be held in contempt for
violating the Court's orders to implement non-discriminatory
procedures. *See* Pls.' Mot. for Compliance, ECF No. 303 at 5–8.
The Court referred the motion for compliance and several other
issues to Magistrate Judge Facciola. *See* Minute Order (Aug. 22,
2014). Magistrate Judge Facciola held an evidentiary hearing and
prepared a Report and Recommendation regarding the promotion
process, status of the Working Group, availability of a third-
party vendor capable of validating future promotion procedures,
continued oversight of the DEA's compliance, and calculation of
individual relief and attorneys' fees. *See* R&R, ECF No. 395. In
2019, the Court adopted in part Judge Facciola's Report and
Recommendation and granted in part Plaintiff's motion for
compliance order. *See* Order Adopting R&R, ECF No. 423 at 1–2. It
ordered the parties to develop "a modified plan for promotions
to GS-14 and GS-15 level positions" and if Plaintiffs concur,
"seek a petition to allow implementation of the plan for future

promotion practices, subject to a decision . . . as to whether

[it] requires further validation . . . ." *Id.*

The DEA then proposed new procedures and agreed to a

validation study. *See* Mot. for Prelim. Approval, ECF No. 502 at

3. The Court approved the new procedures on April 7, 2022, and

the DEA implemented them a month later. *See id.; see also* Minute

Order (Apr. 7, 2022) (granting Joint Motion for Entry of GS-

14/15 Promotion Procedures, ECF No. 461).

### C. Calculation of Damages

In the 2019 Order, the Court also required Plaintiffs to

"state with certainty the damage model they propose and allow

defendant to either concede the validity of the model or file an

opposition." Order Adopting R&R, ECF No. 423 at 2. "[P]laintiffs

proposed a damages model, developed in consultation with

statistical experts who analyzed DEA promotion cycles between

January 21, 1993 (the first cycle in which non-compliance with

the injunction was established), and May 2, 2022 (when . . . the

DEA replaced the Interim Procedures with validated procedures)."

Mot. for Prelim. Approval, ECF No. 502 at 3-4. This model had

three main components: backpay, frontpay, and prejudgment

interest on backpay.

Damages Class members who made the BQ List for GS-14 or GS-

15 promotions would "receive backpay based on the estimated

wages and pension value they would have received if they had been promoted in a timely manner." *Id.* (citing Ex. B to Pls.' Proposal for Individual Relief, ECF No. 486-1 (detailed explanation of the backpay methodology)). The model called for prejudgment interest on backpay to "account for the time elapsed between when the backpay accrued and when the damages would actually be paid," using the Prime Rate. *Id.* (citing Ex. B to Pls.' Proposal for Individual Relief, ECF No. 486-1). Finally, backpay-eligible class members who had still not been promoted to a GS-14 or GS-15 position by the end of the backpay period would receive frontpay to "compensate for the estimated wages and retirement benefits those class members would have earned after May 2, 2022." *Id.* The model discounted frontpay based on the statistical probability that after May 2, 2022, class members at issue would be promoted or leave the Agency. *Id.*

The DEA agreed on Plaintiffs' entitlement to backpay, but "objected to [P]laintiffs' use of the prime rate to calculate prejudgment interest and to [P]laintiffs' request for frontpay entirely." *Id.* After they reached this impasse, the parties briefed these issues to the Court. *See* Pls.' Mot. for Individual Relief, ECF No. 486; Defs.' Opp'n to Pls.' Opening Br. for Individual Relief ("Defs.' Opp'n Individual Relief"), ECF No. 489; Pls.' Reply, ECF No. 491. Based on the methodology

9

described above, Plaintiffs sought $13,054,177.51. *See* Pls.' Mot
for Individual Relief, ECF No. 486 at 2; Pls.' Notice of Updated
Amount of Individual Relief, ECF No. 492 (correcting requested
relief amount). Plaintiffs argued that prejudgment interest on
backpay should be based on the "average annual prime rate for
each year . . . ." *See* Pls.' Mot for Individual Relief, ECF No.
486 at 6. Defendants opposed Plaintiffs' use of the prime rate
to calculate prejudgment interest and argued that the lower
"three-month Treasury bill rate" should be used instead. *See*
Defs.' Opp'n Individual Relief, ECF No. 489 at 6. They also
opposed frontpay as too speculative. *Id.* at 9.

