UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HENRY W. SEGAR, et al.,<br><br>      Plaintiffs,<br><br>  v.<br><br>PAMELA J. BONDI,<br>Attorney General, et al.,<br><br>      Defendants. | Civil Action No. 77-0081 (EGS) |

**ATTORNEY GENERAL'S REPLY
IN FURTHER SUPPORT OF THE MOTION TO VACATE PRIOR ORDER**

# TABLE OF CONTENTS

Table of Contents ................................................................................................................. i

Table of Authorities ............................................................................................................ ii

Argument ............................................................................................................................ 1

    I.     Sovereign Immunity Bars Compensation For Delay in Payment in This Case. ...... 1

          A.     Section 2000e-5(k) Does Not Permit Compensation for Payment Delay ... 1

          B.     Section 2000e-16(d) Does Not Apply Retroactively. ................................ 2

          C.     Section 2000e-16(d) Does Not Apply in This Case .................................... 2

          D.     Alternatively, Plaintiffs May Only Be Awarded Interest, Not Current Rates. ............................................................................................................ 5

    II.    Plaintiffs' Remaining Arguments Fail. .................................................................... 9

          A.     Denial of the Motion to Vacate is Not an Appropriate Remedy for An Alleged Failure to Confer Pursuant to Rule 7(m) in this Case. .................. 9

          B.     Sovereign Immunity Implicates the Court's Jurisdiction. ........................ 10

          C.     Plaintiffs Have No Trouble Responding to the Attorney General's Argument. ................................................................................................. 11

          D.     The Attorney General's Motion is Properly Brought Pursuant to Rule 54(b). ......................................................................................................... 11

Conclusion ....................................................................................................................... 13

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arbaugh v. Y&H Corp.*,
   546 U.S. 500 (2006) ............................................................................................................. 9

*Brown v. Secretary of Army*,
   78 F.3d 645 (D.C. Cir. 1996) ............................................................................... 2, 9, 10, 12

*Eley v. Dist. of Columbia*,
   793 F.3d 97 (D.C. Cir. 2015) ............................................................................................... 5

*Horsey v. Dep't of State*,
   170 F. Supp. 3d 256 (D.D.C. 2016) ..................................................................................... 2

*Library of Congress v. Shaw*,
   478 U.S. 310 (1986) .................................................................................................... 1, 7, 8

*Masonry Masters, Inc. v. Nelson*,
   105 F.3d 708 (D.C. Cir. 1997) ............................................................................................. 7

*Mayorkas*, Civ. A. No. 23-0888 (CRC),
   2024 WL 1213394 (D.D.C. Mar. 21, 2024) ........................................................................ 9

*Mellos v. Brownell*,
   250 F.2d 35 (D.C. Cir. 1957) ............................................................................................. 10

*Missouri v. Jenkins*,
   491 U.S. 274 (1989) ............................................................................................................. 7

*Morrow v. United States*,
   723 F. Supp. 2d 71 (D.D.C. 2010) ..................................................................................... 10

*Murray v. Weinberger*,
   741 F.2d 1423 (D.C. Cir. 1984) ........................................................................................... 5

*Perdue v. Kenny A. ex rel. Winn*,
   559 U.S. 542 (2010) ............................................................................................................. 7

*Roeder v. Iran*,
   195 F. Supp. 2d 140 (D.D.C. 2002) ................................................................................... 11

*Ruckelshous v. Sierra Club*,
   463 U.S. 680 (1983) ........................................................................................................... 10

*Said v. Nat'l R.R. Corp.*,
  390 F. Supp. 3d 46 (D.D.C. 2019) .................................................................................. 11, 12

*Segar v. Civiletti*,
  508 F. Supp. 690 (D.D.C. 1981) ............................................................................................ 5

*Segar v. Mukasey*,
  508 F.3d 16 (D.C. Cir. 2007) ......................................................................................... 3, 4, 5

*Segar v. Reno*, Civ. A. No. 77-0081,
  1999 U.S. Dist. LEXIS 25618 ............................................................................................... 3

*Segar v. Smith*,
  738 F.2d 1249 (D.C. Cir. 1984) ............................................................................................. 5

*Segar v. Smith*, Civ. A. No. 77-0081,
  1982 WL 214 (D.D.C Feb. 17, 1982) ................................................................................ 4, 5