### D. Proposed Settlement and Notice Process

On April 5, 2024, Defendants submitted a notice that "the
parties have reached an agreement in principle regarding
Plaintiffs' request for individual relief." *See* Defs.' Notice
Regarding Individual Relief, ECF No. 498 at 1.[3]

---

[3] Plaintiffs submitted a response to Defendants' notice on April
8, 2024 clarifying that the Parties had not resolved their
dispute over attorneys' fees, which this Court subsequently
resolved on September 27, 2024. *See* Pls.' Resp. to Defs.' Notice
Regarding Individual Relief, ECF No. 499; Order Granting in Part
Mot. for Att'ys' Fees, ECF No. 500; Mem. Op., ECF No. 501. The
Court granted in part Plaintiffs' Petition for Attorneys' Fees
on September 27, 2024, and awarded Plaintiffs' attorneys
$14,689,565.23 for work performed on the litigation from June 1,
1996, to June 25, 2019. *See* Order, ECF No. 500; Mem. Op., ECF
No. 501.

The Proposed Settlement is a Partial Settlement to the extent that it only compensates plaintiffs who fit the class description for the specific unlawful discrimination suffered in the class definition. *See* Proposed Settlement, ECF No. 502-1. The key terms are:

- Payment of $12,568,035.60 by Defendants to Plaintiffs, which includes "all backpay and nearly all frontpay and prejudgment interest that [P]laintiffs sought in their individual relief motion." Mot. for Prelim. Approval, ECF No. 502 at 5 (citing Proposed Settlement § 1.N).

- Defendants will "bear the reasonable costs of notice and administration of distribution of class awards . . . ." *Id.* (citing Proposed Settlement § V.C). Therefore, these costs will not reduce the settlement amount.

- Plaintiffs will "release their pending claim for damages incurred as a result of defendants' lack of compliance with the Court's 1982, 1999, and 2019 orders directing [the] DEA to implement non-discriminatory, validated procedures for GS-14 and -15 level promotions, as set forth in their individual relief motion." *Id.* (citing Proposed Settlement § V.A).

- Plaintiffs will "withdraw their individual[] relief motion within two business days of a final approval of the settlement." *Id.* (citing Proposed Settlement § V.B).

Plaintiffs selected Michael Lewis ("Mr. Lewis") as a neutral to distribute the funds according to the proposed allocation plan ("Allocation Plan"). *See* Allocation Plan, ECF No. 502-2; Lewis CV, ECF No. 502-4. The Allocation Plan lists several factors for Mr. Lewis to consider when making allocation determinations. *See* Allocation Plan, ECF No. 502-2. Plaintiffs also selected "Settlement Services, Inc. ("SSI"), an experienced class administration firm, to manage the distribution of notice and claim forms to class members, receive opt-out requests and claim forms, and process payments to class members." *See* Mot. for Prelim. Approval, ECF No. 502 (citing Allocation Plan, ECF No. 502-2; SSI Brochure, ECF No. 502-3).

On November 1, 2024, Plaintiffs filed their Motion for Preliminary Approval. *See* Mot. for Prelim. Approval, ECF No. 502. On November 8, 2024, the Court granted the motion and scheduled a Fairness Hearing for February 6, 2025. *See* Order, ECF No. 503. The Court also provisionally certified the Damages Class under Federal Rules of Civil Procedure 23(a) and 23(b)(3); approved the selection of Class Representatives; approved the selection of Class Counsel; preliminarily approved the Proposed

Settlement; held that the "method of providing notice to members of the settlement class" is reasonable, valid, and sufficient to comply with Federal Rule of Civil Procedure 23 and the U.S. Constitution; approved the proposed notice, claim form, and sample questionnaire as to form; approved the appointment of Mr. Lewis to serve as a qualified neutral to distribute funds; and appointed SSI to "manage the distribution of notice and claims forms, receive opt-out requests and claim forms, and process payments to class members." Order, ECF No. 503. Additionally, the Court set timeframes for service of the notices and any objections prior to the Fairness Hearing.