*Trout v. Garrett*,
  891 F.2d 332 (D.C. Cir. 1989) ............................................................................................. 11

*Trout v. Sec'y of Navy*,
  317 F.3d 286 (D.C. Cir. 2003) .......................................................................................... 2, 3

*Trout v. Sec'y of Navy*,
  540 F.3d 442 (D.C. Cir. 2008) .............................................................................................. 2

*United States v. Mitchell*,
  463 U.S. 206 (1983) ............................................................................................................ 10

*West v. Potter*,
  717 F.3d 1030 (D.C. Cir. 2013) .................................................................................... 6, 7, 8

*Whitlock v. Dep't of Defense*, Civ. A. No. 20-3246 (JMC),
  2025 WL 1895409 (D.D.C. Jul. 8, 2025) ....................................................................... 11, 12

*World Wide Minerals, Ltd. v. Rep. of Kazakhstan*,
  296 F.3d 1154 (D.C. Cir. 2002) .......................................................................................... 10

**Statutes**

5 U.S.C. § 704 ............................................................................................................................ 10

42 U.S.C. § 1988 .......................................................................................................................... 7

42 U.S.C. § 2000e-5(k) ................................................................................................................ 1

42 U.S.C. § 2000e-16(d) ................................................................................................ 1, 8

**Rules**

Fed. R. Civ. P. 54(b) ........................................................................................................ 11

Fed. R. Civ. P. 60 ............................................................................................................ 12

Defendant Pamela J. Bondi, Attorney General of the United States, respectfully submits this reply in further support of her Motion to Vacate Order ("Mot. to Vacate," ECF No. 533). The Attorney General established that sovereign immunity bars compensating Plaintiffs at current rates for work performed in prior years. Plaintiffs offer nothing persuasive in their Opposition ("Opp'n," ECF No. 536) that leads to a different result.

For these reasons and the reasons explained in the Attorney General's motion, the Court should vacate its prior order awarding fees (ECF No. 500).

## ARGUMENT

**I.    Sovereign Immunity Bars Compensation For Delay in Payment in This Case.**

**A.    Section 2000e-5(k) Does Not Permit Compensation for Payment Delay.**

As an initial matter, the Parties agree that 42 U.S.C. § 2000e-5(k) does not permit any payment structure that could be construed as compensation of delay. As the Attorney General explained, the Supreme Court squarely foreclosed any compensation for delayed payment pursuant to § 2000e-5(k). Mot. to Vacate (ECF No. 533) at 12-13 (citing *Library of Congress v. Shaw*, 478 U.S. 310, 321 (1986)). A different provision, § 114(2) of the Civil Rights Act of 1991, adopted in response to *Shaw*, lifts government immunity for "interest to compensate for delay in payment." 42 U.S.C. § 2000e-16(d). Plaintiffs agree, as they must. Opp'n (ECF No.536) at 17 ("Title VII was amended in 1991 to permit the taxing of interest against the United States"). Yet Plaintiffs anchor their fee petition on § 2000e-5(k) and argue solely that reimbursement at current rates is "reasonable" pursuant to § 2000e-5(k). Fee Pet. (ECF No. 524) at 6 ("Title VII allows this Court to award 'reasonable' attorneys' fees." (quoting 42 U.S.C. § 2000e-5(k)). They do not otherwise invoke or even mention § 2000e-16(d). *See generally id*. *Shaw* forecloses their argument. The Court need not go further and should vacate its prior order and deny the instant petition, for Plaintiffs have not borne their burden to show that they are due the fees that they have demanded.

### B. Section 2000e-16(d) Does Not Apply Retroactively.

The Attorney General also established that § 2000e-16(d) does not apply to this case because the D.C. Circuit has foreclosed its retroactive application where, as here, the case was pending at the time Congress enacted § 2000e-16(d). Mot. to Vacate (ECF No. 533) at 13-14 (citing *Trout v. Sec'y of Navy*, 317 F.3d 286, 291-92 (D.C. Cir. 2003) and *Brown v. Secretary of Army*, 78 F.3d 645, 648 (D.C. Cir. 1996)). As anticipated, Plaintiffs' sole response is that they seek fees for work performed after 1991. Opp'n (ECF No. 536) at 16-18. The Court cannot oblige Plaintiffs' request "[b]ecause any waiver of sovereign immunity must be strictly construed in favor of the government[.]" *Trout v. Sec'y of Navy*, 540 F.3d 442, 444 (D.C. Cir. 2008). "It is of no relevance whether the liability phase or the merits phase of the litigation was pending when § 114(2) became effective." *Trout*, 317 F.3d at 292. Plaintiffs do not dispute any of this.