A total of 486 putative class members received notice of the Proposed Settlement. *See* Mot. for Final Approval, ECF No. 512 at 2. The distribution of notice began on December 2, 2024. Initially, notices were sent to 392 putative class members. *See id.* Seven of these notices were returned as undeliverable, but those notices were successfully re-mailed. During the notice period, additional putative class members were identified, so the parties sought, and this Court granted, a forty-five day continuance of the Fairness Hearing so that those additional putative class members could receive proper notice. *See id.* at 1-2. Notice was mailed to 94 additional putative class members

on February 21, 2025. *See id.* at 2. None of these additional
notices were returned as undeliverable. *See id.*

On January 31, 2025, Plaintiffs filed a Consent Motion for
Continuance representing that the parties have been "diligently
working to identify putative class members and confirm
membership in the class" but "on January 29, 2025, seventy-nine
additional putative class members were identified" and they had
not yet received notice nor the opportunity to object or opt-
out. *See* Consent Mot. for Continuance, ECF No. 511. The same
day, the Court granted Plaintiffs' Consent Motion and continued
the hearing, and associated deadlines, forty-five days to March
24, 2025. *See* Minute Order (Jan. 31, 2025).

On March 18, 2025, Plaintiffs filed their Motion for Final
Approval. *See* Mot. for Final Approval, ECF No. 512. In addition
to arguing why the Court should approve the settlement,
Plaintiffs also explained that "[t]o [e]nsure [c]ompliance
[w]ith [f]ederal [l]aw," the parties "[e]xecuted [a] [n]on-
[s]ubstantive [a]mendment . . . [r]egarding [p]ayment
[m]echanics," which they assert "does not undermine the
settlement's overall fairness . . . ." *Id.* at 9–10.[4] At the

---

[4] The parties executed this amendment due to a change in the
Agency's position on how such payments must be processed. *See*
Mot. for Final Approval, ECF No. 512 at 8–9. Instead of paying
the funds into an escrow account pending final approval,
payments will be made "once final allocation decisions have been

Fairness Hearing, the Court directed the parties to submit joint status reports every sixty days regarding the settlement allocations and payments.

### E. Objections

No Damages Class members opted-out of the Proposed Settlement. Two people, Richard Holmes ("Mr. Holmes") and Dennis Maye ("Mr. Maye"), filed notices of intent to appear and objections. *See* Holmes Objs., ECF No. 512-3; Maye Objs., ECF No. 512-2. During the Fairness Hearing, these two Damages Class members either withdrew their objection or clarified that their respective objection was not relevant to the Proposed Settlement.

---

made by the third-party neutral and this Court has entered final approval of the overall settlement amount." *See id.* at 9 (discussing Stip. & Notice of Amend., ECF No. 512-4). Defendants now take the position that the Judgment Fund Branch at the U.S. Department of Treasury, Bureau of Fiscal Service must process the payments following the final allocation and "conduct a 'pre-check' of the Treasury Offset Program . . . database to determine whether any individual class members who will receive awards based on the Final Allocation have delinquent debts owed to the United States (or certain delinquent debts owed to states with whom Treasury has delinquent debt collection agreements)." *See* Stip. & Notice of Amend., ECF No. 512-4 at 2.[4] Plaintiffs "do not concede the legal correctness of Fiscal Service's position" on these matters, but because "Treasury's position has precluded defendants from transferring the settlement funds on the timetable provided by the settlement agreement," the parties executed this amendment. *See* Mot. for Final Approval, ECF No. 512 at 8-9. Plaintiffs report that "[a]ll known putative class members were mailed notice of the amendment on February 24, 2025, nearly thirty days prior to the final fairness hearing." *Id.* at 10 (citing Hyde Decl., ECF No. 512-1).

Mr. Holmes is a retired DEA Agent who admirably served the DEA throughout his career, including leading offices all over the world. He initially believed that the individual allocation of settlement funds had already been made and objected to the amount that he believed he would receive. *See* Holmes Objs., ECF No. 512-3. But once it became clear during the hearing that such allotments had not yet been made and the document Mr. Holmes believed showed these allotments served a different purpose, Mr. Holmes withdrew his objection. Mr. Holmes agreed that the process provided in the Proposed Settlement to determine individual payment amounts; submission of a questionnaire and an optional one-hour interview with Mr. Lewis, would provide sufficient opportunity to take into account the factors related to his case that he viewed as important to his individual settlement amount.