### C. Section 2000e-16(d) Does Not Apply in This Case.

Even if § 2000e-16(d) may be applied to existing litigation (it cannot), that is not the case here. As the Attorney General explained, the Court resolved the substantive issues of this 1977 case in 1982 when the Court ordered DEA to "implement promotion procedures that 'neither have a disparate impact on Black agents nor effectuate disparate treatment of Black agents.'" Mot. to Vacate (ECF No. 533) (quoting Fee Pet. at 3). The post-1991 litigation concerns the parties' various disagreements regarding the implementation of the Court's 1982 injunction, which the parties finally resolved through a settlement agreement. This is especially evidenced by the fact that Plaintiffs did not initiate a new Title VII case, which would have required a new plaintiff, presentment of a claim, and exhaustion of administrative remedies. *See*, *e.g.*, *Horsey v. Dep't of State*, 170 F. Supp. 3d 256, 265 (D.D.C. 2016) ("the administrative exhaustion requirement functions like a statute of limitations"). Indeed, this Court "retained jurisdiction over the case until such time as the Court concludes that the rights of plaintiffs have been accorded and satisfied by

defendants." *Segar v. Mukasey*, 508 F.3d 16, 19 (D.C. Cir. 2007). At all times, therefore, the focus has been "on the conduct underlying the complaint, not the status of the litigation itself." *Trout*, 317 F.3d at 291.

Resisting this conclusion, Plaintiffs first point to this Court's 1999 decision to assert that "the work related largely to the discriminatory procedures for GS-14 and GS-15 promotion that DEA first adopted in 1992." Fee Pet. (ECF No. 536) at 18 (quoting *Segar v. Reno*, Civ. A. No. 77-0081, 1999 U.S. Dist. LEXIS 25618,[1] at *2 (D.D.C. Sep. 14, 1999)) (citation modified). But that decision concerned Plaintiffs' motion for "an order requiring compliance with the Court's earlier remedial order." *Segar*, 1999 U.S. Dist. LEXIS 25618, at *4. The specific order at issue was the 1982 order "enjoining Defendants from discriminating against Black agents in promotions and requiring DEA to implement non-discriminatory promotions systems." *Id.* at *2. The Court's 1999 decision, in other words, flows out of the Court's 1982 order. That decision did not conclude there was new evidence of discrimination. Indeed, the Court noted that "[i]n view of the fact that Plaintiffs seek an order requiring compliance with the Court's earlier remedial order, the Court has some doubt that detailed findings of fact and conclusions of law are required." *Id.* at *4.

Plaintiffs next cite to the D.C. Circuit's 2007 decision for the proposition that the litigation concerns alleged "DEA violations of the Court-approved procedures for promotions to the Senior Executive Service," allegedly beginning "in 2003." Fee Pet. (ECF No. 536) at 16 (citing *Segar*, 508 F.3d at 18). As the Court noted, that was a contractual dispute. *Segar*, 508 F.3d at 26 (finding that the stipulation at issue was "a valid contract"). It concerned the interpretation of a stipulation between the parties regarding "procedures governing the promotion of DEA special agents to

---

[1] It does not appear that this decision is available on Westlaw. As a result, the Attorney General cites to LexisNexis.

positions in the agency's Senior Executive Service (SES)." *Id*. at 18. As the D.C. Circuit explained, that stipulation also stems from this Court's 1982 order. *Id*. at 19 (citing *Segar v. Smith*, Civ. A. No. 77-0081, 1982 WL 214 (D.D.C Feb. 17, 1982)).