Mr. Maye is a "Retired BA Class 66 Special Agent" and a member of this class action lawsuit. *See* Maye Objs., ECF No. 512-2. Prior to the Fairness Hearing, Mr. Maye generally objected that "[t]he settlement does not include all issues and matters concerning promotion opportunities and fairness representation." *Id.* At the Fairness Hearing, Mr. Maye raised several concerns with the DEA's treatment of African American Special Agents as well as a motion to replace Class Counsel that

was filed in 2000. He also urged continued monitoring of the
DEA's compliance with the law and court orders. After discussing
these concerns with Class Counsel, Mr. Maye confirmed to the
Court that he did not have an objection to the Proposed
Settlement. As discussed at the Fairness Hearing, the Proposed
Settlement does not purport to resolve any aspect of this
litigation other than the request for individual relief from the
Damages Class. *See also* Proposed Settlement, ECF No. 502-1 at 6
("Nothing in this Agreement shall be construed as resolving any
aspect of this litigation other than that in the previous
paragraphs."). The Court also reminded the parties and Damages
Class members that the EEOMC and the Working Group were already
ordered to continue monitoring the Agency's compliance through
at least July 24, 2027. *See* Minute Order (July 24, 2023).
Therefore, both objections were resolved.

## II.  Standard of Review

Federal Rule of Civil Procedure 23 governs class action
settlements. Courts review a proposed settlement in three
stages. First, "the parties present a proposed settlement
agreement to the court for preliminary approval." *Jones v.
Chopra*, 2023 WL 6037295, at *3 (D.D.C. Sept. 15, 2023). Second,
"if the [C]ourt preliminarily approves the settlement and
conditionally certifies the class, notice is sent to the class

17

describing the terms of the proposed settlement and informing the class members of their rights and options with respect to the agreement." *Id.* Third, "the [C]ourt holds a hearing and may give final approval to a settlement agreement only on finding that it is fair, reasonable, and adequate." *Id.* Federal Rule of Civil Procedure 23(e)(2) governs how courts review proposed settlement agreements for classes that fall under Rule 23(b)(3).

### A. Federal Rule of Civil Procedure 23(a)

Federal Rule of Civil Procedure 23(a) allows members of a class to "sue . . . as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

### B. Federal Rule of Civil Procedure 23(b)(3)

Federal Rule of Civil Procedure 23(b)(3) permits a class action to be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods of fairly and

efficiently adjudicating the controversy." Fed. R. Civ. P.
23(b)(3).

### C. Federal Rule of Civil Procedure 23(e)(2)

Class action settlements are generally favored. Before
approving a settlement, however, a court must "ensure that it is
fair, adequate, and reasonable and is not the product of
collusion between the parties." *In re Vitamins Antitrust Class
Actions*, 215 F.3d 26, 30 (D.C. Cir. 2000) (citations omitted).
Federal Rule of Civil Procedure 23(e)(2) governs how courts
review proposed settlement agreements for classes that fall
under Rule 23(b)(3). As amended in 2018, the rule now provides
certain factors for a court to consider when determining whether
a settlement agreement is fair, reasonable, adequate, and the
product of arms' length negotiations. *See* Fed. R. Civ. P.
23(e)(2).[5]

As explained in the Advisory Committee's note accompanying
the 2018 amendment to this rule, these factors are not intended
to "displace" factors developed in various Circuits, but allow a
court to "focus[] on the primary procedural considerations and
substantive qualities that should always matter to the decision

---

[5] "In addition to evaluating the proposal itself, the court must
determine whether it can certify the class under the standards
of Rule 23(a) and (b) for purposes of judgment based on the
proposal." Advisory Committee Note to Fed. R. Civ. P. 23(e)(2)
(2018).

whether to approve the proposal." *See* Advisory Committee's Note to Fed. R. Civ. P. 23(e)(2) (2018). These factors include whether: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate taking into account [four sub-factors]; and (D) the proposal treats class members equitably to each other." *See* Fed. R. Civ. P. 23(e)(2).

## III. Analysis

### A. Final Damages Class Certification

As set forth in Plaintiffs' Motion for Preliminary Approval, the Damages Class that this Court provisionally certified on November 8, 2024 meets the requirements of Rule 23(a) and 23(b)(3), and thus deserves final certification.

### i. Rule 23(a)

As explained in Plaintiffs' Motion for Preliminary Approval, all four Rule 23(a) factors are met here.