Plaintiffs also invoke the Settlement Agreement to argue that the settlement concerns the period from 1993 through 2022. Fee Pet. (ECF No. 536) (citing Settlement (ECF No. 502-1) at 3). Plaintiffs' argument is untenable. The Settlement Agreement—signed by Plaintiffs' counsel—begins by recalling that this Court "entered an order dated February 17, 1982, requiring among other things, that Defendants implement validated, non-discriminatory procedures." Settlement Agreement (ECF No. 502-1) at 2. It explains that this Court's September 27, 1999, and June 25, 2019, orders found DEA's procedures "did not comply with the 1982 Order." *Id*. And the Parties concluded the Settlement Agreement "to resolve solely Plaintiffs' for monetary relief as a result of the lack of compliance with the 1982 Order in connection with promotions to the GS-14 and GS-15 levels during the Relevant Period, as requested in the pending Motion for Individual Relief." *Id*. at 3. And Plaintiffs' release of claims is limited to any claims "as a result of the Defendants' lack of compliance with the 1982 Order[.]" *Id*. at 6. The Settlement Agreement makes no mention of Title VII or any claims independent from Plaintiffs' allegations of non-compliance with this Court's 1982 Order.

Plaintiffs' dwelling on the history of this case, rather than properly supporting their fee demand, is telling. Opp'n (ECF No. 536) at 32. The Attorney General explained that Plaintiffs' proffered evidence regarding the skills and experience of the individual attorneys was inadequate: Plaintiffs described the experience of only four of the nearly dozen attorneys working on the case; for the rest, they only asserted that they are "graduates of prestigious law schools and/or former judicial clerks." Mot. to Vacate (ECF No. 533) at 26 (quoting Fee Pet (ECF No. 524) at 9)).

Relying solely on such education and clerkship experience, the Attorney General established, is insufficient to demonstrate each attorney's "experience in the legal profession and in litigating complex federal court cases[.]" Mot. to Vacate (ECF No. 533) at 26 (quoting *Eley Dist. of Columbia*, 793 F.3d 97, 104 (D.C. Cir. 2015). Rather than meaningfully respond, Plaintiffs invoke the case's 1980s history. Opp'n (ECF No. 536) at 32 (citing *Segar v. Civiletti*, 508 F. Supp. 690 (D.D.C. 1981), *Segar v. Smith*, 1982 WL 214 (D.D.C. Feb. 17, 1982), and *Segar v. Smith*, 738 F.2d 1249 (D.C. Cir. 1984), cert. denied sub nom. *Meese v. Segar*, 471 U.S. 1115 (1985)). The recounting of this procedural history cannot be squared with their assertion that they seek fees for post-1991 conduct.[2] Nor is this history relevant to establish the litigation experience of Plaintiffs' attorneys, because none of them had even graduated from law school at that time. Credentials of Attorneys (ECF No. 524-4) at 2-3.

### D. Alternatively, Plaintiffs May Only Be Awarded Interest, Not Current Rates.

Finally, the Attorney General established that even if Plaintiffs are entitled to compensation for delayed payment, the proper compensation is in the form of interest, not current rates. Mot. to Vacate (ECF No. 533) at 15-17. Plaintiffs counter that *West v. Potter* is a "controlling holding" that "squarely forecloses [the Attorney General's] argument" and requires compensation at current

---

[2]     Perhaps Plaintiffs' counsel see themselves as in a kind of contest with the public servants at the U.S. Attorney's Office. Opp'n (ECF No. 536) at 32 (asserting that "WilmerHale attorneys have bested defendants' counsel"). Even if that were true – and of course it is not; this case is about justice for the parties, not their lawyers – Plaintiffs' record at the D.C. Circuit is less than stellar. *See Segar*, 508 F.3d at 28 (vacating interim injunction); *Segar*, 738 F.2d at 1296 (vacating the "imposition of strict promotion goals and timetables, and the class-wide frontpay approach tied to the goals and timetables"). In all events, Plaintiffs tellingly offer nothing to sidestep the fundamental requirement that a reasonable fee award may not generate "a windfall for the plaintiff's attorneys." *Murray v. Weinberger*, 741 F.2d 1423, 1433 (D.C. Cir. 1984). By any measure, the fees Plaintiffs seek in this case generate precisely such a windfall. *See, e.g.*, Mot. to Vacate (ECF No. 533) at 27 (establishing that an award of fees of 148% of the benefit to the class is unreasonable under Rule 23).