First, Plaintiffs correctly point out that classes of at least 40 people are generally large enough to meet the numerosity requirement. *See Taylor v. D.C. Water & Sewar Auth.*, 241 F.R.D. 33, 37 (D.D.C. 2017) (citing *Thomas v. Christopher*, 169 F.R.D. 224, 237 (D.D.C. 1996) *aff'd in part and rev'd in*

*part*, 139 F.3d 227 (D.C. Cir. 1998)). The class of over 400 people here easily satisfies this requirement.

Second, there are questions of law or fact common to all Damages Class members. They key question for each person is whether they were not promoted to a GS-14 or GS-15 position despite making the BQ List because of their race. *See* Mot. for Prelim Approval, ECF No. 502. Even though the Damages Class members may be entitled to different amounts of monetary relief, they were all "subject to the same work policies and practices" that this Court has determined to be discriminatory. *Stephens v. Farmers Restaurant* Group, 329 F.R.D. 476, 483 (D.D.C. 2019).

Third, the class representatives assert "claims typical of the class—each is an active or retired Black agent who falls within the class definition and was subjected to the same non-compliant GS-14 or -15 level promotion policies at issue in this settlement." *See* Mot. for Prelim. Approval, ECF No. 502 at 8. These claims are typical of the claims that the class representatives seek to advance on behalf of the class. *See e.g.*, *Taylor*, 241 F.R.D. at 45.

Fourth, the class representatives fairly and adequately represent the interests of the class. "Adequacy embraces two components: the class representative[s] (i) 'must not have antagonistic or conflicting interests with the unnamed members

21

of the class' and (ii) 'must appear able to vigorously prosecute the interests of the class through qualified counsel.'" *J.D. v. Azar*, 925 F.3d 1291, 1312 (D.C. Cir. 2019) (*en banc*) (quoting *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997) (additional quotations omitted)). Here, there is no indication that the class representatives have any conflict of interest with other members of the class. Quite the contrary, the record shows that the named Damages Class members and Class Counsel have devoted a significant amount of time and effort to diligently prosecuting this case. Therefore, all of the Rule 23(a) requirements are met.

### ii. Rule 23(b)(3)

The provisionally certified class also satisfies the requirements under Rule 23(b)(3). First, predominance is satisfied because the Damages Class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). The Damages Class members would rely on the same evidence to make their claims that they suffered from discriminatory promotion procedures for GS-14 and -15 positions between 1993 and 2022. *See Stephens*, 329 F.R.D. at 485–86. They are all members of a larger class of African American Special Agents who experienced employment discrimination and this current settlement addresses claims

22

specific to this group. *See* Fed. R. Civ. P. 23(b)(3)(B), (D).
These common issues predominate over any non-common issues among
the class members that may exist. *See id.*

Second, a class action is the superior method to consider
the Damages Class's claims. This class action "achieve[s]
economies of time, effort, and expense, and promote[s] . . .
uniformity of decision as to persons similarly situated, without
sacrificing procedural fairness or bringing about undesirable
results." *Amchem Prods.*, 521 U.S. at 615. The Damages Class
Special Agents represent that "[w]ithout a class, [they] would
have to file individual suits, many of which would not be
pursued because individual litigants 'lack the incentive to
shoulder the burden of a complex [disparate impact] case.'" Mot.
for Prelim. Approval, ECF No. 502 at 10 (quoting *Little v.
Washington Metropolitan Area Transit Auth.*, 249 F. Supp. 3d 394,
424 (D.D.C. 2017)). Specifically, they point to the heavy cost
of discovery and expert analysis that was necessary to establish
liability for the DEA's failure to comply with the law and this
Court's orders to adopt nondiscriminatory promotion procedures
as demonstrating how they would face significant difficulty in
bringing their claims individually. *Id.* (discussing how billing
entries and costs for discovery and experts exceeded $5 million,
or 40% of the settlement amount); *see also* Fed. R. Civ. P.

23(b)(3)(A), (C) (directing courts to consider "class members' interests in individually controlling" their action and the "desirability of concentrating the litigation of claims in the particular forum"). The Court agrees that the superiority factor is met. Therefore, the Court finally certifies the Damages Class defined above pursuant to Rule 23(a) and Rule 23(b)(3).