rates. Opp'n (ECF No. 14) at 22 (citing 717 F.3d 1030, 1034 (D.C. Cir. 2013)). Plaintiffs misunderstand the holding of that case. At issue in *West* was the district court's categorial denial of "compensation for delay" in a Title VII lawsuit, *West*, 717 F.3d at 1031, where the plaintiff wished to be compensated "at current rates," *id*. at 1033. The district court denied the request, finding that there was no unusual delay or dilatory or stalling conduct on the government's part. *Id*. The D.C. Circuit vacated that order because the district court "applied the wrong standard for evaluating whether compensation for delayed payment of attorney's fees is necessary." *Id*. The D.C. Circuit remanded for further consideration "based on the delay without the apparent assumption that none could be made in the absence of the enumerated factors." *Id*. at 1035. Indeed, the Court qualified its opinion in several important ways. It said that "compensation for delay is not always necessary in Title VII cases." *Id*. Likewise, the district court had "discretion not to compensate for delay at all" where, for example "counsel had anticipated the delayed payment and built compensation for that delay into the lodestar figure[.]" *Id*. Plaintiffs place inappropriate weight on D.C. Circuit's *dictum* that compensation for delay could be based on current rates; the court issued no such holding,[3] but rather merely held that the district court had applied incorrect factors in determining that no time delay enhancement was available. Significantly, *West* recognizes that § 2000-16(d) provides for "interest" as an appropriate means of compensating for delay. *Id*.

More, the D.C. Circuit's statement that "compensation for delay . . . may be made 'either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value'" is a direct quote from *Perdue* that has nothing to do with § 2000-16(d) or Title VII.

---

[3] Plaintiffs' assertion that the statement in *West* is a "controlling holding" cannot be squared with Plaintiffs' assertions elsewhere in their opposition that "bare statements like this are too conclusory to constitute binding precedent." Opp'n (ECF No. 536) at 12 (citation modified).

*Id*. (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 556 (2010)).  Indeed, that portion of *Perdue* discussed delay of payment under 42 U.S.C. § 1988.  *Perdue*, 559 U.S. at 556.  "Section 1988 provides that a prevailing party in certain civil rights actions may recover 'a reasonable attorney's fee as part of the costs.'"  *Id*. at 550.  To the extent any parallels can be drawn between § 1988 and Title VII, that language is similar to § 2000e-5(k), which the Supreme Court held does not provide for compensation for delay in payment.  *Shaw*, 478 U.S. at 321.  And the quote in *Perdue* itself is to *Missouri v. Jenkins*.  *Id*. (quoting 491 U.S. 274, 282 (1989)).  That case likewise analyzes § 1988.  *Missouri*, 491 U.S. at 275.  "*Jenkins* held that the Eleventh Amendment does not give states immunity from enhanced fees."  *Masonry Masters, Inc. v. Nelson*, 105 F.3d 708, 712 (D.C. Cir. 1997).  It did not opine on the waiver of sovereign immunity in § 2000e-16(d), nor could it since *Jenkins* predates the Civil Rights Act of 1991.  In short, none of these cases discusses the scope of the sovereign immunity waiver in § 2000e-16(d).

      Indeed, Judge Williams wrote separately in *West* to question the use of current rates as an adequate means of compensating for a delay in payment.  *West*, 717 F.3d at 1035 (Williams, J., concur).  As Judge Williams warned, use of historic rates "may well overcompensate the lawyer" for two practical reasons.  First there is a general trend for attorney's fees to inflate at "a considerably higher rate" than general price inflation.  Second, "[c]ompensation at current rates for the entire period would compensate a relatively junior attorney at more than he or she would have commanded in the earlier period(s)."  *Id*.  For these reasons, and because of "the improvements in ability to secure interest rate data and to make the computations necessary for straightforward addition of interest," Judge Williams suggested that "it will in most and perhaps all cases be easier and more accurate for courts, when they believe that it is suitable to compensate

for delay, to do so simply by awarding interest at the nominal rate(s) prevailing over the period(s) of delay." *Id*.

Plaintiffs also misapprehend *Shaw*. They assert that *Shaw* "dictate[s]" using current rates because doing so is the functional equivalent of interest. Opp'n (ECF No. 536) at 23. As the Attorney General explained, however, *Shaw* rejected any form of compensation for delay, irrespective of the nomenclature. Mot. to Vacate (ECF No. 533) at 12 (citing *Shaw*, 478 U.S. at 321). When Congress adopted § 2000e-16(d) to provide for such compensation, it limited compensation to "interest." 42 U.S.C. § 2000e-16(d). It did not include all the various forms of compensation *Shaw* considered similar to "interest." *Shaw*, 478 U.S. at 321. Plaintiffs correctly note that "Congress surely knew of that explanation[.]" Opp'n (ECF No. 536) at 23. But Plaintiffs ignore the cardinal rule of interpreting waivers of sovereign immunity: waivers must be "strictly" construed "in favor of the sovereign." *Shaw*, 478 U.S. at 318. Even if "interest" might be read by some to include alternative approaches to compensation for delay in payment, because of strict construction, Congress's choice to only specify "interest" must be read as excluding any such alternatives. It makes perfect sense that when Congress chose to provide compensation for delay, it elected to do so through a specific mechanism—interest—not current rates or other alternatives, just as Judge Williams explained in his concurrence in *West* that those alternatives are inferior.