### B. Notice Was Provided to the Class Members in a Reasonable Manner

Pursuant to Rule 23(c)(2)(B), the Court must direct notice to a class certified under Rule 23(b)(3) that is the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). This notice must "clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." *Id.*

On November 8, 2024, the Court made preliminary findings that the "method of providing notice to members of the

settlement class . . . is reasonable and constitutes valid and
sufficient notice to all settlement class members of their
rights and obligations, complying fully with the requirements of
applicable law, [Rule 23,] and the United States Constitution."
*See* Order, ECF No. 503 at 3. The Court also held that the
notice, claim form, and sample questionnaire were approved as to
form. According to SSI Director of Operations Robert Hyte's
("Mr. Hyte") February 18, 2025 Declaration, notice was provided
to the Damages Class in compliance with the requirements in the
Court's Preliminary Order. *See* Hyte Decl., ECF No. 512-1. Mr.
Hyte described the process for how the parties and SSI
identified class members to receive notice and how SSI collected
information to contact the class members, including through the
U.S. Postal Service's National Change of Address ("NCOA")
database. *See id.* He also described SSI's efforts to re-mail any
notices that were not delivered. *See id.*

Throughout this process, any class members to whom notice
was initially undeliverable eventually received notice. *See id.*
SSI has set up both phone and email support systems to answer
any questions that members of the class may have and it
maintains a website for this Proposed Settlement which has
already been viewed approximately 975 times. *See id.* The notice

25

process produced two putative objections and no opt-out
requests. *See id.*

The Court therefore concludes that the parties have
satisfied Rule 23(c)(2)(B) and provided the best notice
practicable under these circumstances.

### C. The Proposed Settlement Is Fair, Reasonable, and Adequate

Before explaining why the Rule 23(e)(2) factors are
satisfied, the Court noted at the Fairness Hearing that the
Damages Class relies on cases that predate the 2018 Amendment to
Rule 23(e)(2) in which the factors listed overlap with but are
not precisely the same as the factors that Rule 23(e)(2) directs
the Court to consider. *See* Mot. for Final Approval, ECF No. 512
at 2 (quoting *Trombley v. Nat'l City Bank*, 826 F. Supp. 2d 179,
194 (D.D.C. 2011) (claiming that "the D.C. Circuit has 'no
single test for determining whether a proposed class action
settlement' is fair and reasonable, courts in this circuit
generally examine the 'the following factors: (a) whether the
settlement is the result of arms-length negotiations; (b) the
terms of the settlement in relation to the strength of the case;
(c) the stage of the litigation proceedings at the time of
settlement; (d) the reaction of the class; and (e) the opinion
of experienced counsel.'")). Many of Plaintiffs' arguments for
why the factors beyond those listed in the current version of

Rule 23(e)(2) weigh in favor of approval also support approval
under the factors listed in Rule 23(e)(2), but the Court made
this observation because it primarily focused its ruling on the
current Rule 23(e)(2) factors.

### i. Adequate Representation

First, the class representatives have dedicated decades to
admirably representing the class. Not only have they been
involved in the many years of litigation, but they have also
devoted substantial service as "current or former EEOMC
members." Mot. for Prelim. Approval, ECF No. 502 at 8. As part
of the EEOMC, they took on the responsibility of monitoring the
DEA's compliance, or lack thereof, with court orders requiring
the agency to implement non-discriminatory promotion policies.
*See id.* It is in large part due to their diligent monitoring of
the DEA's failure to comply with these policies that the Agency
has now finally implemented verified non-discriminatory policies
and that the Plaintiffs here have been able to document their
harm and entitlement to relief throughout the preceding decades.
Therefore, the Court finds that the class representatives'
representation has been adequate.

Class Counsel has similarly provided able representation
throughout this litigation. This is demonstrated by the multiple
instances in which Class Counsel assisted the Damages Class in

seeking to remedy the Agency's unlawful actions, including by seeking damages for noncompliance with court orders; obtaining expert support for Plaintiffs' harm; engaging mediators; identifying a competent class action settlement firm; and negotiating a settlement agreement where the sum will go entirely to Plaintiffs and not be diverted to counsel or class administration costs. *See* Mot. for Prelim. Approval, ECF No. 502 at 4. At the Fairness Hearing, the Court discussed how Mr. Maye's reference to a motion to change class counsel in 2000 is not relevant to the Court's approval of this Proposed Settlement because there is no indication that Class Counsel's representation in this specific matter has been inadequate.

For these reasons, the Court concludes that class counsel's representation has been adequate.