In sum, the plain language of Section 2000e-16(d) provides for "interest" to compensate for delayed payment of attorney's fees. Even if "interest" could be read to encompass the variety of alternatives discussed in *Shaw*, such reading, at most, creates an ambiguity and any ambiguities are construed in favor of the Government. As a result, Section 2000e-16(d) permits only interest as a form of compensation for delayed payment. Plaintiffs may not be compensated at their counsel's current rates.

## II. Plaintiffs' Remaining Arguments Fail.

### A. Denial of the Motion to Vacate is Not an Appropriate Remedy for An Alleged Failure to Confer Pursuant to Rule 7(m) in this Case.

Plaintiffs argue that the Court should deny the motion because the parties did not confer. Opp'n (ECF No. 536) at 12-13 (citing Local Civil Rule 7(m)). This is a red herring.

A "finding that Local Rule 7(m) has been violated is not the end of the analysis as breach raises the further question of remedy." *Simien v. Mayorkas*, Civ. A. No. 23-0888 (CRC), 2024 WL 1213394, at *3 (D.D.C. Mar. 21, 2024). The Attorney General's motion identifies significant jurisdiction and sovereign immunity issues that may be raised at any point during the litigation, including for the first time on appeal. *Brown*, 78 F.3d at 648. As such, denying the motion to vacate based on a supposed Rule 7(m) violation does not preclude the Attorney General from moving again on the same basis, whether in this Court or in the Court of Appeals.

More importantly, and tellingly, Plaintiffs do not argue that the same sovereign immunity and jurisdictional arguments are not properly before the Court as part of the Attorney General's opposition to Plaintiffs' fee petition. As such, the Court must engage with them. Even absent a motion to vacate, the Court must "sua sponte" vacate its prior order granting fees calculated using the same methodology if the Court agrees with the Attorney General that sovereign immunity bars using current rates. *Brown*, 78 F.3d at 648; *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("Moreover, courts, including this Court, have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party."). Denying the Attorney General's motion for an alleged Local Civil Rule 7(m) in these circumstances would have no practical effect on the outcome, and would be an inefficient use of judicial and party resources.

- 9 -

### B. Sovereign Immunity Implicates the Court's Jurisdiction.

Plaintiffs argue that sovereign immunity does not implicate subject-matter jurisdiction. Opp'n (ECF No. 536) at 11-12. Plaintiffs' argument cannot be squared with *Brown v. Secretary of Army*, which considered the retroactive application of § 2000e-16(d) to be a jurisdictional inquiry that could be "raised for the first time on appeal" because "[w]hether the United States has consented to be sued 'is the sort of jurisdictional question which may be raised at any time, either by the parties or by the court sua sponte.'" 78 F.3d at 648 (quoting *Mellos v. Brownell*, 250 F.2d 35, 36 (D.C. Cir. 1957)); *see also United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."); *World Wide Minerals, Ltd. v. Rep. of Kazakhstan*, 296 F.3d 1154, 1162 n.10 (D.C. Cir. 2002) ("The *defense* of sovereign immunity may be raised at any time because, if valid, it means that the court lacks power to hear the case." (emphasis in original)).

Any waiver of sovereign immunity also governs the scope of available remedies. "Waivers of immunity must be construed strictly in favor of the sovereign, and not enlarged beyond what the language requires." *Ruckelshous v. Sierra Club*, 463 U.S. 680, 686 (1983). Thus, for example, the Administrative Procedure Act waives sovereign immunity for certain challenges to final agency action. *See* 5 U.S.C. § 704. But a successful APA plaintiff may not obtain money damages because the government has not waived sovereign immunity "for money damages." *Morrow v. United States*, 723 F. Supp. 2d 71, 79 (D.D.C. 2010) (Walton, J.) (collecting cases). Thus, when the Supreme Court analyzed the scope of § 307(f) of the Clean Air Act, which provides for an award of attorney's fees, the Supreme Court cautioned that "care must be taken not to 'enlarge' [the statute's] waiver of immunity beyond what a fair reading of the language of the section requires." *Ruckelshous*, 463 U.S. at 686.