### ii. Settlement Negotiations

Second, the litigation and negotiation history show that this Proposed Settlement was negotiated at arm's length. The parties have spent decades litigating this case, including at a bench trial, exchanging discovery, and mediation before well-respected mediators. *See* Mot. for Final Approval, ECF No. 512 at 3; Mot. for Prelim. Approval, ECF No. 502 at 2-5. As noted, this current settlement came about after Plaintiffs filed their motion for individual relief and Defendants objected to front

28

pay and prejudgment interest. It was only after the parties briefed these issues to the Court and engaged in mediation that they were able to reach the instant settlement. Therefore, the Court is satisfied that the negotiations were sufficient to avoid collusion.

### iii. Adequate Relief

Third, the relief provided to the class is adequate for the purpose of settlement arrangements.

Rule 23(e)(2)(C) directs courts to consider several factors related to this question: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; [and] (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C).

The first and second factors weigh in favor of the Proposed Settlement. The third and fourth factors are not relevant here because attorneys' fees have already been resolved and there is no indication of any related agreement under Rule 23(e)(3).

On the first factor, the costs, risks, and delay of trial and appeal weigh strongly in favor of the Proposed Settlement. The Damages Class members have already endured decades of harm

29

from the DEA's noncompliant policies and, as they point out, many Special Agents "have retired from service or passed away during the pendency of this matter." Mot. for Prelim. Approval, ECF No. 502 at 15. As noted, this agreement is the product of significant litigation and negotiations. The certainty and amount of relief provided to the Damages Class so that they can finally have some compensation for the harm they suffered weighs strongly in favor of finding the agreement fair and reasonable.

The second factor also weighs in favor of the Proposed Settlement. It is notable that Defendants have agreed to bear the reasonable costs of settlement distribution and, because attorneys' fees have already been determined, the entire settlement will go to class members. *See* Allocation Plan, ECF No. 502-2. Mr. Lewis is qualified to distribute the funds according to the Allocation Plan, which includes ensuring that every class member who submits a timely form will receive at least $5,000 for their submission. *See id.*; Lewis CV, Ex. D, ECF No. 502-4. Any class member who so requests can have a one-hour phone call with Mr. Lewis to discuss their claims, and Mr. Lewis will make a determination based on a number of factors. Mr. Holmes' objection primarily related to this factor, and as discussed, Mr. Holmes has now withdrawn his objection.

The Court therefore concludes that the costs, risks, and delay of going to trial and appeal, as well as the method for distributing relief to the class, weigh in favor of approving the Proposed Settlement.

### iv. Equitable Class Treatment

Finally, the Court holds that the proposed settlement provides equitable class treatment. As discussed, the distribution plan requires that payment determinations will be made based on several factors set forth in the Allocation Plan. *See* Allocation Plan, ECF No. 502-2. Mr. Lewis will award the entire amount of the settlement to class members. *See id.* Service as a member of the EEOMC is part of one sub-factor that Mr. Lewis may consider, which the Court finds appropriate. *See id.* This ensures that EEOMC service is not the *only* consideration, but it also recognizes the significant amount of time and effort that went into service on this monitoring committee. Because all the factors under Rule 23(e)(2) are satisfied, the Court gives final approval to the Proposed Settlement.

## IV. Conclusion

It is doubtful that any amount of money could make whole the hundreds of Special Agents in this Damages Class who suffered decades of discrimination by the United States of

America. Despite honorably serving their country, these individuals were passed over for promotion after promotion because of their race. The Damages Class members who shared their stories at the Fairness Hearing and prior court proceedings are a testament to the far-reaching impact of this harm. The DEA's failure to comply with the law and this Court's orders endured so long that many Damages Class members retired, and even passed away, before seeing the Agency ultimately enact verified, non-discriminatory promotion procedures. The compensation provided in the Proposed Settlement cannot undo all the damage from the Agency's actions, but it is a means by which to provide some amount of relief for what this group of Americans has endured. For the reasons stated on the record at the Fairness Hearing, the Court approves the Proposed Settlement.

For the reasons explained above and at the Fairness Hearing, the Court **GRANTS** Plaintiffs' Motion for Final Approval, ECF No. 512, and approves the Proposed Settlement. The Court will issue an Order to accompany this Memorandum Opinion following receipt of the parties' proposed Order on April 7, 2025.

**Signed:    Emmet G. Sullivan**
**United States District Judge**
**March 28, 2025**

32