- 10 -

### C. Plaintiffs Have No Trouble Responding to the Attorney General's Argument.

Plaintiffs complain that the Attorney General's motion to vacate is "insufficiently developed." Opp'n (ECF No. 536) at 13-14. The Court can easily dispense with that illogical argument. The Attorney General clearly invoked Rule 54(b) and explained that "[a]n error of law is a legitimate basis to reconsider, particularly where, as here, the error concerns 'a jurisdictional issue.'" *Id*. (quoting *Said v. Nat'l R.R. Corp.*, 390 F. Supp. 3d 46, 52 (D.D.C. 2019)). The Attorney General then explained in detail the nature of the legal error. Mot. to Vacate (ECF No. 533) at 12-17. Plaintiffs appear to follow the argument without issue, and, naturally, they oppose. Opp'n (ECF No. 536) at 12-19.

### D. The Attorney General's Motion is Properly Brought Pursuant to Rule 54(b).

Plaintiffs next assert that Rule 60(b) should govern, rather than Rule 54(b). Opp'n (ECF No. 536) at 14-15. Plaintiffs appear to base their assertion on the mistaken belief that their award of fees is a final and appealable order, when it is in fact interlocutory. *Id*. It is long-standing, settled law in this Circuit that an order awarding interim fees in a Title VII case is an "interlocutory order" that is "not immediately appealable." *Trout v. Garrett*, 891 F.2d 332, 333, 335 (D.C. Cir. 1989) (denying immediate review by appeal from interim attorney fee award in Title VII employment discrimination action). As such, the Attorney General properly brought this motion pursuant to Rule 54(b). Mot. to Vacate (ECF No. 533) at 11.

But even if Rule 60(b) applies, the motion is still proper. That rule provides the Court discretion to vacate an order for a variety of reasons, including lack of jurisdiction. The Court must vacate a judgment pursuant to "Rule 60(b)(4) if the court that rendered it lacked subject matter jurisdiction over the plaintiff's claim." *Roeder v. Iran*, 195 F. Supp. 2d 140, 159 (D.D.C. 2002). Similarly, Rule 60(b)(6) allows the Court "on motion and just terms, to relieve a party or its legal representative from a final judgment or order for any reason that justifies relief." *Whitlock*

*v. Dep't of Def.*, Civ. A. No. 20-3246 (JMC), 2025 WL 1895409, at *2 (D.D.C. Jul. 8, 2025) (citation modified).  Notably, the one-year bar does not apply to motions pursuant to subsections (4) and (6).  Fed. R. Civ. P. 60(c).  Such motions must be brought within a reasonable time.  Given that Plaintiffs rely in their supplemental motion for fees largely on the Court's prior order, their ability to respond is in no way prejudiced by the Attorney General's motion.  And finality principles are not implicated because the Court continues to retain jurisdiction over the case.

Regardless, "the Court need not resolve this dispute" because "the facts of this case demand the same result under either standard." *Whitlock*, 2025 WL 1895409, at *2.  The Attorney General has raised serious jurisdictional issues concerning jurisdiction and sovereign immunity as applied by "controlling decisions of the Supreme Court and this Circuit[.]"  *Said*, 390 F. Supp. 3d at 52.  Those issues may be raised at any time during the litigation, including "for the first time on appeal."  *Brown*, 78 F.3d at 648 (considering sovereign immunity argument in the context of § 2000e-16(d) retroactive application for the first time on appeal because it is "the sort of jurisdictional question which may be raised at any time, either by the parties or by the court sua sponte").

\* \* \*

## CONCLUSION

For these reasons and the reasons articulated in the Attorney General's motion to vacate, the Court should grant the Attorney General's motion and vacate its prior order awarding fees.

Dated: March 13, 2026

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

PETER C. PFAFFENROTH, DC Bar #496637
Chief, Civil Division

By:  /s/ *Dimitar P. Georgiev*
DIMITAR P. GEORGIEV, D.C. Bar # 1735756
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252 – 7678

*Attorneys for the United States of America*